**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| NEIGHBORHOOD HOUSE and MARIIA MATSAI,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES and ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services,<br><br>Defendants. | CASE NO.<br><br>COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF |

## I. INTRODUCTION

1. Plaintiffs seek declaratory and injunctive relief under the Administrative Procedure Act (APA) to challenge the United States Department of Health and Human Services' (HHS's) unlawful termination of Medicaid funding to aged, blind, and disabled Supplemental Security Income (SSI) recipients based on their immigration status.

2. The Medicaid program is an indispensable lifeline for individuals with chronic health conditions and disabilities. With joint funding from HHS and state governments, Medicaid provides qualified beneficiaries who are unable to privately afford healthcare services with free or low-cost medical care and treatment. Critically important for the survival and health of people with disabling health conditions, Medicaid also delivers essential long-term care services to assist with



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

basic activities of daily living, such as eating, bathing, toileting, moving and repositioning, taking medications, and operating medical equipment. In Washington state, Medicaid is known as Apple Health, which provides health coverage for nearly 2 million people across the state.

3. There are several categories of Medicaid eligibility that consider income, resources, and other situational factors, including age and disability. Under one category, individuals who are over sixty-five years old or have a qualifying disability, meet low-income and limited resource restrictions, and satisfy citizenship and immigration status requirements are simultaneously eligible for both Medicaid and SSI benefits administered by the United States Social Security Administration (SSA). SSI provides monthly payments to people with disabilities and older adults who have little or no income or resources.

4. Because SSI recipients are low-income, elderly, and/or disabled, many need complex medical treatment and intensive services that they could not otherwise afford without participating in the Medicaid program.

5. On July 4, 2025, Congress enacted a Budget Reconciliation Bill, also referred to as "H.R. 1" or the "Working Families Tax Cut." *See* Pub. L. No. 119-21, 139 Stat. 72 (2025). HHS's Centers for Medicare and Medicaid Services (CMS), which is responsible for implementing laws passed by Congress related to Medicaid, subsequently issued notices interpreting H.R. 1 to create additional immigration status requirements for noncitizens to be eligible for federal Medicaid funding. In the notices, HHS instructed Washington and other states not to claim federal Medicaid funding for any noncitizens who do not satisfy additional immigration requirements, effective October 1, 2026.

6. Among the noncitizens HHS deemed no longer eligible for Medicaid are asylees, refugees, victims of trafficking, and Violence Against Women Act (VAWA) self-petitioners,



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

unless they have adjusted their status to permanent resident, a process that can take years. Under HHS's interpretation, these qualified noncitizens will remain eligible to receive SSI benefits but will become ineligible for Medicaid.

7. HHS's interpretation of H.R. 1 to exclude categories of noncitizen SSI recipients from Medicaid coverage effective October 1, 2026, and instructions to states to cut off funding for them directly conflicts with federal Medicaid law and is arbitrary and capricious. In its guidance, HHS acknowledged but failed to account for unrepealed and unamended statutes that establish Medicaid eligibility for SSI recipients and specifically provide for noncitizen SSI recipients to be eligible for Medicaid under the same terms and conditions as others receiving SSI. 42 U.S.C. § 1396a(a)(10)(A)(i)(II)(aa); 8 U.S.C. § 1612(b)(2)(F). Instead, HHS decided H.R. 1 automatically stripped many noncitizen SSI recipients of their Medicaid eligibility, "notwithstanding" these existing statutory guarantees left untouched by H.R. 1.

8. HHS's action is resulting in direct harm to Plaintiff Neighborhood House and its long-term care clients who are SSI recipients but do not satisfy HHS's new immigration criteria for Medicaid eligibility, including Plaintiff Mariia Matsai. Many of Plaintiff Neighborhood House's clients are refugees and asylees fleeing war and violence while trying to manage chronic medical conditions and disabilities.

9. As an organization that receives Medicaid funding to provide case management services to coordinate and authorize long-term care services for Medicaid recipients, Plaintiff Neighborhood House has been searching for alternative services and resources for Plaintiff Matsai and its numerous other clients who currently receive Medicaid benefits and whose Medicaid benefits will be terminated under HHS's action on October 1, 2026.



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

10. Unfortunately, there are no accessible alternative resources to replace long-term care services that have been available through the Medicaid program. With no other source of care services, Plaintiff Matsai and many of Plaintiff Neighborhood House's other clients will have no choice but to rely on emergency and inpatient hospital treatment when their health conditions imminently and needlessly worsen.

11. HHS's guidance is arbitrary and capricious and is contrary to law. As such, this Court should stay its implementation, hold it unlawful, and set it aside.

## II. PARTIES

12. Plaintiff Neighborhood House is a tax-exempt non-profit service organization under Section 501(c)(3) of the Internal Revenue Code. It is located in and provides an array of community services in King County, Washington, including about 150 SSI recipients who will lose Medicaid-funded long term care services effective October 1, 2026, pursuant to the challenged HHS action, causing it and its clients substantial and irreparable harm.

13. Plaintiff Mariia Matsai is a sixty-seven-year-old woman living in King County, Washington. As a Ukrainian Humanitarian Parolee with re-parole through June 11, 2028, she qualifies for and receives SSI pursuant to 8 U.S.C. §1612(a), H.R. 7691, Pub. L. No. 117-128 at § 401, 136 Stat. 1211, 1218 (2022), and H.R. 815, Pub. L. No. 188-50 at § 301, 138 Stat. 895, 913, (2024). She also relies on Medicaid benefits, including 158 hours of paid caregiving per month, as well as medical care for her heart condition (atrial fibrillation), congestive heart failure, and Type 2 diabetes. She needs daily assistance to properly take over a dozen prescribed medications in accordance with physician instructions and assistance with monitoring vital signs. She will lose these Medicaid-funded treatments and caregiving services effective October 1, 2026, pursuant to the challenged HHS action, causing her substantial and irreparable harm.



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

14. Defendant United States Department of Health and Human Services (HHS) is a federal agency within the meaning of the Administrative Procedure Act (APA), 5 U.S.C. § 551(1). It is the department of the United States government that administers the Medicaid program.

15. Defendant Robert F. Kennedy, Jr. is the Secretary of the HHS and that agency's highest ranking official. He is sued in his official capacity.

## III. JURISDICTION AND VENUE

16. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the claims arise under the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq*.

17. This Court has the authority to grant declaratory and injunctive relief under the APA, 5 U.S.C. §§ 701 *et seq*., and 28 U.S.C. § 2201.

18. Venue is proper under 28 U.S.C. § 1391(e)(1) because a substantial part of the events or omissions giving rise to the claims occurred in this district and because all Plaintiffs reside in this district.

## IV. STATEMENT OF FACTS

### A. Statutory Background

19. **The Medicaid Act.** Medicaid is a cooperative federal and state funded program authorized and regulated pursuant to Title XIX of the Social Security Act ("Medicaid Act"), providing medical assistance for certain groups of low-income persons. *See* 42 U.S.C. §§ 1396, *et seq*. Through the Medicaid program, states receive federal matching funds in the form of reimbursements by HHS for a portion of the medical assistance costs. *Id.*

20. Under the Medicaid Act, participating states submit a Medicaid "State Plan" for HHS approval that describes what medical assistance will be provided with state and federal funding and to whom. *See generally,* 42 U.S.C. §§ 1396-1, 1396a; 42 C.F.R. Part 430. The



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

Medicaid Act gives some discretion for states to design their state plans but includes some mandatory obligations that states must accept in order to receive federal funding.

21. One of these requirements is for the state plan to make "medical assistance" available to "all individuals…with respect to whom [SSI] benefits are being paid." 42 U.S.C. § 1396a(a)(10)(A)(i)(II)(aa). Accordingly, HHS's regulations also require states to provide Medicaid to "aged, blind, and disabled individuals or couples who are receiving or are deemed to be receiving SSI." 42 C.F.R. § 435.120.

22. To be eligible for SSI, an individual must be over the age of sixty-five, blind, or "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(a), 1382c(a)(3). In addition, the individual must meet low-income restrictions and cannot have total resources that exceed $2,000 for a single person, or $3,000 for a married couple. 42 U.S.C. § 1382(a)(2)-(3).

23. Under Section 1634 of the Social Security Act, states have the option to streamline Medicaid eligibility determinations with SSI determinations through agreements with SSA to "determine eligibility for medical assistance in the case of aged, blind, or disabled individuals under such State's plan approved." 42 U.S.C. § 1383c(a).

24. Washington has a "1634 agreement" with SSA, whereby an individual submits a single application for SSI benefits and Medicaid eligibility, which is reviewed and determined by SSA.



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

25. When SSA makes eligibility determinations for SSI applicants, it notifies the state that the individual is eligible for Medicaid, and states then enroll the individual in the program to begin the same day the individual becomes eligible for SSI.

26. If an individual is determined no longer eligible for Medicaid, states must conduct an *ex parte* review of data sources without requiring participation from the individual to determine if the individual is eligible under a different category, considering "all bases of eligibility." 42 C.F.R. § 435.916(f).

27. Once eligible for Medicaid, individuals are entitled to receive medically necessary treatment and services, including but not limited to, physician services, medications, as well as home and community-based long-term care services including assistance with activities of daily living.

28. **The Personal Responsibility and Work Opportunity Reconciliation Act of 1996.** Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA) in response to concerns that noncitizens "have been applying for and receiving public benefits from Federal State, and local governments at increasing rates." 8 U.S.C. § 1601(3).

29. "[I]n order to assure that aliens be self-reliant in accordance with national immigration policy," PRWORA barred many noncitizens from accessing most public benefits. *See e.g.* 8 U.S.C. §§ 1601(5), 1611, 1612, 1613.

30. PRWORA established specific exceptions to its general prohibition against noncitizen eligibility for public benefits. Some designated categories of "qualified" noncitizens are eligible for SSI and food assistance, Temporary Assistance for Needy Families (TANF), block grants, and Medicaid. 8 U.S.C. § 1612. Specifically, PRWORA permits SSI eligibility for lawful permanent residents (LPRs) who have forty qualifying work quarters and have satisfied a five-year



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

waiting period, veterans and their families, individuals residing in the U.S. in 1996 and receiving SSI or are now blind or disabled, and tribal members. *See* 8 U.S.C. § 1612(a)(2). PRWORA further permits SSI eligibility up to seven years for refugees, asylees, aliens granted withholding of removal, Cuban-Haitian Entrants, Amerasian immigrants, certain abused spouses and children, Iraqi and Afghan special immigrants, human trafficking victims, and certain Afghan and Ukrainian parolees. *Id.*

31. For TANF, block grants, and Medicaid, states have discretion to determine eligibility for any qualified noncitizens, but PRWORA strictly requires the same Medicaid eligibility standards for qualified noncitizen SSI recipients under this specific provision:

> An alien who is receiving benefits under the program defined in subsection (a)(3)(A) (relating to the supplemental security income program) shall be eligible for medical assistance under a State plan under title XIX of the Social Security Act (42 U.S.C. 1396 *et seq*.) under the same terms and conditions that apply to other recipients of benefits under the program defined in such subsection.

8 U.S.C. § 1612(b)(2)(F).

32. **HR. 1.** Section 71109 of H.R. 1 added 42 U.S.C. §1396b(v)(5) to the federal financial participation section of the Medicaid Act. This section states, "notwithstanding the preceding paragraphs of this subsection, beginning on October 1, 2026, except as provided in paragraphs (2) and (4), in no event shall payment be made to a State under this section for medical assistance" for individuals who are not a citizen, legal permanent resident (LPR), Cuban or Haitian entrant, or resident under the Compact of Free Association (COFA). The exceptions in paragraphs (2) and (4) concern emergency medical care and coverage of lawfully residing children and pregnant individuals under the option added by section 214 of the Children's Health Insurance Program Reauthorization Act of 2009.



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

33. Although Congress in H.R. 1 amended Section 1902 of the Social Security Act's eligibility provisions multiple times, H.R. 1 did not amend SSI eligibility requirements under the Social Security Act, 42 U.S.C. § 1382, or PRWORA, 8 U.S.C. § 1612(a). Nor did it reference or amend the SSI recipient eligibility provisions of the Medicaid Act, 42 U.S.C. §§ 1383c(a). In short, it left SSI eligibility untouched.

34. H.R. 1 did not amend the PRWORA mandate for equal Medicaid eligibility for SSI recipients, 8 U.S.C § 1612(b)(2)(F). PRWORA specifically addresses immigration requirements for SSI recipients and mandates the same Medicaid eligibility for noncitizen SSI recipients as other SSI Recipients. PRWORA is a "a specific statute that will not be controlled or nullified by a general one, regardless of the priority of enactment." *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974).

**B. HHS's misinterpretation of H.R. 1.**

35. On April 8, 2026, HHS issued a letter to Washington and other State Health Officials (SHO Letter) regarding the implementation of H.R. 1 Section 71109, attached hereto as Appendix A. The SHO Letter acknowledged that H.R. 1 "did not amend...the description in 8 U.S.C. § 1612(b)(2) of the populations to which states must provide full Medicaid benefits, nor did it amend the description or scope of the populations in section 1902 of the Act to which states are required to provide medical assistance (e.g. individuals to whom supplemental security income (SSI) benefits are being paid)." Appendix A at p. 6.

36. Yet, the SHO Letter concluded that health coverage for noncitizen SSI recipients who lack the immigration status listed in Section 71109 is no longer "Medicaid." The letter states that Washington and other states must stop claiming federal financial participation (FFP) for individuals lacking "satisfactory immigration status" effective October 1, 2026. FFP is the term for federal matching funds provided to states under their Medicaid programs. *Id.*



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

37. The SHO Letter includes an Appendix showing the availability of FFP for full Medicaid before and after October 1, 2026. The Appendix clearly identifies categories of SSI eligible noncitizens who will lose Medicaid funded benefits effective October 1, 2026, including refugees, asylees, and victims of domestic violence and human trafficking. Appendix A at pp. 23-28.

38. The SHO Letter leaves the option for states to provide non-Medicaid healthcare benefits without federal funding to noncitizens HHS deemed ineligible for Medicaid while at the same time recognizing the contradiction with other laws:

> neither the text of section 71109 of the WFTC legislation nor its legislative history demonstrates a clear Congressional intent to require that states provide full Medicaid benefits to qualified noncitizens without receiving federal matching funds for that coverage…we would not consider health coverage that a state opts to continue to provide with 100 percent state-only funds to be Medicaid, notwithstanding the fact that 8 U.S.C. § 1612(b)(2) still describes coverage that will no longer be eligible for federal matching funds beginning October 1, 2026 as 'Medicaid,' and notwithstanding the fact that [42 U.S.C. § 1396a] still describes mandatory Medicaid coverage that (when provided to certain populations) will no longer be eligible for federal matching funds beginning October 1, 2026.

Appendix A at p. 7.

39. Nowhere in H.R. 1 does it state that SSI recipients are no longer eligible for Medicaid notwithstanding the eligibility requirements in 1396a(a)(10)(A)(i)(II)(aa) or the specific PRWORA mandate to equally cover SSI recipients under 8 U.S.C § 1612(b)(2)(F). HHS's reading requires believing Congress accomplished by silent implication in Section 71109 of H.R. 1 exactly what it took the trouble to accomplish expressly elsewhere for other programs and public benefits.

40. Yet, in the same breath, HHS's internally inconsistent interpretation both instructs that states are not required to provide state-only funded health coverage to qualified



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

noncitizens for whom FFP is not available (e.g., asylees, refugees, parolees, or victims of trafficking) and at the same time foists on states the unrealistic option that they might continue to provide long-term care and other health care coverage at double the cost (absent the federal-state 50/50 split). HHS does not have authority to change who is eligible for Medicaid and cannot lawfully circumvent its statutory obligations to provide Medicaid funding to noncitizen SSI recipients by inference.

41. In practice, Washington and other states will be unable to continue to provide full coverage to noncitizen SSI recipients because they lack the resources to cover the loss in FFP. Thus, current noncitizen SSI recipients will lose coverage as a result of the interpretation set forth in the SHO letter.

42. Without identifying what language in H.R. 1 demonstrates Congressional intent to nullify prior legislation entitling SSI recipients to Medicaid coverage, HHS announced a sweeping cut of SSI recipients' life-sustaining healthcare benefits, notwithstanding specific prior laws that HHS recognizes H.R. 1 did not repeal or amend.

43. On July 31, 2026, just two months before the October 1, 2026, implementation deadline, HHS issued further guidance, "State Implementation Tool: Section 71109 of the Working Families Tax Cut (WFTC) Legislation" (Implementation Tool), attached hereto as Appendix B. Although HHS has not amended its regulation that mandates coverage for all SSI recipients, 42 C.F.R. § 435.120, the Implementation Tool instructs states to "ensure systems are programmed to consume SSA data that identifies SSI recipients who are FFP-eligible noncitizens and, if applicable, accurately determine eligibility for SSI noncitizen recipients." Appendix B at p. 4.



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

44. The Implementation Tool instructs that if states cannot ensure that their claiming practices comply with HHS's misinterpretation of H.R. 1, "the state must not submit FFP claims for potentially affected beneficiaries until the state completes all of the necessary actions." Appendix B at p. 7. The Tool concludes with the threat that "CMS intends to continue to conduct routine oversight activities to ensure that state FFP claims for full Medicaid and CHIP benefits comply with all applicable federal requirements." *Id.*

45. Through the SHO Letter and Implementation Tool, HHS is unlawfully misinterpreting H.R. 1 to terminate Medicaid eligibility of certain categories of noncitizen SSI recipients. Its decision is final and will be implemented on October 1, 2026, absent Court intervention.

46. Both the SHO Letter and the Implementation Tool are final agency actions within the meaning of the APA, 5 U.S.C. § 704, for which there is no other adequate remedy in a court. They are the consummation of the agency's decision-making process, they determine the rights of categories of noncitizen SSI recipients to Medicaid-funded services, they determine the rights and obligations of the states regarding Medicaid-funded services for those noncitizen SSI recipients, and legal consequences flow from the agency's actions, including the termination of eligibility for Medicaid-funded services for certain categories of noncitizen SSI recipients. The Letter and the Implementation Tool reflect a definitive statement of HHS policy that certain noncitizen SSI recipients are no longer eligible for Medicaid-funded services. Washington and other states have already taken steps to cease claiming FFP for these beneficiaries and HHS has made clear that compliance is expected by October 1, 2026.

**C. Harm to Plaintiffs**

47. Plaintiff Neighborhood House is a non-profit organization established in 1906 to serve Jewish refugees fleeing the tyrannical violence and oppression threatening their lives in



18 WEST MERCER ST., STE. 400 BARNARD
SEATTLE, WASHINGTON 98119 IGLITZIN &
TEL 800.238.4231 | FAX 206.378.4132 LAVITT LLP

Europe. Today, 120 years later, Plaintiff Neighborhood House continues serving populations displaced by war and persecution. Its mission, purpose, and values are to equitably serve individuals facing "cultural, language, and systemic" barriers to healthcare and other key services. As it strives to provide "culturally responsive and equitable supports" in its Strategic Plan, it seeks to avoid excluding marginalized groups such as noncitizens.

48. Among its core activities, Plaintiff Neighborhood House provides an array of social services, including comprehensive case management for adults with disabilities and medically fragile health conditions. It subcontracts with the City of Seattle Aging and Disability Services (ADS), which receives Medicaid funding administered by the Department of Social and Health Services (DSHS) to coordinate long-term care services as well as ancillary support services for Medicaid beneficiaries in King County, Washington.

49. In furtherance of its founding purpose and ongoing mission, Plaintiff Neighborhood House is designated by ADS to serve clients who speak Ukrainian, Farsi, Dari, Pashtu, Arabic, Amharic, Tigrinya, and Oromo. Plaintiff Neighborhood House has intentionally recruited, hired, and extensively trained case managers who speak these languages and share cultural backgrounds with its clients. Its long-term care case load has the highest percentage of noncitizens in King County, all of whom have been assigned a case manager fluent in their language. Currently, most of Plaintiff Neighborhood House's noncitizen long-term care clients are Ukrainian and Afghan parolees.

50. On August 20, 2026, DSHS provided Plaintiff Neighborhood House with a list of 220 Neighborhood House clients who have been notified they may lose their Medicaid-funded services due to their immigration status, along with a list of thirteen who will be eligible to receive state-only long-term care services. The list is not consistent with Plaintiff Neighborhood House's



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

records, so Plaintiff Neighborhood House is working to verify the status of its clients to help prevent misinformed terminations. Of the 220 clients DSHS has identified, about 150 are SSI recipients.

51. Plaintiff Neighborhood House will lose all public funding to serve its noncitizen clients who lose their Medicaid benefits and anticipates having to lay off additional case management staff as well as management and administrative staff.

52. Plaintiff Neighborhood House's current staff have spent numerous hours looking for alternative resources and helping its clients plan for October 1, 2026. These low-income SSI clients must either find a way to pay out-of-pocket or seek unpaid care. Plaintiff Neighborhood House's SSI clients have accumulated few if any resources and have insufficient income to privately pay for caregiving services or health insurance plans.

53. Many family members who have been receiving Medicaid payments to provide care to Plaintiff Neighborhood House's clients cannot afford to forgo paid employment to continue providing unpaid care. Because hospitals must provide charity care and may be able to receive some limited Medicaid reimbursements for emergency care, the only available plan for most of Plaintiff Neighborhood House's affected clients is to seek these services at emergency departments and inpatient hospitalization. This will burden the State's already overburdened emergency medical system.

54. Plaintiff Matsai is one of Plaintiff Neighborhood House's clients. She was paroled into the United States when she fled the Ukraine War on June 12, 2024, with her daughter and two young grandchildren, and was granted re-parole through June 11, 2028. Due to her declining physical health, she needs assistance to move, transfer, prevent falls, and complete foot care and other personal care tasks. She also needs help managing the numerous critical medications



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

prescribed for her conditions, and assistance with monitoring her vitals, blood glucose, and for critical signs of physical distress, including swelling, shortness of breath, bleeding, or other changes in her condition.

55. Because Plaintiff Matsai entered the U.S. through Ukrainian humanitarian parole between February 2022 and September 2024, she is entitled to the same public benefits as refugees, who are eligible for SSI under PRWORA. 8 U.S.C. §1612(a), H.R. 7691, Pub. L. No. 117-128 at § 401, 136 Stat. 1218, and H.R. 815, Pub. L. No. 188-50 at § 301, 138 Stat. 913. She receives $601 per month in SSI payments and is a Medicaid enrollee.

56. Through the Medicaid program, Plaintiff Matsai receives medical treatment and 158 hours of paid caregiving per month. With this benefit, her daughter is able to provide her with the care and support she needs to maintain her fragile health.

57. Plaintiff Matsai's daughter is the only person in the household who is capable of earning money, so without Medicaid funding to pay for her caregiving services, she will have no choice but to seek other employment in order to pay for the family's rent, which far exceeds Plaintiff Matsai's SSI payments. With highly limited income, their family has no realistic means to afford to pay for Plaintiff Matsai's medications, caregiving services, and other medical expenses in addition to rent, utilities, food, and other basic needs.

58. On or about August 12, 2026, DSHS sent a notice to Plaintiff Matsai that, due to H.R. 1, she may no longer be eligible for their long-term care services if they are not citizens, LPRs, COFA residents, or Cuban or Haitian entrants. The notice informed them that DSHS "will review your information to see if you still qualify under the new federal rules or any state-funded programs. Your long-term care case manager will also be contacting you to discuss these changes and if any options are available."



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

59. Despite her intensive needs, Plaintiff Matsai is not among the thirteen Neighborhood House clients who will be receiving the limited state-only funded long-term care services. Like most or all other noncitizen SSI recipients, she does not qualify for any other publicly-funded healthcare benefits that include healthcare benefits and the level of long-term care available through Medicaid.

60. On October 1, 2026, Plaintiff Matsai also will no longer receive healthcare benefits or paid care. Without these supports, her health conditions will likely worsen dramatically within a matter of days. She will be at risk of suffering life threatening heart failure, stroke, hypertension crisis, diabetic coma, and falls. Her only option will be to seek emergency care and hospitalization.

61. The imminent risks of harm that Plaintiff Matsai faces are typical of the imminent harms that an estimated 150 other Neighborhood House SSI beneficiary clients are facing.

**D. Plaintiffs' Standing**

62. As a service organization serving the categories of noncitizen SSI recipients who stand to lose Medicaid-funded services pursuant to the SHO Letter and Implementation Tool, Neighborhood House has standing to bring this APA challenge to HHS's action. The SHO Letter and Implementation Tool will cause Neighborhood House to lose a substantial amount of funding, and the challenged agency action will impair Neighborhood House's ability to provide the services it was formed to provide.

63. If the HHS guidance to terminate the Medicaid entitlement and funding for SSI recipients is stayed, declared unlawful, set aside, and permanently enjoined, the harm to Neighborhood House would be redressed because it would be able to continue providing the same services at the same funding levels. As an organization serving aged, disabled, very low-income eligible SSI recipients, the interests of Neighborhood House are sufficiently congruent with those



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

of their clients to be within the zone of interests to be protected or regulated by PRWORA and the Medicaid Act. *See La Clinica de la Raza v. Trump*, 706 F. Supp. 3d 903, 929 (N.D. Cal. 2020).

64. Plaintiff Matsai has standing because, as a noncitizen SSI recipient who receives life-sustaining Medicaid funded long-term care services, she will be harmed by HHS's imminent termination of her Medicaid benefits.

65. If the HHS guidance to terminate the Medicaid entitlement and funding for SSI recipients is stayed, declared unlawful, set aside, and permanently enjoined, the harm to the individuals would be redressed because their entitlement to Medicaid benefits would remain equal to other covered SSI recipients, and they would continue to receive the long-term care services they require. Plaintiff Matsai's interests are within the zone of interests to be protected or regulated by PRWORA and the Medicaid Act because she is an aged, disabled, very low-income eligible SSI recipient.

## V. CLAIMS FOR RELIEF

### Count I
### Violation of the Administrative Procedure Act, 5 U.S.C. §§ 705, 706(2)
### Contrary to Law – Noncitizen Eligibility

66. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

67. HHS is an "agency" under the APA. 5 U.S.C. § 551(1).

68. Plaintiff Neighborhood House is an "adversely affected or aggrieved party" under the APA because its finances and mission are being harmed by HHS's action and its interests fall within the "zone of interests" protected and regulated by the Medicaid Act and PRWORA. 5 U.S.C. § 702; *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224, 132 S. Ct. 2199, 2210, 183 L. Ed. 2d 211 (2012).



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

69. Plaintiff Matsai is an "adversely affected or aggrieved party" under the APA because she will suffer physical harm as a result of HHS's action and lose the healthcare benefits protected and regulated by the Medicaid Act and PRWORA. *Id.*

70. The APA provides that a court "on such conditions as may be required and to the extent necessary to prevent irreparable injury… may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705.

71. Under the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions found to be… contrary to constitutional right, power, privilege, or immunity," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

72. The SHO Letter and Implementation Tool constitute a final agency action, because they marked "the consummation" of agency decision making and determined "'rights or obligations' . . . from which 'legal consequences'" flowed. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

73. There is no other adequate remedy in a court to address the harm Plaintiffs will suffer as a result of the SHO Letter and Implementation Tool, including because HHS's action would only become reviewable under 42 U.S.C. § 1316 if a state refuses to comply with the agency's clear directive to cease claiming FFP for noncitizen SSI recipients.

74. The SHO Letter and Implementation Tool are contrary to law because they erroneously terminate Medicaid eligibility for SSI recipients who do not meet HHS's immigration requirements. This directly contradicts 42 U.S.C. § 1396a(a)(10)(A)(i)(II)(aa) and 8 U.S.C. §



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

1612(b)(2)(F), which H.R. 1 did not repeal or amend. Nothing in 42 U.S.C. § 1396b(v), added under H.R. 1, overrides these specific prior-enacted statutes.

75. For all of the reasons set forth in this Complaint, Plaintiffs are likely to succeed on the merits of their claim, there is a high likelihood of irreparable harm in the absence of preliminary relief, the balance of equities tips in the Plaintiffs' favor, and injunctive relief is in the public interest.

76. Pursuant to 5 U.S.C. § 705, in order to the preserve Plaintiffs' status or rights pending conclusion of review proceedings, Plaintiffs are entitled to an order postponing the effective date of Defendants' instructions to terminate Medicaid FFP eligibility for SSI recipients who are not citizens, LPRs, Cuban or Haitian Entrants, or COFA residents.

77. Pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration that the SHO Letter and Implementation Tool are contrary to law in violation of the APA.

78. Pursuant to 5 U.S.C. § 706, Plaintiffs are also entitled to permanent vacatur of HHS's instructions to terminate Medicaid FFP eligibility for SSI recipients who are not citizens, LPRs, Cuban or Haitian Entrants, or COFA residents, thus retaining the status quo regarding their Medicaid eligibility.

**Count II**
**Violation of The Administrative Procedure Act – 5 U.S.C. §§ 705, 706(2)**
**Arbitrary & Capricious – Noncitizen Eligibility**

79. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.



18 WEST MERCER ST., STE. 400 SEATTLE, WASHINGTON 98119 TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

80. The APA requires that a court "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

81. An agency action is arbitrary or capricious where it is not "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). An agency must provide "a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted).

82. An action is also arbitrary and capricious if the agency "'failed to consider . . . important aspect[s] of the problem' before" it. *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1, 25 (2020) (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43).

83. The SHO Letter and Implementation Tool are arbitrary and capricious because the Defendants failed to provide a reasoned explanation for why its own regulation, 42 C.F.R. § 435.120, as well as 42 U.S.C. § 1396a(a)(10)(A)(i)(II)(aa) and 8 U.S.C. § 1612(b)(2)(F) do not apply, notwithstanding the fact that Congress has not amended or repealed these statutory mandates for noncitizen SSI recipients to be eligible for Medicaid under the same terms and conditions as other SSI recipients.

84. The SHO Letter and Implementation Tool are arbitrary and capricious because, among other reasons, they fail to consider the following important aspects of the problem:

a. HHS failed to consider how states with 1634 Agreements delegating eligibility determinations to SSA will implement terminations for otherwise qualified SSI recipients; and



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

b. HHS disregarded the harmful effects its action will have on qualified noncitizens with low incomes, highly limited resources, and who are aged, blind, and/or disabled.

85. For all of the reasons set forth in this Complaint, Plaintiffs are likely to succeed on the merits of their claim, there is a high likelihood of irreparable harm in the absence of preliminary relief, the balance of equities tips in the Plaintiffs' favor, and injunctive relief is in the public interest.

86. Pursuant to 5 U.S.C. § 705, in order to the preserve Plaintiffs' status or rights pending conclusion of review proceedings, Plaintiffs are entitled to an order postponing the effective date of Defendants' instructions to terminate Medicaid FFP eligibility for SSI recipients who are not citizens, LPRs, Cuban or Haitian Entrants, or COFA residents.

87. Pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration that the SHO Letter and Implementation Tool violate the APA because they are arbitrary and capricious and contrary to law.

88. Pursuant to 5 U.S.C. § 706, Plaintiffs are also entitled to vacatur of HHS's instructions to terminate Medicaid FFP eligibility for SSI recipients who are not citizens, LPRs, Cuban or Haitian Entrants, or COFA residents.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter an order:

1. Declaring that the SHO Letter and Implementation Tool are contrary to law under the APA;
2. Declaring that the SHO Letter and Implementation Tool are arbitrary and capricious under the APA;



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

3. Staying the effective date of the SHO Letter and Implementation Tool pursuant to 5 U.S.C. § 705, and specifically Defendants' instructions to terminate Medicaid FFP eligibility for SSI recipients who are not citizens, LPRs, Cuban or Haitian Entrants, or COFA residents;
4. Vacating and setting aside the SHO Letter and Implementation Tool pursuant to 5 U.S.C. § 706, and specifically HHS's instructions to terminate FFP Medicaid eligibility for SSI recipients who are not citizens, LPRs, Cuban or Haitian Entrants, or COFA residents;
5. Preliminarily and permanently enjoining Defendants from implementing or otherwise giving effect to the SHO Letter and Implementation Tool, pursuant to APA §§ 705 and 706;
6. Awarding Plaintiffs their attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and
7. Granting such other relief as this Court may deem just and proper.

RESPECTFULLY SUBMITTED this 25th day of August 2026.

*s/Jennifer L. Robbins*
Jennifer L. Robbins, WSBA No. 40861
*s/Travis Lavenski*
Travis Lavenski, WSBA No. 61507
**BARNARD IGLITZIN & LAVITT LLP**
18 West Mercer Street, Suite 400
Seattle, WA 98119
Tel: (206) 257-6011
Tel: (206) 257-6032
Fax: (206) 378-4132
robbins@workerlaw.com
lavenski@workerlaw.com

*s/Susan Kas*
Susan Kas, WSBA No. 36592
**NORTHWEST HEALTH LAW ADVOCATES**
1301 5th Avenue, Suite 1200
Seattle, WA 98101-2677
Tel: (425) 940-5534

susan@nohla.org

*Attorneys for Plaintiffs*



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

# **APPENDIX A**

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop S2-26-12
Baltimore, Maryland 21244-1850

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES
CENTER FOR MEDICAID & CHIP SERVICES

**SHO #26-001**

**RE: Implementation of Section 71109 "Alien Medicaid Eligibility" of the Working Families Tax Cut Legislation (Public Law 119-21)**

April 8, 2026

Dear State Health Official:

This letter is one of a series that provides guidance on the implementation of Public Law (P.L.) 119-21, which the Centers for Medicare & Medicaid Services (CMS) refers to as the "Working Families Tax Cut" (WFTC) legislation. The purpose of this State Health Official (SHO) letter is to provide Medicaid and Children's Health Insurance Program (CHIP) policy and operational guidance to states[1] related to implementation of section 71109 of the WFTC legislation, "Alien Medicaid Eligibility." Beginning October 1, 2026, sections 1903(v)(5) and 2107(e)(1)(R) of the Social Security Act (the Act), as added and amended, respectively, by section 71109 of the WFTC legislation, generally limit federal financial participation (FFP) for medical assistance (Medicaid) and child or pregnancy-related health assistance (CHIP), with limited exceptions, to U.S. citizens and U.S. nationals, lawful permanent residents (LPRs), Cuban/Haitian entrants, and Compact of Free Association (COFA) migrants.

This letter discusses in more detail the limitations on FFP and potential impacts on eligibility and availability of coverage, the implications for current beneficiaries, and the changes states may need to make to their systems and processes prior to October 1, 2026, to comply with the statutory changes made by section 71109 of the WFTC legislation. States should make any such changes to state systems and operations to protect program integrity, make accurate eligibility determinations, and ensure proper claiming of FFP, in accordance with sections 1903(v)(5) and 2107(e)(1)(R) of the Act.

---

[1] For the purposes of this letter, "states" refers to the 50 states, the District of Columbia, and the United States (U.S.) territories of American Samoa, Commonwealth of the Northern Mariana Islands (CNMI), Guam, Puerto Rico, and the U.S. Virgin Islands, unless otherwise specified.

## Contents


Background ....3

Overview of Section 71109 of the WFTC Legislation ....3

Implementation Date for Section 71109 of the WFTC Legislation ....5

Interaction between Section 71109 of the WFTC Legislation and PRWORA ....5

Impact on Noncitizens Dually Eligible for Medicare and Medicaid ....7

Implementation Requirements at Application and for Current Medicaid and CHIP Beneficiaries ....8

Considerations for Applicants and Current Beneficiaries who are Not FFP-Eligible Noncitizens ....10

Operational Considerations for States and Territories ....11

Updates to Applications, Renewal Forms, and Other Materials for Medicaid and CHIP ....12

Verification of Immigration Status or Category ....13

Considerations for Medicaid Managed Care Programs ....16

Medicaid and CHIP Information Technology (IT) Systems Costs and Upgrades ....16

Financial Systems and Proper Claiming ....18

Transformed-Medicaid Statistical Information System (T-MSIS) ....18

Federal Medical Assistance Percentage (FMAP) ....19

FMAP for Full Medicaid and CHIP Benefits (including under the CHIPRA 214 Option) ....19

FMAP for Emergency Medicaid ....19

State Plan Amendment (SPA) Submission ....20

Territory Considerations ....21

Closing ....22

APPENDIX A - Details Regarding Qualified Noncitizen Coverage in Medicaid and CHIP Before and After Implementation of Section 71109 of the WFTC Legislation ....23

APPENDIX B - Summary of Hub Changes in Accordance with Section 71109 of the WFTC Legislation ....29

## Background

Under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA) (P.L. 104-193), certain "qualified aliens," defined under Medicaid and CHIP as "qualified noncitizens"[2] (e.g., LPRs, refugees, and asylees), are eligible for federal public benefits, including full Medicaid and CHIP coverage,[3] if they meet all other eligibility requirements in the state (e.g., residency, income). Other federal statutes require other categories of individuals – including certain victims of human trafficking[4] and certain Afghan[5] and Ukrainian[6] parolees – to be treated as "refugees," and therefore they are eligible for full Medicaid or CHIP coverage if they meet all other eligibility requirements in the state. In accordance with PRWORA, many qualified noncitizens are subject to a five-year waiting period before becoming eligible for full Medicaid or CHIP coverage, but some noncitizens (e.g., refugees and asylees) are exempted from the five-year waiting period.[7]

The Children's Health Insurance Program Reauthorization Act of 2009 (CHIPRA) (P.L. 111-3) authorized an option for states to provide full Medicaid and CHIP coverage to children (up to age 21 for Medicaid and up to age 19 for CHIP) and pregnant women who are lawfully residing in the U.S., without having to meet the five-year waiting period, if otherwise applicable (often referred to as the "CHIPRA 214 option").[8]

## Overview of Section 71109 of the WFTC Legislation

Beginning October 1, 2026, section 1903(v)(5) of the Act (added by section 71109 of the WFTC legislation and made applicable to CHIP through section 2107(e)(1)(R) of the Act), restricts, with limited exceptions, FFP for non-emergency medical assistance under title XIX (i.e., medical assistance that is not necessary for treatment of an emergency medical condition, as defined in section 1903(v)(3) of the Act), and for child and pregnancy-related health assistance under title XXI to the following groups, provided that the individual is a resident[9] of one of the 50 states, the District

---

[2] "Qualified noncitizen" is defined at 42 C.F.R. § 435.4 for Medicaid and cross-referenced at 42 C.F.R. § 457.320(c) for CHIP. "Qualified noncitizen" includes: (1) noncitizens who are considered "qualified aliens" under 8 U.S.C. § 1641(b) and (c); and (2) noncitizens who are treated as refugees under other federal statutes.

[3] PRWORA was enacted in 1996, prior to the establishment of CHIP through the Balanced Budget Act of 1997 (P.L. 105-33). The U.S. Department of Health and Human Services (HHS) identified CHIP as a "federal public benefit," as defined at 8 U.S.C. § 1611(c), for the purposes of applying eligibility limitations at 8 U.S.C. § 1611 (HHS, Notice with comment period, "Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA); Interpretation of 'Federal Public Benefit' (63 Fed. Reg. 41658), Aug. 4, 1998, available at: https://www.govinfo.gov/content/pkg/FR-1998-08-04/pdf/98-20491.pdf). The five-year waiting period applies to CHIP in accordance with 8 U.S.C. § 1613. See SHO letter, (issued Jan. 14, 1998), available at: https://www.medicaid.gov/Federal-Policy-Guidance/downloads/sho011498.pdf.

[4] 8 U.S.C. § 1101(a)(15)(T)(i)-(ii); 22 U.S.C. § 7105(b)(1)(A) and (C); 8 U.S.C. § 1641(c)(4).

[5] Section 2502 of the Extending Government Funding and Delivering Emergency Assistance Act (P.L. 117-43 as amended, enacted Sept. 30, 2021) and Section 1501 of the Consolidated Appropriations Act, 2023, (P.L. 117-328).

[6] Section 401 of the Additional Ukraine Supplemental Appropriations Act (P.L. 117-128 as amended, enacted May 21, 2022), as amended by Section 301 of the Ukraine Security Supplemental Appropriations Act, 2024 (P.L. 118-50).

[7] 8 U.S.C. § 1613. The five-year waiting period is commonly referred to as the "five-year bar."

[8] Sections 1903(v)(4)(A) and 2107(e)(1)(Q) of the Act.

[9] 42 C.F.R. §§ 435.403 and 457.320(e).

of Columbia, or a U.S. territory, and meets all other applicable eligibility criteria in the respective jurisdiction:

- U.S. citizens and U.S. nationals,
- LPRs/"green card holders,"[10]
- Cuban/Haitian entrants,[11] and
- COFA migrants.[12]

In other words, generally, FFP is not available for full Medicaid benefits, for non-emergency Medicaid services provided to a limited-benefit eligibility group (such as the family planning eligibility group[13]), or for CHIP coverage for individuals unless they are in one of the groups in the bulleted list above or meet one of the discrete exceptions listed below. Throughout this letter, we refer to this Medicaid and CHIP coverage for which section 1903(v)(5) of the Act limits the availability of FFP as "full Medicaid and CHIP benefits,"[14] and we refer to LPRs, Cuban/Haitian entrants, and COFA migrants, as described in section 1903(v)(5)(B)(ii)-(iv) of the Act, as "FFP-eligible noncitizens."

Given these changes, beginning October 1, 2026, with limited exceptions, FFP will no longer be available for full Medicaid or CHIP benefits furnished to qualified noncitizens who are not also FFP-eligible noncitizens (e.g., asylees, refugees, parolees, or victims of trafficking) unless they have another immigration status or category[15] that meets the definition of an FFP-eligible noncitizen.[16] See *Appendix A* for more information on the availability of coverage, by immigration status or category, for qualified noncitizens prior to and following the applicability date of section 71109 of the WFTC legislation.

---

[10] Section 1903(v)(5)(B)(ii) of the Act describes an individual who is lawfully admitted for permanent residence as an immigrant under the Immigration and Nationality Act (INA), as defined by sections 101(a)(15) and 101(a)(20) of the INA (8 U.S.C. § 1101(a) et seq.); 8 U.S.C. § 1641(b)(1).

[11] Section 1903(v)(5)(B)(iii) of the Act describes an individual who has been granted the status of Cuban/Haitian entrant as defined under section 501(e) of Refugee Education Assistance Act of 1980; 8 U.S.C. §§ 1612(b)(2)(A)(i)(IV), 1613(b)(1)(D), and 1641(b)(7).

[12] Section 1903(v)(5)(B)(iv) of the Act describes an individual who lawfully resides in the U.S. in accordance with a COFA referred to in section 402(b)(2)(G) of PRWORA. 8 U.S.C. §§ 1612(b)(2)(G), 1613(b)(3), and 1641(b)(8). Medicaid coverage of COFA migrants is optional for territories. As of April 2026, CNMI and Guam have elected this option in Medicaid.

[13] Section 1902(a)(10)(A)(ii)(XXI) of the Act and 42 C.F.R. § 435.214.

[14] The term "full Medicaid and CHIP benefits" refers to full Medicaid benefits, partial or limited Medicaid benefits (e.g., only family planning services, Medicare Savings Programs (MSPs)), and CHIP coverage; it excludes Medicaid payment for the limited coverage of an emergency medical condition ("emergency Medicaid") authorized under section 1903(v)(2) of the Act. Emergency Medicaid coverage does not apply to separate CHIPs.

[15] The term "category" is used for certain noncitizens (i.e., Cuban/Haitian entrants described at 8 U.S.C. § 1641(b)(7); see also https://www.uscis.gov/save/resources/information-for-save-users-cuban-haitian-entrants) and relates to eligibility for certain federal public benefits, including Medicaid, rather than to a specific immigration status.

[16] 42 C.F.R. §§ 435.406(a)(2) and 457.320(b)(6) require coverage of qualified noncitizens who have provided verified, satisfactory documentary evidence of their declared qualified noncitizen status and meet all other eligibility requirements in the state. We acknowledge that these requirements will not be aligned with the FFP limitations at section 1903(v)(5) of the Act beginning October 1, 2026. We plan to update Medicaid and CHIP regulations in future notice and comment rulemaking for consistency with sections 1903(v)(5) and 2107(e)(1)(R) of the Act.

Section 1903(v)(5) of the Act describes only three exceptions to these FFP limitations: (1) care and services necessary for the treatment of an emergency medical condition as described in section 1903(v)(3) of the Act, (often referred to as "emergency Medicaid"), per section 1903(v)(2) of the Act; (2) coverage under the CHIPRA 214 option, per section 1903(v)(4) of the Act;[17] and (3) Health Services Initiatives (HSIs), which are programs that are designed to improve the health of low-income children, authorized under section 2105(a)(1)(D)(ii) of the Act.[18] The FFP limitations described in section 1903(v)(5) of the Act do not apply to Medicaid or CHIP expenditures provided under these three exceptions. We note that section 1903(v)(5) of the Act did not make any changes to coverage of emergency Medicaid authorized under section 1903(v)(2) of the Act nor to coverage under the CHIPRA 214 option (if a state elects such option) authorized under section 1903(v)(4) of the Act.

In the sections below, we describe implementation of section 71109 of the WFTC legislation, the interaction between the statutory changes made by section 71109 of the WFTC legislation and PRWORA, and the impact on noncitizens dually eligible for Medicare and Medicaid.

**Implementation Date for Section 71109 of the WFTC Legislation**

For applicants determined eligible for Medicaid or CHIP on and after October 1, 2026, and for beneficiaries enrolled in Medicaid or CHIP on and after October 1, 2026, states must ensure they appropriately claim FFP in accordance with sections 1903(v)(5) and 2107(e)(1)(R) of the Act, including under an exception specified at sections 1903(v)(2), 1903(v)(4), or 2105(a)(1)(D)(ii) of the Act. Thus, states will need to implement any systems and operational changes necessary to ensure such proper FFP claiming by October 1, 2026.

**Interaction between Section 71109 of the WFTC Legislation and PRWORA**

PRWORA establishes a statutory framework limiting eligibility of noncitizens for federal public benefits, including for full Medicaid and CHIP benefits, to "qualified aliens," as defined in 8 U.S.C. § 1641.[19] Section 403 of PRWORA subjects many qualified noncitizens to a five-year waiting period before becoming eligible for full Medicaid or CHIP benefits[20] (e.g., LPRs) and provides for exceptions to this five-year waiting period for other specified qualified noncitizens[21] (e.g., Cuban/Haitian entrants). Under section 402 of PRWORA, states are required to provide full Medicaid benefits to certain qualified noncitizens, if they otherwise meet all eligibility

---

[17] Applicable to CHIP through a cross-reference to section 1903(v)(4) of the Act at section 2107(e)(1)(Q) of the Act.
[18] Section 2107(e)(1)(R) of the Act. For general background on HSIs, see the Center for Medicaid and CHIP Services (CMCS) Frequently Asked Questions (FAQs), "Health Services Initiative," (Jan. 12, 2017), available at: https://www.medicaid.gov/federal-policy-guidance/downloads/faq11217.pdf.
[19] 8 U.S.C. § 1611(a). For discussion on PRWORA's applicability to CHIP, see footnote 3.
[20] 8 U.S.C. § 1613(a). See U.S. Department of Justice (DOJ), Notice of interim guidance with request for comments, "Interim Guidance on Verification of Citizenship, Qualified Alien Status and Eligibility Under Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996," 62 Fed. Reg 61344, 61349-50, 61414-16, Attachment 7 (Nov. 17, 1997), available at: https://www.govinfo.gov/content/pkg/FR-1997-11-17/pdf/97-29851.pdf.
[21] 8 U.S.C. § 1613(b).

requirements.[22] For example, states must provide full Medicaid benefits to Cuban/Haitian entrants for seven years after their grant date of Cuban/Haitian entrant status if they meet all other eligibility requirements in the state,[23] and states have the option to provide full Medicaid benefits to Cuban/Haitian entrants beyond the seven year period.[24]

While section 1903(v)(5) of the Act places limits on the availability of FFP for full Medicaid and CHIP benefits for certain noncitizens beginning on October 1, 2026, the WFTC legislation did not amend: the definition of qualified alien in PRWORA;[25] the limitation in PRWORA that eligibility for federal public benefits, including full Medicaid and CHIP benefits, is restricted to qualified aliens;[26] or the applicability of the five-year waiting period (and exceptions thereto) to certain qualified aliens.[27] States must continue to apply relevant eligibility rules in 8 U.S.C. §§ 1613 (for Medicaid and CHIP) and 1612 (for Medicaid, only) to those qualified noncitizens who are also FFP-eligible noncitizens. Therefore, on and after October 1, 2026, states must continue to apply the five-year waiting period to LPRs in accordance with 8 U.S.C. § 1613(a), unless an exception provided in 8 U.S.C. §§ 1613(b) or (d)(1) applies (e.g., LPRs who are veterans or active-duty armed forces service members or certain family members of such an individual[28]). States must continue to except Cuban/Haitian entrants and COFA migrants from the five-year waiting period.[29] Similarly, states must continue to provide full Medicaid benefits to FFP-eligible noncitizens in accordance with 8 U.S.C. § 1612(b) (e.g., states must provide full Medicaid benefits to LPRs who have worked, or can be credited with, 40 qualifying quarters, and may elect to provide full Medicaid benefits to all LPRs[30]). Specifically, in accordance with 8 U.S.C. § 1612(b)(2), states must not apply additional eligibility limitations to certain FFP-eligible noncitizens (e.g., certain Indians who are LPRs[31] and COFA migrants[32]).

Section 71109 of the WFTC legislation did not amend the description in 8 U.S.C. § 1612(b)(2) of the populations to which states must provide full Medicaid benefits, nor did it amend the description or scope of the populations in section 1902 of the Act to which states are required to provide medical assistance[33] (e.g., individuals to whom supplemental security income (SSI) benefits are being paid).

---

[22] 8 U.S.C. § 1612(b) specifies that it applies to Medicaid as a "designated federal program" defined at 8 U.S.C. § 1612(b)(3)(C). Since CHIP has never been identified as a "designated federal program," we do not interpret the provisions of 8 U.S.C. § 1612(b) as applicable to separate CHIPs.
[23] 8 U.S.C. § 1612(b)(2)(A)(i)(IV).
[24] 8 U.S.C. § 1612(b)(1).
[25] 8 U.S.C. §§ 1641(b) and 1641(c).
[26] 8 U.S.C. § 1611(a).
[27] 8 U.S.C. § 1613.
[28] 8 U.S.C. § 1613(b)(2).
[29] 8 U.S.C. § 1613(b)(1)(D); 8 U.S.C. § 1613(b)(3).
[30] 8 U.S.C. § 1612(b)(2)(B). In accordance with 8 U.S.C. § 1613, LPRs must also meet the five-year waiting period, unless an exception applies.
[31] 8 U.S.C. § 1612(b)(2)(E).
[32] 8 U.S.C. § 1612(b)(2)(G).
[33] In particular, states are required to provide medical assistance that includes at least the care and services described in sections 1905(a)(1)-(5), (13)(B), (17), (21), (28), (29), and (30) of the Act to individuals listed at section 1902(a)(10)(A) of the Act. (Section 1902(a)(10)(A) of the Act.)

At the same time, neither the text of section 71109 of the WFTC legislation nor its legislative history demonstrates a clear Congressional intent to require that states provide full Medicaid benefits to qualified noncitizens without receiving federal matching funds for that coverage. Under these circumstances and consistent with relevant case law,[34] beginning October 1, 2026, CMS will not require states to provide state-only funded health coverage to qualified noncitizens for whom FFP is not available for full Medicaid benefits under 1903(v)(5) of the Act (e.g., asylees, refugees, parolees, or victims of trafficking who are not also FFP-eligible noncitizens), including populations listed at section 1902 of the Act. Moreover, because section 71109 of the WFTC legislation did not clearly and unambiguously alter the fundamental structure of the Medicaid program, whose "cornerstone" is "financial contribution by both the Federal Government and the participating State,"[35] we would not consider health coverage that a state opts to continue to provide with 100 percent state-only funds to be Medicaid, notwithstanding the fact that 8 U.S.C. § 1612(b)(2) still describes coverage that will no longer be eligible for federal matching funds beginning October 1, 2026 as "Medicaid," and notwithstanding the fact that section 1902 of the Act still describes mandatory Medicaid coverage that (when provided to certain populations) will no longer be eligible for federal matching funds beginning October 1, 2026. Therefore, beginning October 1, 2026, a noncitizen must be an FFP-eligible noncitizen or meet one of the statutory exceptions listed in section 1903(v)(5) of the Act to have "satisfactory immigration status" for full Medicaid benefits (including for purposes of section 1137(d) of the Act). See *Appendix A* for more information on the availability of FFP for coverage by immigration status or category prior to and following the applicability date of the statutory changes made by section 71109 of the WFTC legislation.

While PRWORA does not describe any populations who must be eligible for CHIP, the same reasoning identified above for Medicaid applies to CHIP. Specifically, neither the text of section 71109 of the WFTC legislation nor its legislative history demonstrates a clear Congressional intent to require that states provide CHIP benefits to qualified noncitizens without receiving federal matching funds for that coverage, and we do not consider coverage that a state might opt to continue providing with 100 percent state-only funds to be "CHIP."

**Impact on Noncitizens Dually Eligible for Medicare and Medicaid**

The term "dually eligible beneficiaries" generally describes beneficiaries who are eligible for both Medicare and Medicaid. The term includes beneficiaries enrolled in Medicare Part A, Part B, or both, who receive either full Medicaid benefits or assistance with Medicare premiums and often cost-sharing through a Medicare Savings Program (MSP) eligibility group.[36] Sections 1903(v)(5) and 1899C of the Act, as added by section 71109 and section 71201 of the WFTC legislation, respectively, both impact noncitizens who are dually eligible for Medicare and Medicaid. Section 1899C of the Act limits Medicare eligibility for noncitizens to the same groups for which section

---

[34] See, e.g., *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17-18 (1981); *Harris v. McRae*, 448 U.S. 297, 308-09 (1980); see also *Detgen ex rel. Detgen v. Janek*, 945 F. Supp. 2d 746, 759 (N.D. Tex. 2013), *aff'd*, 752 F.3d 627 (5th Cir. 2014).

[35] *McRae*, 448 U.S. at 308.

[36] Federal Coordinated Health Care Office Fact Sheet, "Dual Eligibility Categories," (Jan. 15, 2025), available at: https://www.cms.gov/files/document/dual-eligible-categories-01152026.pdf.

1903(v)(5) of the Act permits FFP for full-benefit Medicaid coverage (i.e., LPRs, Cuban/Haitian entrants, and COFA migrants). Section 1899C of the Act applies 18 months after the date of enactment of the WFTC legislation. Section 1899C of the Act otherwise applies immediately to limit entitlement to, or enrollment for, Medicare after July 4, 2025. We expect to provide more information on section 1899C of the Act in forthcoming guidance.

## Implementation Requirements at Application and for Current Medicaid and CHIP Beneficiaries

States will need to implement changes by October 1, 2026, to comply with the FFP limitations outlined in section 1903(v)(5) of the Act with respect to individuals who apply for coverage on and after October 1, 2026, and to beneficiaries who are enrolled in Medicaid or CHIP on October 1, 2026. Beginning October 1, 2026, states must ensure proper FFP claiming by limiting determinations of eligibility for full Medicaid and CHIP benefits to only those individuals for whom FFP is available for that coverage under sections 1903(v)(5) and 2107(e)(1)(R) of the Act. States will need to implement these new requirements when verifying citizenship or satisfactory immigration status, as required under sections 1137 and 2105(c)(9) of the Act, and implementing regulations at 42 C.F.R. §§ 435.406, 435.956, and 457.380(b). See the section of this letter entitled *Verification of Immigration Status or Category* for more information. Potential changes to states' Medicaid and CHIP applications and to eligibility and enrollment and other systems necessitated by the implementation of sections 1903(v)(5) and 2107(e)(1)(R) of the Act are discussed in the sections of this letter entitled *Updates to Applications, Renewal Forms, and Other Materials for Medicaid and CHIP* and *Medicaid and CHIP Information Technology (IT) Systems Costs and Upgrades*.

Because section 1903(v)(5) of the Act affects certain individuals' eligibility for federally funded coverage and because CMS does not consider health coverage to be Medicaid or CHIP coverage unless federal matching funds are available, CMS interprets section 1903(v)(5) of the Act as a statutory change that potentially may affect an individual's eligibility for Medicaid or CHIP coverage. Similarly, CMS interprets section 1903(v)(5) of the Act as affecting an individual's "satisfactory immigration status" for full Medicaid or CHIP benefits for purposes of section 1137(d) of the Act.

Thus, in accordance with 42 C.F.R. §§ 435.916(d) (2023) and 457.343,[37] states must promptly act on this statutory change and assess whether certain beneficiaries continue to be in a satisfactory

---

[37] Section 71102 of the WFTC legislation imposed a moratorium prohibiting CMS from implementing, administering, or enforcing certain amendments made by a CMS final rule entitled "Streamlining the Medicaid, Children's Health Insurance Program, and Basic Health Program Application, Eligibility Determination, Enrollment, and Renewal Processes" (89 Fed. Reg. 22780 (Apr. 2, 2024)) (the "2024 Eligibility and Enrollment (E&E) Final Rule") available at: https://www.govinfo.gov/content/pkg/FR-2024-04-02/pdf/2024-06566.pdf. The moratorium applies to certain provisions of the 2024 E&E Final Rule that have a compliance date after July 4, 2025, the date the WFTC legislation was enacted, and ends on September 30, 2034. To comply with the moratorium, in this SHO letter, CMS refers to the renewal requirements and the requirements for acting on changes in circumstances at 42 C.F.R. § 435.916, including those cross-referenced at 42 C.F.R. § 457.343, in effect as of 2023, available at: https://www.ecfr.gov/on/2024-06-02/title-42/chapter-IV/subchapter-C/part-435 and https://www.ecfr.gov/on/2024-06-02/title-42/chapter-IV/subchapter-D/part-457. For more information on the moratorium, see the CIB "Working Families Tax Cut" Legislation, Public Law 119-21: Summary of Medicaid and Children's Health Insurance Program (CHIP) Related Provisions," (Nov. 18, 2025), available at: https://www.medicaid.gov/federal-policy-guidance/downloads/cib11182025.pdf.

immigration status that confers full Medicaid and CHIP benefits. States must attempt to redetermine satisfactory immigration status without the involvement of the beneficiary, if possible, and must contact the beneficiary if they are unable to reverify the satisfactory immigration status without additional information, consistent with 42 C.F.R. §§ 435.952(a)-(d) and 457.380(f).

When addressing this statutory change, states must first attempt to identify all potentially affected beneficiaries (i.e., beneficiaries enrolled in and receiving full Medicaid or CHIP benefits who are not U.S. citizens or U.S. nationals, and whose immigration status or category is not LPR, Cuban/Haitian entrant, or COFA migrant, or who are not lawfully residing children or pregnant women in states that have elected the CHIPRA 214 option).[38] Once the state identifies the potentially affected beneficiaries, the state must redetermine eligibility based on available information, if possible. States must first attempt to reverify a beneficiary's satisfactory immigration status through electronic data sources (i.e., Department of Homeland Security's (DHS's) Systematic Alien Verification for Entitlements (SAVE) program[39]) before attempting to contact the beneficiary.

If the state is unable to verify a beneficiary's satisfactory immigration status electronically, the state must request information from the beneficiary in accordance with 42 C.F.R. §§ 435.952(c)-(d) and 457.380(f) and give the beneficiary a reasonable period of time to provide information prior to the state taking adverse action.[40] The state must consider all information and documentation submitted by the beneficiary as the state redetermines eligibility. If the beneficiary responds with additional information about their current immigration status, including a new declaration of satisfactory immigration status, and the state is unable to verify such status, the state must provide the beneficiary with a 90-day reasonable opportunity period (ROP), as required by sections 1137(d), 1902(a)(46), 1902(ee), 1903(x), and 2105(c)(9) of the Act.[41]

If the state verifies that the beneficiary continues to have a satisfactory immigration status for the coverage in which they are enrolled, the beneficiary will retain coverage, and the state should notify the beneficiary that they continue to be eligible for the coverage in which they are enrolled. If information or documentation provided by the beneficiary demonstrates the individual no longer has satisfactory immigration status for the coverage in which they are enrolled, or if the beneficiary does not respond to the state's request within the time specified by the state, the state must comply with requirements at 42 C.F.R. §§ 435.916(f) (2023), 457.343, and 457.350 to consider all bases of

[38] States that are unable to individually identify all potentially affected beneficiaries will need to reverify the satisfactory immigration status for a broader population of noncitizens enrolled in Medicaid or CHIP (the scope may depend on state systems). For example, a state that does not retain data on the specific, verified immigration status or category for a beneficiary but, instead, retains a general designation of verified qualified noncitizen, may need to redetermine eligibility for all qualified noncitizens. A state that retains only the immigration status for those who are LPRs would need to redetermine eligibility for any other noncitizens receiving full Medicaid or CHIP benefits, with the exception of those beneficiaries receiving full Medicaid or CHIP benefits under a state's election of the CHIPRA 214 option.
[39] See https://www.uscis.gov/save; also discussed in the *Verification of Immigration Status* section of this letter.
[40] Regardless of the source of information, 42 C.F.R. §§ 435.916(d)(1)(i) (2023) and 457.343 require that states limit requests for information from beneficiaries whose eligibility is based on modified adjusted gross income (MAGI) methodology to information related to the potential change in circumstances (which, here, is the statutory change that potentially affected their satisfactory immigration status).
[41] 42 C.F.R. §§ 435.956(b) and 457.380(b)(1).

eligibility (e.g., under a state's election under the CHIPRA 214 option and emergency Medicaid) and must provide advance notice of adverse action, including the right to a Medicaid fair hearing or CHIP review, before terminating coverage or reducing benefits.[42]

**<u>Considerations for Applicants and Current Beneficiaries who are Not FFP-Eligible Noncitizens</u>**

When states determine eligibility for applicants and current beneficiaries who are not FFP-eligible noncitizens, states must evaluate whether an individual is eligible for full Medicaid or CHIP benefits on any basis under the state plan, including under the CHIPRA 214 option (if the state elects such option).[43] If an applicant, who is not an FFP-eligible noncitizen, is a lawfully residing child or pregnant woman (e.g., a refugee) and meets all other eligibility requirements in the state, the applicant can be determined eligible for full Medicaid or CHIP benefits under the state's CHIPRA 214 option. If the state identifies that a current beneficiary is eligible for full Medicaid or CHIP benefits under the state's CHIPRA 214 option, the state would maintain full Medicaid or CHIP benefits for such beneficiary.[44] States may need to update their systems to accurately evaluate eligibility for Medicaid or CHIP coverage under CHIPRA 214 for applicants and current beneficiaries who are currently eligible for full Medicaid or CHIP benefits but who will not be FFP-eligible noncitizens beginning October 1, 2026. For a list of specifically affected populations, see *Appendix A*.

For Medicaid applicants and current Medicaid beneficiaries who are not FFP-eligible noncitizens and are not eligible under a state's election of the CHIPRA 214 option, FFP remains available for emergency Medicaid coverage for such individuals in accordance with section 1903(v)(5) of the Act on and after October 1, 2026.[45] For current Medicaid beneficiaries in a continuous eligibility period or continuous postpartum coverage,[46] the state must apply the FFP limitation under section

---

[42] 42 C.F.R. §§ 435.917, 435.918, and 42 C.F.R Part 431 Subpart E for Medicaid (which require at least ten days advance notice of the proposed termination and an opportunity for a fair hearing) and 42 C.F.R. §§ 457.340(e), 457.1130(a), and 457.1180 (2023) for CHIP (which require a timely and adequate written notice of the proposed termination and an opportunity for review). (See: https://www.ecfr.gov/on/2024-06-02/title-42/chapter-IV/subchapter-D/part-457 and footnote 37.)

[43] As of publication of this letter, 39 states, the District of Columbia, and three territories have elected the CHIPRA 214 option, see: https://www.medicaid.gov/medicaid/enrollment-strategies/medicaid-and-chip-coverage-lawfully-residing-children-pregnant-individuals.

[44] Qualified noncitizens are considered "lawfully residing" for purposes of the CHIPRA 214 option. Section 1903(v)(4)(A) of the Act, (cross-referenced at section 2107(e)(1)(Q) of the Act for CHIP), specifies that coverage to lawfully residing children and/or pregnant women authorized under the CHIPRA 214 option is provided notwithstanding sections 401(a), 402(b), and 403 of PRWORA (8 U.S.C. §§ 1611(a), 1612(b), 1613). These limitations would not apply to the CHIPRA 214 population that the state has elected to cover in accordance with section 1903(v)(4) of the Act. CMCS SHO letter #10-006, "Medicaid and CHIP Coverage of "Lawfully Residing" Children and Pregnant Women," (July 1, 2010), available at: https://www.medicaid.gov/federal-policy-guidance/downloads/SHO10006.pdf.

[45] Section 1903(v)(2) of the Act; 8 U.S.C. § 1611(b)(1)(A).

[46] This includes children in a continuous eligibility period under the state plan or section 1115 demonstrations under section 1902(e)(12) of the Act; individuals covered during a period of continuous postpartum coverage under the state plan or section 1115 demonstrations under section 1902(e)(16) of the Act; and individuals receiving authority for an expanded continuous eligibility period under the terms of a section 1115 demonstration. CMS reminds states that we do not anticipate approving new state proposals or extending existing state section 1115 demonstration expenditure authority that allow for expanded continuous eligibility beyond what is required or available under the Medicaid and CHIP statutes. CMS letter "Section 1115 Demonstration Authority for Continuous Eligibility Initiatives," (July 17, 2025), available at:

1903(v)(5) of the Act. We remind states that availability of FFP is limited to payment for emergency Medicaid coverage during the remainder of the continuous eligibility period under sections 1902(e)(12) or 1902(e)(16) of the Act for such Medicaid beneficiaries who are not FFP-eligible noncitizens or eligible under a state's election of the CHIPRA 214 option.[47]

For CHIP applicants and current CHIP beneficiaries who are not FFP-eligible noncitizens and are not eligible for CHIP coverage under a state's election of the CHIPRA 214 option, no FFP is available on and after October 1, 2026, as there is no authorization for coverage of emergency services in a separate CHIP. Beginning October 1, 2026, FFP will no longer be available for current CHIP beneficiaries in a continuous eligibility period under sections 2107(e)(1)(L) or 2107(e)(1)(K) of the Act who are not FFP-eligible noncitizens,[48] unless the state has elected the CHIPRA 214 option for these populations. Thus, states would terminate separate CHIP eligibility for such beneficiaries after providing required sufficient notice and review rights.[49]

## Operational Considerations for States and Territories

The changes made to the availability of FFP for Medicaid and CHIP in sections 1903(v)(5) and 2107(e)(1)(R) of the Act could require states to update eligibility determination processes for new applicants and current beneficiaries. We expect these updates would include changes to eligibility systems and related operational processes. Below we address key operational considerations for states when implementing these changes, including updates to applications and other materials, verification of immigration status or category, and considerations for managed care plans.[50]

As states make system and operational changes by October 1, 2026 to ensure proper FFP claiming and accurate Medicaid and CHIP eligibility determinations consistent with section 1903(v)(5) of the Act, states are also reminded that they should take appropriate measures to ensure erroneous payments are not made as a result of eligibility errors in accordance with section 1903(u)(1) of the Act, as amended by section 71106 of the WFTC legislation.[51]

---

https://www.medicaid.gov/resources-for-states/downloads/contin-elig-ltr-to-states.pdf. CMS expects to provide additional technical assistance to states about the potential impact of section 1903(v)(5) of the Act for currently approved section 1115 demonstrations.

[47] CMCS SHO letter #25-001, "Section 5112 Requirement for all States to Provide Continuous Eligibility to Children in Medicaid and CHIP under the Consolidated Appropriations Act, 2023," (Jan. 15, 2025), available at: https://www.medicaid.gov/federal-policy-guidance/downloads/sho25001.pdf.

[48] This includes children in a continuous eligibility period under the state plan or section 1115 demonstrations under section 2107(e)(1)(L) of the Act; individuals covered during a period of continuous postpartum coverage under the state plan or section 1115 demonstrations under section 2107(e)(1)(K) of the Act, (but not for individuals covered through an HSI under section 2105(a)(1)(D)(ii) of the Act); and individuals receiving authority for an expanded continuous eligibility period under the terms of a section 1115 demonstration. For additional discussion of applicability to section 1115 demonstrations, see footnotes 46 and 47.

[49] 42 C.F.R. §§ 457.340(e), 457.1130(a), and 457.1180 (2023).

[50] The term "managed care plan" in this guidance refers to managed care organizations (MCOs), prepaid inpatient health plans (PIHPs) and prepaid ambulatory health plans (PAHPs) as defined in 42 C.F.R. § 438.2.

[51] This provision is applicable beginning fiscal year 2030.

**Updates to Applications, Renewal Forms, and Other Materials for Medicaid and CHIP**

To be determined eligible for full Medicaid or CHIP benefits, an individual must declare to be a U.S. citizen or U.S. national or have satisfactory immigration status in accordance with sections 1137(d), 1902(a)(46)(B), 1902(ee), 1903(x), and 2105(c)(9) of the Act, and 42 C.F.R. §§ 435.406 and 457.320(d). Applicants who attest to having satisfactory immigration status may, but are not required to, provide additional information to support electronic verification, such as document type, and, at state option, noncitizen immigration status (e.g., attesting to LPR status).

To effectuate the FFP limitations in sections 1903(v)(5) and 2107(e)(1)(R) of the Act, states may need to update their Medicaid and CHIP applications. CMS anticipates that the application modifications needed to effectuate these statutory changes may vary among states. Some states may need to remove or modify existing questions or response options. For example, some states' applications request the type of satisfactory immigration status or document type by prompting applicants to identify the immigration status or document from a list (e.g., a list presented in a drop-down or via radio buttons in an online application). In such cases, states may need to modify the lists to account for the changes described in this letter. States may also need to revise state-specific instructions or help text included in applications (e.g., to provide the immigration statuses and categories for which FFP is available for full Medicaid and CHIP benefits beginning October 1, 2026). In states that have elected to cover lawfully residing children and/or pregnant women under the CHIPRA 214 option, the changes described herein may be more limited as the application must continue to collect the necessary information to determine eligibility for this population. As a reminder, per 42 C.F.R. §§ 435.907(e)(1) and 457.330, applications may only require an applicant to submit information needed to determine their Medicaid or CHIP eligibility.

Revising help text or instructions and modifying questions to remove information that is no longer applicable to eligibility determinations does not necessitate submission of a state plan amendment (SPA). As such, states are not required to submit a SPA to CMS to make these changes to their single streamlined applications. CMS staff are available to provide technical assistance as needed.

In addition to evaluating changes to Medicaid and CHIP applications, states may need to revise their renewal forms. For example, if a renewal form or instructions include a comprehensive list of immigration statuses and/or document types that qualified an individual for full Medicaid or CHIP benefits prior to October 1, 2026, that list might need to be revised. States may also need to update other Medicaid or CHIP materials, such as policy and procedure manuals, eligibility worker training materials, call center scripts, and website language, to reflect the changes described in this letter and for consistency with the statutory changes made by section 71109 of the WFTC legislation.

CMS continues to evaluate whether changes may be needed to the single, streamlined application developed by the Secretary, as described at 42 C.F.R. §§ 435.907(a) and (b)(1) and 457.330, to effectuate these statutory changes.

**Verification of Immigration Status or Category**

States must electronically verify an individual's immigration status or category for all individuals who have declared to have a satisfactory immigration status, in accordance with section 1137(d)(3) of the Act and 42 C.F.R. §§ 435.956(a)(2) and 457.380(b).[52] State electronic verification of immigration status or category occurs through DHS/USCIS's SAVE program. In this section, we describe how states can access the DHS/USCIS's SAVE program and use the SAVE response data to verify a noncitizen's immigration status or category, as well as the upcoming changes to the Federal Data Services Hub (the "Hub") to comply with the FFP limitations described in sections 1903(v)(5) and 2107(e)(1)(R) of the Act.

DHS/USCIS's SAVE Program, the Federal Data Services Hub, and the Graphical User Interface (GUI)

CMS and DHS/USCIS make available three pathways to states to access SAVE:

1. the Hub Verify Lawful Presence (VLP) service;
2. a direct connection between the state's eligibility system and SAVE; or
3. SAVE's web-based GUI.

States can also use a combination of these three SAVE pathways.

DHS/USCIS's SAVE program provides data to accurately reflect the current immigration status or category of a noncitizen for a new verification request based on the most up-to-date data available. The SAVE verification responses may include some combination of the following immigration information, depending on which of the three SAVE pathways the state uses (as described more below): Eligibility Statement Code (ESC)/Major codes, Class of Admission (COA) codes, Employment Authorization Document (EAD) Category codes, and grant date of verified immigration status or category.

When redetermining eligibility for potentially affected beneficiaries, states would submit a new SAVE verification request for these beneficiaries to receive a response based on the most up-to-date immigration data available for the beneficiary. SAVE provides "point in time" verification and does not update past SAVE verification responses when there is a change in immigration status or category. Potentially affected beneficiaries may have applied for and been granted adjustment of status to that of an LPR or may have another qualifying immigration status or category (for example, could be considered a Cuban/Haitian entrant) such that they may be considered an FFP-eligible noncitizen for full Medicaid or CHIP benefits. Alternatively, potentially affected beneficiaries may be lawfully residing for purposes of Medicaid or CHIP eligibility under a state's election of the CHIPRA 214 option.

---

[52] Section 1137(d)(3) of the Act directs states "to verify with the Immigration and Naturalization Service the individual's immigration status through an automated or other system (designated by the Service for use with States)." See also 42 C.F.R. §§ 435.956(a) and 457.380(b)(1)(i). DHS's U.S. Citizenship and Immigration Services (USCIS) now performs this function, see: https://www.uscis.gov/save/about-save/save-governing-laws.

*Hub VLP Service v37.1, Version 2*

The Hub interprets the immigration codes received from SAVE to help states determine Medicaid and CHIP eligibility based on qualified noncitizen status under PRWORA and lawful presence status for purposes of the CHIPRA 214 option. The Hub currently transmits indicators to states reflecting the following:

- citizenship (for individuals with naturalized or derived citizenship);
- lawful presence (used for Marketplace[53] and the CHIPRA 214 option);
- qualified noncitizen;
- if the five-year waiting period is applicable (only for qualified noncitizens);
- if the five-year waiting period is met (only for qualified noncitizens, when applicable); and
- the underlying immigration codes received from SAVE.

The Hub will continue to transmit to states all current indicators, listed above, as these indicators will not be impacted by implementation of section 1903(v)(5) of the Act.

In 2026, in addition to the current indicators, the Hub will transmit a new indicator to states reflecting FFP-eligible noncitizen status for full Medicaid and CHIP benefits in accordance with sections 1903(v)(5) and 2107(e)(1)(R) of the Act for each noncitizen verified by the Hub. See the following examples of Hub responses with the new indicator:

- *When a state submits a verification request for an asylee*, the Hub would return:
  - "Yes" for qualified noncitizen status indicator,
  - "No" for eligible noncitizen[54] status indicator,
  - "No" for whether the five-year waiting period is applicable, and
  - "Not Applicable" whether the five-year waiting period has been met.
- *When the state submits a verification request for an LPR*, the Hub would return:
  - "Yes" for qualified noncitizen status indicator,
  - "Yes" for eligible noncitizen status indicator,
  - "Yes"/"No" for whether the five-year waiting period is applicable (depending on whether the individual met an exception from the five-year waiting period), and
  - "Yes"/"No"/"Not Applicable" for whether the five-year waiting period has been met.

See *Appendix B* for a summary of the Hub changes to verify FFP-eligible noncitizen status, including the applicable ESCs, COA codes, and EAD Category codes returned by SAVE.

---

[53] Similar to the FFP limitations added by section 71109, section 71301 of the WFTC legislation added limits on eligibility for premium tax credits to noncitizens who are "eligible aliens" (i.e., LPRs, Cuban/Haitian entrants, and COFA migrants), beginning January 1, 2027.

[54] The Hub will use a simplified term of "eligible noncitizen" for the new indicator, which has the same meaning as the "FFP-eligible noncitizen" term used in this letter (i.e., LPRs, Cuban/Haitian entrants, and COFA migrants).

*Direct Connections with SAVE and the GUI*
States that connect directly with SAVE through a direct web services connection or through the GUI would read and interpret the underlying immigration codes and other responses from SAVE to verify and determine FFP-eligible noncitizen status. SAVE returns a different set of codes (e.g., ESC/Major codes, COA codes, and EAD codes) depending on which of the pathways the state uses:

- *Direct Connection* – SAVE returns the same ESC/Major codes, COA codes, and EAD codes to states with a direct web services connection as it does to the Hub.
- *GUI* – SAVE returns the same COA and EAD codes to the GUI as it does to the Hub.

States may need to update their eligibility logic to utilize the codes received from SAVE to correctly determine if an individual is an FFP-eligible noncitizen. For example, states that use the GUI or direct web services connection with SAVE would receive data confirming an individual's LPR status and grant date; these states would apply their own eligibility logic to determine whether the five-year waiting period applies and, if so, whether the five-year waiting period has been met. States that use the Hub would receive data confirming LPR status and grant date, along with the following Hub indicators: (1) confirm FFP-eligible noncitizen, (2) whether the five-year waiting period applies, and (3) if so, whether the five-year waiting period has been met. Since the ESC/Major codes, COA codes, and EAD codes returned to states using a direct web services connection or the GUI are the same as those returned to the Hub, states using a direct web services connection or the GUI can use the Hub verification logic to inform their system updates (see *Appendix B - Summary of Hub Changes in Accordance with Section 71109 of the WFTC Legislation*).

Reasonable Opportunity Period (ROP) when Unable to Verify U.S. Citizenship or Satisfactory Immigration Status
If, during initial verification of an applicant's attested U.S. citizenship or satisfactory immigration status or during a redetermination of a beneficiary's attested U.S. citizenship or satisfactory immigration status, the state is not able to verify an individual's citizenship or immigration status or category promptly through electronic data sources and the individual meets all other eligibility requirements for Medicaid or CHIP in the state, the state is required to furnish benefits during the 90-day ROP, for individuals declaring to be U.S. citizens or in a satisfactory immigration status to obtain documentation or where the agency itself needs more time to verify the individual's citizenship or immigration status or category.[55] Before discontinuing coverage provided during the ROP, states must provide such individuals with advance written notice of the proposed termination and an opportunity for a fair hearing or review, consistent with the applicable Medicaid or CHIP requirements.[56]

[55] Sections 1137(d), 1902(a)(46), 1902(ee), 1903(x), and 2105(c)(9) of the Act and 42 C.F.R. §§ 435.956 and 457.380(b)(1). The 90-day ROP may be extended for individuals declaring to be in a satisfactory immigration status if the agency determines that the individual is making a good faith effort to obtain any necessary documentation or the agency needs more time to verify the individual's status, in accordance with 42 C.F.R. § 435.956(b)(2)(ii)(B).
[56] 42 C.F.R. §§ 435.917, 435.918, and 42 C.F.R Part 431 Subpart E for Medicaid (which require at least ten days advance notice of the proposed termination and an opportunity for a fair hearing) and 42 C.F.R. §§ 457.340(e), 457.1130(a), and

**Considerations for Medicaid Managed Care Programs**

States must ensure their Medicaid managed care programs comply with section 1903(v)(5) of the Act, as added by section 71109 of the WFTC legislation. States and their actuaries should evaluate whether implementation of section 1903(v)(5) of the Act necessitates adjustments to Medicaid capitation rate development or constitutes a material adjustment requiring an amended rate certification.[57] States must also ensure that all Medicaid managed care contracts comply with all applicable federal and state laws, including section 1903(v)(5) of the Act.[58] To ensure clarity, states should assess their Medicaid managed care contracts and consider revisions to make explicit that payment for medical assistance under the contract is limited to expenditures for which FFP is available under section 1903(v) of the Act and that the limitations on FFP in section 1903(v)(5) of the Act apply to Medicaid capitation rates.[59]

CMS reminds states that CMS published the State Medicaid Director (SMD) letter #25-003 entitled "Medicaid Managed Care Payments and Emergency Medical Condition Coverage for Aliens Ineligible for Full Medicaid Benefits" on September 30, 2025.[60] This guidance announced a change in the agency's interpretation of section 1903(v) of the Act and how it applies to Medicaid managed care payments to improve program and fiscal integrity in the Medicaid program. As outlined in SMD letter #25-003, for rating periods beginning on or after September 30, 2026, states can either provide coverage and claim FFP for emergency Medicaid in the FFS delivery system or by contracting with PIHPs and PAHPs on a non-risk basis. Additionally, if a state uses state-only funding to provide health coverage for noncitizens for whom FFP is not available for full Medicaid benefits under section 1903(v)(5) of the Act, the state must utilize a separate and distinct contract and payment with any managed care plan it contracts with to provide state-funded services. State-only funded services for noncitizens who are not FFP-eligible noncitizens may not be included in the state's contracts and payments to Medicaid managed care plans.

## Medicaid and CHIP Information Technology (IT) Systems Costs and Upgrades

To support the implementation of sections 1903(v)(5) and 2107(e)(1)(R) of the Act, as described above, states may need to modify their eligibility and enrollment system and/or their Medicaid Management Information System (MMIS) to accurately determine Medicaid and CHIP eligibility and provide the appropriate scope of coverage (i.e., full Medicaid or CHIP benefits or emergency Medicaid coverage), including to ingest the new Hub indicators or apply new eligibility logic to immigration codes and other responses from SAVE.

---

457.1180 (2023) for CHIP (which require a timely and adequate written notice of the proposed termination and an opportunity for review).

[57] 42 C.F.R. §§ 438.5(b)(4), 438.5(f), 438.7(b)(4), and 438.7(c)(2).

[58] 42 C.F.R. § 438.3(f).

[59] 42 C.F.R. § 438.812(a).

[60] CMCS SMD letter # 25-003, "Medicaid Managed Care Payments and Emergency Medical Condition Coverage for Aliens Ineligible for Full Medicaid Benefits" (Sept. 30, 2025), available at: https://www.medicaid.gov/federal-policy-guidance/downloads/smd25003.pdf.

To expand on such system modifications, for example, states may need to update eligibility determination logic to reflect those immigration statuses and categories for which FFP remains available for full Medicaid and CHIP benefits and to revise logic for those immigration statuses and categories for which FFP is available for emergency Medicaid only. See *Appendix A* for a list of these impacted immigration statuses and categories. As discussed above, depending on how a state implements emergency Medicaid coverage, state systems may recognize such impacted beneficiaries as either eligible only for payment for emergency Medicaid services or as ineligible for full Medicaid benefits and, subsequently, determine their eligibility again if the individual needs treatment of an emergency medical condition for which Medicaid coverage is available pursuant to section 1903(v)(2) of the Act.

Additionally, depending on which of the three pathways a state uses to verify immigration status or category, states may need to either: (1) update schema to accept new Hub indicators for eligible noncitizen codes (in states that use the VLP service through the Hub); or (2) update verification logic to interpret SAVE codes to determine who is an FFP-eligible noncitizen (in states with a direct connection to SAVE or that use the GUI).

States should ensure that these interconnected policy and system requirements function seamlessly together. Equally important is ensuring the vendors supporting the implementation clearly understand their role and expectations. Without proper alignment between policy design and technological capabilities, states may create administrative burdens that undermine program effectiveness and cost-efficiency. When establishing state-specific policies, states should consult with their system implementation teams to ensure policies can be operationalized in their systems.

CMS recognizes the program changes could require significant IT system work to fulfill policy implementation. State Medicaid agency IT system costs necessary to support requirements may be eligible for enhanced FFP. Approval of enhanced FFP requires the submission of an Advanced Planning Document (APD). A state may submit an APD requesting approval for a 90/10 enhanced match for the design, development, and installation of its Medicaid Enterprise Systems (MES) initiatives contributing to the economic and efficient operation of the program.

States should refer to 45 C.F.R. Part 95 Subpart F entitled "Automatic Data Processing Equipment and Services-Conditions for FFP*"* for the specifics related to APD submission and to 42 C.F.R § 433.112 entitled "FFP for design, development, installation or enhancement of mechanized processing and information retrieval systems" for specifics related to enhanced match.

States may also request a 75/25 enhanced match for ongoing operations of CMS approved systems. States should refer to 42 C.F.R. Part 433 Subpart C entitled "Mechanized Claims Processing and Information Retrieval Systems*"* for the specifics related to systems approval.

Receipt of these enhanced funds is conditioned upon states meeting a series of standards and conditions to ensure investments are efficient and effective. To the extent these system costs are attributable to a state's CHIP (Medicaid expansion CHIP (MCHIP) or separate CHIP), cost-allocation methodologies set forth in 45 C.F.R. Part 75 apply. For the CHIP-funded portion of the cost, states

can claim at a state's CHIP enhanced FMAP (EFMAP), available under section 2105(b) of the Act. CHIP administrative funding is limited to 10 percent of either a state's total computable allotments for a fiscal year or its total expenditures reported for a fiscal year, whichever is lower.[61] Other activities, such as state development of eligibility policy and outreach in response to the changes at section 1903(v)(5) of the Act, may be claimed under Medicaid at the 50 percent administrative match, in accordance with regular claiming policies for such administrative activities.[62]

**Financial Systems and Proper Claiming**

States should continue to ensure proper claiming and expenditure reporting on the quarterly budget and expenditure reports in the Medicaid and CHIP Budget and Expenditure System (MBES/CBES). States that provide state-only funded coverage to noncitizens for whom, beginning October 1, 2026, FFP will not be available for full Medicaid and CHIP benefits under sections 1903(v)(5) and 2107(e)(1)(R) of the Act must implement controls to limit claims for FFP to expenditures for emergency Medicaid. For this reason, states may also need to make edits or add controls to their MMIS and/or other accounting systems to ensure accurate claiming of related expenditures. States must be able to identify and isolate costs directly related to the administration of the Medicaid program (and if applicable, to CHIP) from any state-only health program costs incurred to ensure accurate reporting of claims for FFP and to implement allocation methodologies in accordance with the authority to claim administrative costs, (e.g., approved Public Assistance Cost Allocation Plan (PACAPs), Medicaid Administrative Claiming Plans (MACs), and APDs). Upon certification of the Form CMS-64, states are required to have all documentation in a readily reviewable form. States should report all claims for FFP related to emergency Medicaid on the Form CMS-64 Line 27 to reduce the risk of overclaiming FFP.

CMS has conducted focused financial oversight of eight states with state-only funded programs that provide health coverage for noncitizens regardless of immigration status and has identified approximately $1.8B in questionable expenditures reported by states relating to services provided to noncitizens for whom FFP is available only for emergency Medicaid and not for full Medicaid benefits. CMS intends to continue conducting oversight to ensure state claims for FFP related to emergency Medicaid comply with federal requirements.

**Transformed-Medicaid Statistical Information System (T-MSIS)**

For consistency with the statutory changes made by section 71109 of the WFTC legislation that are applicable beginning October 1, 2026, states will need to update Medicaid and CHIP data submitted to T-MSIS to accurately report information about who is an FFP-eligible noncitizen and, in Medicaid, who is eligible for emergency Medicaid coverage only. We plan to provide additional information on T-MSIS data reporting, including updates to the T-MSIS Data Guide,[63] in forthcoming guidance.

---

[61] 42 C.F.R. § 457.618(e)(1).
[62] Section 1903(a)(7) of the Act and 42 C.F.R. § 433.15(b)(7).
[63] The T-MSIS Data Guide is available at: https://www.medicaid.gov/tmsis/dataguide/.

## Federal Medical Assistance Percentage (FMAP)

In this section, we describe the applicable FMAP for those individuals for whom, beginning October 1, 2026, FFP is available for full Medicaid and CHIP benefits under sections 1903(v)(5) and 2107(e)(1)(R) of the Act and under the CHIPRA 214 option, in accordance with sections 1903(v)(4) and 2107(e)(1)(Q) of the Act, as well as the applicable FMAP for emergency Medicaid, including the impact of section 71110 of the WFTC legislation on FMAP claiming.

**FMAP for Full Medicaid and CHIP Benefits (including under the CHIPRA 214 Option)**

Section 71109 of the WFTC legislation made no changes to the Act's FMAP provisions, but it did affect for whom FFP can be claimed for full Medicaid and CHIP coverage beginning October 1, 2026.[64]

Beginning October 1, 2026, the FMAP for expenditures for full Medicaid and CHIP benefits and expenditure reporting for FFP-eligible noncitizens (i.e., for LPRs, Cuban/Haitian entrants, and COFA migrants) would generally remain the same as prior to October 1, 2026. Expenditures for FFP-eligible noncitizens enrolled in the state's:

- *Medicaid program* are claimed at the state's regular FMAP under section 1905(b) of the Act, or other applicable FMAPs as provided in statute, on the Form CMS-64 series of expenditure reports in the MBES/CBES and are funded by title XIX for Medicaid.
- *CHIP program:*
    - *MCHIP* are claimed under section 1905(u)(2) of the Act (including FFP-eligible noncitizens who are children up to age 19) at the state's EFMAP on the Form CMS 64.21U series of expenditure reports and are funded by title XXI CHIP Allotments. As applicable for all MCHIP expenditures, states continue to have the option under section 115 of CHIPRA to claim their MCHIP expenditures at the regular FMAP funded by title XIX for Medicaid.[65]
    - *Separate CHIP* are claimed under title XXI at the state's EFMAP on the Form CMS-21 series of expenditure reports and are funded by title XXI CHIP Allotments.

**FMAP for Emergency Medicaid**

Because the availability of FFP for full Medicaid and CHIP benefits for certain noncitizens will be more limited beginning October 1, 2026, states may, in fact, experience an overall total increase in the number of expenditures for emergency Medicaid only coverage beginning October 1, 2026.

In general, emergency Medicaid is claimed at the applicable FMAP. We note that section 71110 of the WFTC legislation added a new subsection (kk) to section 1905 of the Act that limits, beginning

---

[64] CMCS SHO letter #10-006, "Medicaid and CHIP Coverage of "Lawfully Residing" Children and Pregnant Women" (July 1, 2010), available at: https://www.medicaid.gov/federal-policy-guidance/downloads/SHO10006.pdf.
[65] CMCS SHO letter #10-005, "Applicability of Federal Matching Rates in CHIP and Medicaid" (Mar. 2, 2010), available at: https://www.medicaid.gov/federal-policy-guidance/downloads/SHO10005.pdf.

October 1, 2026, the FMAP for emergency Medicaid services provided to noncitizens to no greater than the state's regular FMAP determined under section 1905(b) of the Act. This impacts expenditure claims for services provided to individuals in the adult group at section 1902(a)(10)(A)(i)(VIII) of the Act and other applicable eligibility groups, such as the Optional Breast and Cervical Cancer Treatment group. Therefore, beginning October 1, 2026, the FMAP for expenditures related to services provided to individuals receiving emergency Medicaid coverage (including individuals in the adult group) will be matched at the state's regular FMAP under section 1905(b) of the Act.

States should report expenditures for emergency Medicaid services only on Line 27 of the appropriate Form CMS-64 expenditure report. CMS is working to modify the MBES/CBES to reflect the appropriate FMAP under section 1905(kk) of the Act as applicable October 1, 2026. The FMAP applicable to expenditures for prior period adjustments should be the FMAP at which the original expenditure was claimed, for both private and governmental providers. States should ensure accurate claiming on Line 27 of the appropriate Form CMS-64 for noncitizens who are not FFP-eligible noncitizens, or they may be at risk of over-claiming.

With CMS approval, some states claim FFP for a portion of supplemental payments at the increased adult group FMAP rates specified in sections 1905(y) and (z) of the Act. States should update any supplemental payment allocation methodology for emergency Medicaid services to reflect the new FMAP limitation under section 1905(kk) of the Act. The result should be that a greater portion of a supplemental payment will be allocated to and claimed at the state's regular FMAP under section 1905(b) of the Act, and a lesser portion of the supplemental payment will be claimed at the increased adult group FMAP rates. States should submit an updated allocation methodology to CMS prior to October 1, 2026, specifying the method used to identify the emergency Medicaid services portion of the supplemental payment(s) and ensuring that, on and after October 1, 2026, such amounts are claimed for the adult group at the match rate under section 1905(b) of the Act (and are not claimed at an increased FMAP under section 1905(y) or (z) of the Act). CMS plans to provide states with further details on specific updates needed to their supplemental payment allocation methodology document(s). Additionally, CMS is working to modify functionality in the Medicaid and CHIP Financial System (MACFin) to reflect the appropriate FMAP under section 1905(kk) of the Act for supplemental payments and intends to provide technical instructions to states regarding appropriate reporting of supplemental payments tied to emergency Medicaid services on the Form CMS-64.[66]

## State Plan Amendment (SPA) Submission

CMS expects all states, territories, and the District of Columbia to submit a Medicaid SPA to update their state plan to be consistent with section 1903(v)(5) of the Act. Medicaid SPAs must be submitted to CMS no later than December 31, 2026, for an effective date of October 1, 2026. Similarly, CMS expects all states with a separate CHIP to submit a CHIP SPA to update their state plan to be consistent with section 2107(e)(1)(R) of the Act. For states that have not elected the CHIPRA 214

[66] CMCS SMD letter # 21-006, "New Supplemental Payment Reporting and Medicaid Disproportionate Share Hospital Requirements under the Consolidated Appropriations Act, 2021" (Dec. 10, 2021), available at: https://www.medicaid.gov/federal-policy-guidance/downloads/smd21006.pdf.

option for all covered populations in their separate CHIP, these SPAs will effectively restrict eligibility, thus the submission timeframe at 42 C.F.R. § 457.65(b), requiring states to submit SPAs by no later than 60 days after the effective date of the proposed SPA, applies. Therefore, these states are required to submit CHIP SPAs to CMS by no later than November 30, 2026, after sufficient public notice. For states with a separate CHIP that have elected the CHIPRA 214 option for all populations within their separate CHIP, the state will need to submit the SPA within the state fiscal year in which October 1, 2026, falls.

CMS is making revisions to the "Citizenship and Non-Citizen Eligibility" SPA Reviewable Unit, which each state and the District of Columbia must complete and submit through the Medicaid and CHIP Program MACPro portal for Medicaid, including MCHIP, and to the "CS 18: Non-Financial Eligibility-Citizenship" state plan template submitted in OneMAC for separate CHIPs. Territories must submit a SPA through MACPro or amend their paper state plan. We plan to provide additional information about the revised Medicaid and CHIP SPA templates in forthcoming guidance.

## Territory Considerations

The FFP limitations described in section 1903(v)(5) of the Act apply to the U.S. territories. We note that section 402(b)(2)(G) of PRWORA, as added by section 208 of the Consolidated Appropriations Act, 2021 (CAA, 2021), provides an option for the U.S. territories to provide full Medicaid benefits to COFA migrants who are lawfully residing in the territory.[67] Section 71109 of the WFTC legislation did not make changes to section 402(b)(2)(G) of PRWORA; therefore Medicaid coverage of COFA migrants in the territories will remain optional after the October 1, 2026, applicability date.[68]

---

[67] 8 U.S.C. § 1612(b)(2)(G).

[68] CMCS SHO letter #21-005, "Medicaid Eligibility for COFA Migrants" (Oct. 18, 2021), available at: https://www.medicaid.gov/federal-policy-guidance/downloads/sho21005.pdf. As of April 2026, the territories of CNMI and Guam have approved SPAs to provide coverage to COFA migrants in Medicaid.

## Closing

CMS is committed to working with states and territories as they implement the policy and operational changes in their Medicaid programs and CHIPs for compliance with the statutory changes made by section 71109 of the WFTC legislation. CMS staff are available to provide technical assistance regarding the changes discussed in this letter. Questions regarding the Medicaid and CHIP policies discussed in this letter may be directed to MedicaidReforms@cms.hhs.gov.

Sincerely,

/s/

Dan Brillman
Deputy Administrator, CMS
Director, Center for Medicaid and CHIP Services

## APPENDIX A - Details Regarding Qualified Noncitizen Coverage in Medicaid and CHIP Before and After Implementation of Section 71109 of the WFTC Legislation

This table lists all immigration statuses and categories that are considered "qualified noncitizens," as defined at 42 C.F.R. § 435.4 for Medicaid and cross-referenced at 42 C.F.R. § 457.320(c) for CHIP. For each immigration status or category, the table shows availability of FFP for full Medicaid and CHIP benefits before and after the October 1, 2026, applicability date for the statutory changes made by section 71109 of the WFTC legislation, as well as the availability of FFP for emergency Medicaid. This table applies to both full Medicaid and CHIP benefits, unless otherwise indicated.

In states that have elected to cover children (up to age 21 for Medicaid and up to age 19 for CHIP) and/or pregnant women who are lawfully residing in the U.S. under the CHIPRA 214 option, these individuals can receive full Medicaid or CHIP benefits, depending on the election by the state in their state plan. While we have not included detailed information regarding the CHIPRA 214 option in this table, we provide key information on how certain noncitizen pregnant women and/or children are covered under a state's CHIPRA 214 option before and after October 1, 2026.

**NOTE:** This table is not intended to be comprehensive of all immigration statuses or categories for purposes of Medicaid and CHIP coverage and availability of FFP for certain noncitizens.

**TABLE 1. Medicaid and CHIP Coverage by Immigration Status or Category, before and after Section 71109 Implementation**

| Immigration Status/Category | Before 10/1/26 | On and After 10/1/26 | | Before, On, and After 10/1/26 |
|---|---|---|---|---|
| | Eligible for Full Medicaid & CHIP Benefits | FFP for Full Medicaid & CHIP Benefits[1] | FFP for Emergency Medicaid Only[1] | FFP for Full Medicaid & CHIP Benefits under the CHIPRA 214 Option[2] |
| **Lawful Permanent Residents (LPRs)**[3]<br>Section 101(a)(15) and 101(a)(20) of INA; An individual who is lawfully admitted for permanent residence under the INA. (8 U.S.C. § 1641(b)(1)) | | | | |
| • **LPRs not subject to the 5-year waiting period**<br>8 U.S.C. § 1613 | YES | YES | n/a | YES |
| • **LPRs subject to the 5-year waiting period** | | | | |
| ○ **Who *have not* met the 5-year waiting period** | NO | NO | YES | YES |
| ○ **Who *have* met the 5-year waiting period** | YES | YES | n/a | YES |
| **Cuban/Haitian entrants**[4,5]<br>Section 501(e) of Refugee Education Assistance Act of 1980. (8 U.S.C. § 1641(b)(7)) | YES | YES | n/a | YES |
| **COFA migrants**[5,6]<br>8 U.S.C. §§ 1613(b)(3) and 1641(b)(8) | YES | YES | n/a | YES |
| **Refugees**[4,5]<br>A refugee who is admitted to the U.S. under section 207 of INA. (8 U.S.C. § 1641(b)(3)) | YES | NO | YES | YES |
| **Asylees**[4,5]<br>An individual who is granted asylum under section 208 of the INA. (8 U.S.C. § 1641(b)(2)) | YES | NO | YES | YES |

| Immigration Status/Category | Before 10/1/26 | On and After 10/1/26 | | Before, On, and After 10/1/26 |
|---|---|---|---|---|
| | Eligible for Full Medicaid & CHIP Benefits | FFP for Full Medicaid & CHIP Benefits[1] | FFP for Emergency Medicaid Only[1] | FFP for Full Medicaid & CHIP Benefits under the CHIPRA 214 Option[2] |
| **Noncitizens paroled in the U.S. for at least one year**<br>An individual who is paroled into the U.S. under section 212(d)(5) of INA for a period of at least one year. (8 U.S.C. § 1641(b)(4)) | YES | NO | YES | YES |
| **Noncitizens granted withholding of deportation[4,5]**<br>Section 241(b)(3) of the INA, as amended. (8 U.S.C. § 1641(b)(5)) | YES | NO | YES | YES |
| **Noncitizens granted conditional entry prior to April 1, 1980**<br>An individual is granted conditional entry pursuant to section 203(a)(7) of INA as in effect prior to Apr. 1, 1980. (8 U.S.C. § 1641(b)(6)) | YES | NO | YES | YES |
| **Noncitizens subject to battery or extreme cruelty by their U.S. citizen or LPR relative, including their noncitizen spouse, child(ren), or parent(s)**<br>As qualified under the Violence Against Women Act (VAWA), an individual who has been battered or subjected to extreme cruelty in the U.S. by a spouse or a parent, or by a member of the spouse's or parent's family residing in the same household as the alien, but only if (in the opinion of the agency providing such benefits) there is a substantial connection between such battery or cruelty and the need for the benefits to be provided (8 U.S.C. § 1641(c)). This also includes noncitizen parents of battered children (8 U.S.C. § 1641(c)(2)) and noncitizen children of a battered parent (8 U.S.C. § 1641(c)(3)). | YES | NO | YES | YES |

| Immigration Status/Category | Before 10/1/26 | On and After 10/1/26 | | Before, On, and After 10/1/26 |
|---|---|---|---|---|
| | Eligible for Full Medicaid & CHIP Benefits | FFP for Full Medicaid & CHIP Benefits[1] | FFP for Emergency Medicaid Only[1] | FFP for Full Medicaid & CHIP Benefits under the CHIPRA 214 Option[2] |
| **Noncitizens granted nonimmigrant status as a victim of trafficking (VoT) or who have a pending application that sets forth a prima facie case for eligibility for such immigration status** 8 U.S.C. § 1101(a)(15)(T)(i), 22 U.S.C. § 7105(b)(1)(A). (8 U.S.C. § 1641(c)(4)) | YES | NO | YES | YES |
| **Noncitizens who are "victim[s] of a severe form of trafficking in persons" and certain family members** 8 U.S.C. § 1101(a)(15)(T)(ii); 22 U.S.C. § 7105(b)(1)(A) and (C). (8 U.S.C. § 1641(c)(4)) | YES | NO | YES | YES |
| **Amerasian immigrants**[4,5] Section 204(f) of the INA; Section 584 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1988 (P.L. 100–202, as amended, enacted Dec. 22, 1987); as amended by the 9th proviso under Migration and Refugee Assistance in title II of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1989 (P.L. 100–461, as amended, enacted Oct. 1, 1988). (8 U.S.C. § 1612(b)(2)(A)(i)(V)) | YES | NO[7] | YES | YES |
| **Lawfully residing veterans/active-duty servicemembers and certain family members**[5] (8 U.S.C. § 1612(b)(2)(C)) | YES | NO | YES | YES |

| Immigration Status/Category | Before 10/1/26 | On and After 10/1/26 | | Before, On, and After 10/1/26 |
|---|---|---|---|---|
| | Eligible for Full Medicaid & CHIP Benefits | FFP for Full Medicaid & CHIP Benefits[1] | FFP for Emergency Medicaid Only[1] | FFP for Full Medicaid & CHIP Benefits under the CHIPRA 214 Option[2] |
| **American Indians born in Canada[8] or American Indians who are members of a federally recognized tribe**<br>Section 289 of the INA. (8 U.S.C. § 1612(b)(2)(E))<br>NOTE: This FFP exclusion would only apply to American Indians born in Canada and who are members of a federally recognized tribe who are not U.S. citizens. | YES | NO | YES | YES |
| **Certain Afghan parolees[4]**<br>Section 2502 of the Extending Government Funding and Delivering Emergency Assistance Act (P.L. 117-43 as amended, enacted Sept. 30, 2021); as amended by Section 1501 of Title V of Division M of the Consolidated Appropriations Act (CAA), 2023, (P.L. 117-328). | YES | NO | YES | YES |
| **Certain Ukrainian parolees[4]**<br>Section 401 of the Additional Ukraine Supplemental Appropriations Act (P.L. 117-128 as amended, enacted May 21, 2022); as amended by Section 301 of the Ukraine Security Supplemental Appropriations Act, 2024, (P.L. 118-50). | YES | NO | YES | YES |
| **Other lawfully residing noncitizens[9]** | NO | NO | YES | YES |

Table 1 Footnotes:

1. Excludes eligibility for the other lawfully present immigration statuses or categories under the CHIPRA 214 option not included in this table. See CMCS SHO #10-006, "Medicaid and CHIP Coverage of "Lawfully Residing" Children and Pregnant Women," (July 1, 2010), available at https://www.medicaid.gov/federal-policy-guidance/downloads/SHO10006.pdf.
2. Under the CHIPRA 214 option, states can elect to provide full Medicaid and CHIP benefits to children (up to age 21 in Medicaid and up to age 19 in CHIP) and/or pregnant women who are lawfully residing in the U.S. A list of states that

have elected the option is available at: https://www.medicaid.gov/medicaid/enrollment-strategies/medicaid-and-chip-coverage-lawfully-residing-children-pregnant-individuals. See the sections of this letter entitled *Background* and *Interaction between Section 71109 of the WFTC Legislation and the CHIPRA 214 Option* for more information.

3. Some states elect under their Medicaid state plan to limit eligibility of LPRs for full Medicaid benefits to LPRs who have 40 qualifying work quarters (8 U.S.C. § 1612(b)(2)(B)). See the sections of this letter entitled *Background* and *Interaction between Section 71109 of the WFTC Legislation and PRWORA* for more information.
4. Some states elect under their Medicaid state plan to limit eligibility for full Medicaid benefits to seven years for certain noncitizens (8 U.S.C. § 1612(b)(2)(A)(i)). See the sections of this letter entitled *Background* and *Interaction between Section 71109 of the WFTC Legislation and PRWORA* for more information.
5. Under 8 U.S.C. § 1613(b), certain specified qualified noncitizens have an exception from the five-year waiting period (described at 8 U.S.C. § 1613(a)). See the sections of this letter entitled *Background* and *Interaction between Section 71109 of the WFTC Legislation and PRWORA* for more information.
6. Medicaid coverage of COFA migrants is optional for the U.S. territories.
7. This row displays information for Amerasian immigrants who have not adjusted to LPR status since the programs are open indefinitely (https://www.uscis.gov/policy-manual/volume-7-part-p-chapter-9). Amerasians are exempt from the five-year waiting period (8 U.S.C. § 1613(b)(1)(E)). Many Amerasian immigrants have been admitted or adjusted to LPR status and thus would be considered FFP-eligible noncitizens under section 1903(v)(5) of the Act, exempt from the five-year waiting period. (see applicable rows in Table 1 on LPRs).
8. CHIP coverage is not applicable for this status or category.
9. See CMCS SHO #10-006, "Medicaid and CHIP Coverage of "Lawfully Residing" Children and Pregnant Women," (July 1, 2010), available at: https://www.medicaid.gov/federal-policy-guidance/downloads/SHO10006.pdf. Individuals with deferred action under the Deferred Action for Childhood Arrivals (DACA) process are not eligible for full Medicaid and CHIP benefits under the CHIPRA 214 option; see CMCS SHO letter #12-002, "Individuals with Deferred Action for Childhood Arrivals," (Aug. 28, 2012), available at: https://www.medicaid.gov/federal-policy-guidance/downloads/SHO-12-002.pdf.

## APPENDIX B - Summary of Hub Changes in Accordance with Section 71109 of the WFTC Legislation

As described previously in the section entitled *Verification of Immigration Status*, the Hub VLP v37.1 v2 service applies translation logic to the DHS SAVE program response data and provides the following response indicators to verify immigration and citizenship status:

- Naturalized or Derived Citizenship (U.S. Citizen Code)
- Lawful Presence Verified (LPV)
- Eligible Noncitizen (ENC) Status[69]
- Qualified Noncitizen (QNC) Status*
- Five-Year Bar Applicable (5Yr Bar Apply)
- Five-Year Bar Met (5Yr Bar Met)

For each of these immigration and citizenship indicators, the Hub returns indicators set to either: Y (for Yes), N (for No), P (for Pending), or X (for Not Applicable).

The Hub will return two ENC indicators: (1) for APTC/CSR eligibility (APTC ENC) entitled "APTCEligibleNonCitizenCode," and (2) for FFP availability in Medicaid/CHIP (MC ENC) entitled "MCEligibleNonCitizenCode." The APTC ENC and MC ENC are new indicators added to the Hub VLP v37.1 v2 service. The values returned for the APTC ENC and MC ENC indicators will be identical and can be used to verify that an applicant or beneficiary is an LPR, Cuban/Haitian entrant, or COFA migrant. As described previously in this letter, all FFP-eligible noncitizens (i.e., MC ENCs) are QNCs and considered lawfully present.

***NOTE:** Due to the statutory changes made by the WFTC legislation, the QNC indicator will have limited usage beginning October 1, 2026, for Medicaid and CHIP.

**TABLE 2. Overview of Hub Indicator Logic, by FFP-Eligible Noncitizen Status/Category**

| Description | LPV | ENC (APTC & MC) | QNC | 5Yr Bar Apply | 5Yr Bar Met |
|---|---|---|---|---|---|
| **LPR** | Y | Y | Y | Y/N/P | Y/N/P/X |
| **Cuban/Haitian entrant** | Y | Y | Y | N | X |
| **COFA migrant** | Y | Y | Y | N | X |

[69] If the "Eligible Noncitizen (ENC) Status" is Yes ("Y"), then the noncitizen has been verified by DHS SAVE program to be either a Lawful Permanent Resident (LPR), a Cuban/Haitian entrant, or a COFA migrant and, therefore, in an immigration status or category for which the state can receive FFP for full Medicaid or CHIP benefits in accordance with section 1903(v)(5) of the Act.

The following table provides a summary of the Hub indicators for each immigration status or category code that SAVE returns to the Hub. This table only reflects the Hub indicator logic for SAVE Step 1 (Initial Verification step). In addition to the Hub indicators and the SAVE response data, the Hub also returns an "Agency Action" field to states to identify any next steps, where necessary, to verify immigration status or category. In some cases, states will need to proceed to Step 2 (Additional Verification) and/or Step 3 (Third Verification) to verify an individual's immigration status or category. For additional information, including Step 2 and Step 3 Hub logic, please refer to the Hub's "Verify Lawful Presence (VLP) v37.1 v2 Business Service Definition" (BSD).[70]

**NOTE:** For any instances where the Hub indicator is set to "P" (for pending) or instances where the table lists multiple Hub indicator responses, please consult the Hub VLP v37.1 v2 BSD. For example, these indicators may require additional information (e.g., documentation and confirmation of an individual's Cuban/Haitian entrant status) or may be dependent on additional DHS SAVE response data (e.g., grant date).

**TABLE 3. Hub Indicator Logic by ESC, Step 1**

| ESC | COA Code or Condition | LPV | ENC (APTC & MC) | QNC | 5Yr Bar Apply | 5Yr Bar Met |
|---|---|---|---|---|---|---|
| 1 | AS6, AS7, AS8, GA6, GA7, GA8, 2D, 4A, 4-A, 4B, 4C, 4D, 4F, 6, 6A3, C7P, HH6, IC6, IC7, K9, K10, P75, R86, RE6, RE7, RE8, RE9, REF, RRA, Y11, Y12, Y13, Y14, Y16, Y4, Y5, Y64, Y7, Y9, NC6, NC7, NC8, NC9, A16, A17, A31, A32, A33, A36, A37, A38, AM1, AM2, AM3, AM6, AM7, SQ1, SQ2, SQ3, SQ6, SQ7, SQ8, SI1, SI2, SI3, SI6, SI7, SI8, ST0, ST1, ST7, ST8, ST9, SW1, SW2, SW3, S13, HF, LR6, LR7, LR8, LR9, YY, ZZ, NAI, SI9, A19 | Y | Y | Y | N | X |
| 1 | CNP, CU0, CU6, CU7, CU8, CU9, CUP, HA6, HA7, HA8, HA9, HB6, HB7, HB8, HB9, HC6, HC7, HC8, HC9, HD6, HD7, HD8, HD9, HE6, HE7, HE8, HE9 | Y | Y | Y | N | X |

[70] The Hub "Verify Lawful Presence (VLP) v37.1v2 Business Service Definition" (BSD) is available in zONE. Please contact cmsvlpsupport@hcgov.us for questions related to the Hub VLP v37.1v2 BSD and for assistance accessing zONE.

| ESC | COA Code or Condition | LPV | ENC (APTC & MC) | QNC | 5Yr Bar Apply | 5Yr Bar Met |
|---|---|---|---|---|---|---|
| **1** | CB1, CB2, CB6, CH6 | Y | Y | Y | P | P |
| **1** | ST6 | Y | Y | Y | N/P | X/P |
| **1** | COA *other than*: AS6, AS7, AS8, GA6, GA7, GA8, 2D, 4A, 4-A, 4B, 4C, 4D, 4F, 6, 6A3, C7P, HH6, IC6, IC7, K9, K10, P75, R86, RE6, RE7, RE8, RE9, REF, RRA, Y11, Y12, Y13, Y14, Y16, Y4, Y5, Y64, Y7, Y9, NC6, NC7, NC8, NC9, A16, A17, A31, A32, A33, A36, A37, A38, AM1, AM2, AM3, AM6, AM7, SQ1, SQ2, SQ3, SQ6, SQ7, SQ8, SI1, SI2, SI3, SI6, SI7, SI8, ST0, ST1, ST7, ST8, ST9, SW1, SW2, SW3, S13, HF, LR6, LR7, LR8, LR9, YY, ZZ, NAI, SI9, A19, CNP, CU0, CU6, CU7, CU8, CU9, CUP, HA6, HA7, HA8, HA9, HB6, HB7, HB8, HB9, HC6, HC7, HC8, HC9, HD6, HD7, HD8, HD9, HE6, HE7, HE8, HE9, CB1, CB2, CB6, CH6, ST6 | Y | Y | Y | Y | Y/N/P |
| **1** | No COA | Y | Y | Y | P | P |
| **10** | (dependent on EAD Category Code) | Y/N/P | Y/N/P | Y/N/P | Y/N/P/X | Y/N/P/X |
| **128** | COA *other than* FSM, MIS, PAL, T1, PI | Y | N | N | X | X |
| **128** | FSM, MIS, PAL | Y | Y | Y | N | X |
| **128** | T1 | Y | N | Y | N/P | X/P |
| **128** | COA = PI or No COA and no EAD Category Code | Y | P | P | P | P |
| **128** | No COA but EAD category code exists | Y/N/P | Y/N/P | Y/N/P | Y/P/X | Y/N/P/X |
| **13, 328, 386** | DE, EXC | N | N | N | X | X |
| **13, 328, 386** | T2, T3, T4, T5, T6 | Y | N | Y | N | X |
| **13, 328, 386** | FSM, MIS, PAL | Y | Y | Y | N | X |
| **13, 328, 386** | PI, CC, CH, DT, ML, OP, or No COA Code | Y | P | P | P | P |

| ESC | COA Code or Condition | LPV | ENC (APTC & MC) | QNC | 5Yr Bar Apply | 5Yr Bar Met |
|---|---|---|---|---|---|---|
| **13, 328, 386** | CP | Y | N/P | P | P | P |
| **13, 328, 386** | IN, PR | Y | P | Y | P | P |
| **13, 328, 386** | CM | Y | N | Y | Y | Y/N/P |
| **13, 328, 386** | Any COA *other than*: DE, EXC, T2, T3, T4, T5, T6, FSM, MIS, PAL, CP, IN, PR, CM, PI, CC, CH, DT, ML, OP | Y | N | N | X | X |
| **15, 368, 369, 374, 385** | Country code = CUB or HTI | Y/P | P | P | P | P |
| **189** | Country code = CUB or HTI | Y | P | P | P | P |
| **15, 189, 369, 374** | Country code *other than* CUB or HTI (or empty) | Y | N | N | X | X |
| **368** | Country code *other than* CUB or HTI (or empty) | N/P | N | N/P | X/P | X/P |
| **385** | Country code *other than* CUB or HTI (or empty) | P | N | N | X | X |
| **18, 20** | Country code = CUB or HTI | Y | P | Y | N | X |
| **18, 20** | Country code *other than* CUB or HTI (or empty) | Y | N | Y | N | X |
| **188, 376, 387** | N/A | N | N | N | X | X |
| **22, 122, 168, 372, 373, 375, 380, 382, 384** | N/A | Y | N | N | X | X |
| **228** | N/A | P | N | N | X | X |
| **248, 249** | CQ1, CQ2, CQ3 | Y | Y | Y | N | X |
| **248, 249** | COA *other than* CQ1, CQ2, CQ3, or No COA | Y | Y | Y | Y | Y/N/P |
| **250** | COA = WHP; Country code = CUB or HTI | Y | Y | Y | N | X |
| **250** | COA = WHP; Country code is empty | Y | P | P | P | P |
| **250** | COA = WHP; Country code *other than* CUB or HTI | Y | N | Y/N/P | Y/P/X | Y/N/P/X |
| **250, 288, 381, 401, 402** | HHP, CHP, RCU, RHT | Y | Y | Y | N | X |
| **250, 288, 381, 401, 402** | SQ4, SQ5, OAR | Y | N | Y/P | N/P | X/P |
| **250, 288, 381, 401, 402** | UHP; Country code = UKRAI, UKR, or UP | Y | N | Y/P | N/P | X/P |

| ESC | COA Code or Condition | LPV | ENC (APTC & MC) | QNC | 5Yr Bar Apply | 5Yr Bar Met |
|---|---|---|---|---|---|---|
| **250, 288, 381, 401, 402** | PAR, DT; Country code = AFGHA, AFG, AF, UKRAI, UKR, or UP | Y | N | Y/P | N/P | X/P |
| **250, 288, 381, 401, 402** | PAR, DT; Country code = CUB or HTI | Y | P | Y/P | P | P |
| **250, 288, 381, 401, 402** | PAR, DT; Country code *other than* AFGHA, AFG, AF, UKRAI, UKR, UP, CUB, or HTI | Y | N | Y/N/P | Y/P/X | Y/N/P/X |
| **250, 288, 381, 401, 402** | COA *other than* HHP, CHP, RCU, RHT **with** Cuban/Haitian Entrant attestation | P | P | P | P | P |
| **250, 288, 381, 401, 402** | COA *other than* HHP, CHP, RCU, RHT, SQ4, SQ5, OAR, UHP, PAR, DT **without** Cuban/Haitian Entrant attestation; Country code = CUB or HTI | Y | P | Y/P | P | P |
| **250, 288, 381, 401, 402** | COA *other than* HHP, CHP, RCU, RHT, SQ4, SQ5, OAR, UHP, PAR, DT **without** Cuban/Haitian Entrant attestation; Country code *other than* CUB or HTI (or empty) | Y | N | Y/N/P | Y/P/X | Y/N/P/X |
| **250, 288, 381, 401, 402** | COA code is missing | Y | P | P | P | P |
| **251, 371, 383** | N/A | Y | N | Y | N | X |
| **377, 378, 379** | N/A | Y/P | N | Y | Y | P |
| **4** | N/A | Y | Y | Y | N | X |
| **5, 39, 44, 370** | N/A | P | P | P | P | P |

For ESC 10 or 128, the Hub uses the EAD Category Code when determining the Hub indicators. This logic will not apply to any other ESCs returned on Step 1. See the following table for Hub indicator logic as related to EAD Category Codes for ESC 10 and 128.

**TABLE 4. Hub Indicator Logic using EAD Category Codes for ESC 10 and 128, Step 1**

| EAD Category Code | Condition | LPV | ENC (APTC & MC) | QNC | 5Yr Bar Apply | 5Yr Bar Met |
|---|---|---|---|---|---|---|
| **A02, A04, C08, C09, C09P, C091, C11, C19** | Country code CUB or HTI | Y | P | P | P | P |
| **A02, C08, C09, C09P, C091, C19** | Country code *not* CUB or HTI (or empty) | Y | N | N | X | X |
| **A03, A05, A10** | Country code CUB or HTI | Y | P | Y | N | X |
| **A03, A05, A10** | Country code *not* CUB or HTI (or empty) | Y | N | Y | N | X |
| **A04, C11** | Country code *not* CUB or HTI (or empty) | Y | N | P | P | P |
| **A06, A07, A09, A11, A12, A13, A15, A17, A18, A19, A20, C01, C011, C012, C02, C03A, C03B, C03C, C031, C032, C033, C034, C04, C041, C042, C05, C06, C07, C10, C12, C14, C16, C16P, C171, C172, C173, C18, C20, C21, C22, C24, C26** | N/A | Y | N | N | X | X |
| **A08** | N/A | Y | Y | Y | N | X |
| **A14, C33** | N/A | N | N | N | X | X |
| **A16** | (dependent on grant date) | Y | N | Y | P | P |
| **C13, C151, C152** | N/A | P | P | P | P | P |
| **C25** | N/A | Y | N | Y | N | X |
| **C27, C28, C29, C30** | N/A | Y | N | P | P | P |
| **C31** | N/A | Y | N | Y | Y | P |
| **C35, C36** | N/A | P | N | N | X | X |
| **C40** | (If C40 is received, Hub will set these indicators regardless of the ESC or COA code.) | Y | N | Y | P | P |

# APPENDIX B

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop S2-26-12
Baltimore, Maryland 21244-1850

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES
CENTER FOR MEDICAID & CHIP SERVICES

# State Implementation Tool: Section 71109 of the Working Families Tax Cut (WFTC) Legislation

This tool is designed to aid states in their implementation of the statutory changes made by section 71109 of Public Law 119-21, which CMS refers to as the Working Families Tax Cut (WFTC) legislation. This document outlines policy, operational, and system actions most states will need to take to implement the statutory changes made by section 71109 of the WFTC legislation. While not a comprehensive list of activities, it outlines critical tasks to accurately determine eligibility for full Medicaid and Children's Health Insurance Program (CHIP) benefits; provide the appropriate scope of coverage; and properly claim federal financial participation (FFP) for noncitizens. CMS strongly encourages states to review the "checklist" in Section II as you continue your policy, operations and system development work, as needed, to ensure compliance by October 1, 2026.

Please see Section IV – Glossary of Terms for definitions of terms used in this tool.

## I. Overview of Section 71109 of the WFTC Legislation

Beginning October 1, 2026**,** sections 1903(v)(5) and 2107(e)(1)(R) of the Social Security Act (the Act), as added and amended, respectively, by section 71109 of the WFTC legislation, generally limit, with some exceptions, FFP for *"full Medicaid or CHIP benefits"* to the following groups of individuals: U.S. citizens and U.S. nationals; lawful permanent residents (LPRs or "green card holders"); Cuban/Haitian entrants;[1] and Compacts of Free Association (COFA) migrants. We refer to LPRs, Cuban/Haitian entrants, and COFA migrants in this document as *"FFP-eligible noncitizens"*. These FFP limitations do not apply to expenditures for: full Medicaid or CHIP benefits for lawfully residing children and pregnant women covered under a state's election of the CHIPRA 214 option; Medicaid payment for treatment of an emergency medical condition (*"emergency Medicaid"*)*;* or a state-designed Health Services Initiative (HSI) under CHIP. This provision applies to states, D.C., and the territories, which we collectively refer to as "states."

Therefore, on and after October 1, 2026, FFP is not available for full Medicaid or CHIP benefits for noncitizens unless they are determined to be an FFP-eligible noncitizen or meet an exception, such as a lawfully residing child or pregnant woman in a state that has elected the CHIPRA 214 option.

For more detailed information, please see SHO #26-001 RE: Implementation of Section 71109 "Alien Medicaid Eligibility" of the Working Families Tax Cut Legislation (Public Law 119-21).

[1] Cuban/Haitian entrants are considered qualified noncitizens in accordance with 8 U.S.C. § 1641(b)(7) and beginning October 1, 2026, FFP-eligible noncitizens in accordance with section 1903(v)(5)(B)(iii) of the Act. For more information, see https://www.uscis.gov/save/resources/information-for-save-users-cuban-haitian-entrants.

# II. Checklist for System and Operational Changes to Implement Section 71109 of the WFTC Legislation

**Beginning October 1, 2026, states will need to ensure proper FFP claiming by limiting determinations of eligibility for full Medicaid and CHIP benefits to only those individuals for whom FFP is available under sections 1903(v)(5) and 2107(e)(1)(R) of the Act.** At a high-level, by October 1, 2026, states must make any and all necessary changes to their eligibility, Medicaid Management Information System (MMIS), notices, and claiming systems to ensure that they can:

1. **Complete redeterminations for all "*potentially affected beneficiaries*"** to ensure they have a "*satisfactory immigration status*" for full Medicaid or CHIP benefits under sections 1903(v)(5) and 2107(e)(1)(R) of the Act.
2. **Accurately determine eligibility at application and renewal**, consistent with sections 1903(v)(5) and 2107(e)(1)(R) of the Act.
3. **Provide clear communications to individuals and other state agencies and partners**.
4. **Appropriately report financial claiming** in the Medicaid and CHIP Financial System (MACFin) **and enrollment data** in Transformed Medicaid Statistical Information System (T-MSIS) to CMS.

We describe specific changes and tasks for each of these four requirements in the sections below. States should review applicable tasks and determine necessary actions for their state to ensure compliance with section 71109 of the WFTC legislation by October 1, 2026.

As described further in Section III, states unable to meet these requirements must implement a temporary strategy to ensure they do not inappropriately claim FFP on or after October 1, 2026.

## 1. Complete Redeterminations for All Potentially Affected Beneficiaries

To ensure states only claim FFP for Medicaid and CHIP benefits provided to noncitizens in accordance with sections 1903(v)(5) and 2107(e)(1)(R) of the Act beginning October 1, 2026, states must complete redeterminations for potentially affected current beneficiaries to verify satisfactory immigration status by October 1, 2026 in accordance with 42 C.F.R. §§ 435.916(d) and 457.343.[2] To complete this requirement, states must follow these steps:

**STEP 1.** Identify the potentially affected beneficiaries enrolled in full Medicaid and CHIP benefits. This includes potentially affected beneficiaries who are Supplemental Security Income (SSI) recipients and children with adoption assistance, foster care, or guardianship care under section title IV-E of the Act.

- When identifying potentially affected beneficiaries receiving SSI, states should start by reviewing current records to identify and exclude those SSI beneficiaries who are U.S. citizens or U.S. nationals. If U.S. citizenship, U.S. national, or immigration status is not known, states can use the SSA's State Verification & Exchange System (SVES) batch query to receive current SSA data, including citizenship and immigration status.

---

[2] We refer to the requirements at 42 C.F.R § 435.916 as amended by the interim final rule with comment period titled "Medicaid Program; Community Engagement Requirement for Certain Individuals" (91 Fed. Reg. 33,343, June 3, 2026), which are effective July 31, 2026.

**STEP 2.** Use information in the beneficiary record to determine whether potentially affected beneficiaries continue to have satisfactory immigration status by attempting to reverify their status through DHS's Systematic Alien Verification for Entitlements (SAVE) program.

- If the beneficiary continues to have a satisfactory immigration status for full Medicaid or CHIP benefits, the beneficiary must retain that coverage.

**STEP 3.** If the state is unable to verify if the beneficiary remains in, or has adjusted to, a satisfactory immigration status, the state must send a request for additional information to the beneficiary and provide a reasonable period of time for the beneficiary to respond. If the beneficiary responds and provides a new declaration of U.S. citizenship, U.S. national status, or satisfactory immigration status and the state is still unable to verify that status through SAVE, the state must provide the beneficiary with a 90-day reasonable opportunity period (ROP) during which the state must continue efforts to complete the verification of satisfactory immigration status, including, if necessary, requesting documentation from the individual.

- If the beneficiary provides documentation and the state verifies satisfactory immigration status, the beneficiary must retain full Medicaid or CHIP benefits.
- If the beneficiary provides information or documentation that demonstrates the individual no longer has satisfactory immigration status, or if they do not respond within the time specified, the state must take additional actions outlined in Steps 4 and 5 before terminating eligibility or reducing benefits.

**STEP 4.** For those individuals for whom the state is unable to verify are FFP-eligible noncitizens, the state must evaluate whether they are eligible for full Medicaid or CHIP benefits on any basis under the state plan, including CHIPRA 214 (if elected by the state), or emergency Medicaid.

**STEP 5.** Once the redetermination is complete, the state must provide notice.

- If a beneficiary is determined eligible, states should notify the beneficiary that they continue to be eligible for the coverage in which they are enrolled.
- If a beneficiary no longer has satisfactory immigration status for full Medicaid or CHIP benefits or does not respond within the timeframe specified, states must provide the beneficiary with advance notice of adverse action, including the right to a Medicaid fair hearing or CHIP review, before terminating coverage or reducing benefits.

**In order to complete these steps to accurately redetermine eligibility for full Medicaid or CHIP benefits by October 1, 2026, states will need to update their eligibility determination logic and verification logic as outlined below.**

## 2. Accurately Determine Eligibility at Application and Renewal

States will need to update their applications, eligibility determination logic, and verification logic to ensure accurate eligibility determinations and proper claiming of FFP for Medicaid and CHIP benefits in accordance with section 71109 of the WFTC legislation. These changes will impact eligibility determinations made at application and renewal on and after October 1, 2026.

### A. Review and revise all applications used for Medicaid and CHIP

- ❑ Ensure all single streamlined (including multi-benefit) applications, as well as applications used to apply on the basis of age, blindness or disability, and any simplified

applications accepted by the state, collect the necessary information to determine and verify satisfactory immigration status for full Medicaid and CHIP benefits (and account for the state's election of the CHIPRA 214 option, if applicable). This may necessitate changes across all modalities in which applications must be accepted (e.g., paper, online, and telephonic applications).

- ❑ Modify all presumptive eligibility and hospital presumptive eligibility applications used in all modalities, administrator and/or caseworker portals, and provider training materials to reflect the changes from this provision.
  - ❑ States will need to train providers to correctly assess presumptive eligibility.
- ❑ At state option, update state applications to align with the changes made to the Single, Streamlined Application ("the Model") used by the Federally-Facilitated Marketplace.

## B. Align eligibility determination, redetermination, and verification logic with changes under section 71109

- ❑ Update and test eligibility determination logic and business rules to accurately determine eligibility and provide the appropriate scope of coverage (e.g., in Medicaid, full benefits or emergency Medicaid coverage), including pulling appropriate attestations and information from submitted applications.
- ❑ Update and test verification logic:
  - ❑ For Hub Verify Lawful Presence (VLP) users: complete transition to Hub VLP v37.1v2 service and make any changes needed to ingest the new "eligible noncitizen" code.
  - ❑ For SAVE GUI users or those with direct connections to SAVE: update specifications to interpret SAVE codes and identify FFP-eligible noncitizens.
- ❑ Update logic for unique populations, including:
  - ❑ For SSI recipients, ensure systems are programmed to consume SSA data that identifies SSI recipients who are FFP-eligible noncitizens and, if applicable, accurately determine eligibility for SSI noncitizen recipients under the CHIPRA 214 option. More information on the changes SSA is making to the State Data Exchange (SDX) file to support the implementation of section 71109 of the WFTC legislation is forthcoming.

## C. Notices

- ❑ Ensure necessary updates to notices per the section below entitled "Provide Clear Communications to Individuals and Other State Agencies and Partners."

## D. Appeals and fair hearings

- ❑ Ensure necessary updates to appeals and fair hearings. Additional information is below in the section entitled "Provide Clear Communications to Individuals and Other State Agencies and Partners."

## E. Regularly scheduled renewals

- ❑ Evaluate and implement changes needed to renewal forms used in the scheduled renewal process for Medicaid and CHIP (e.g., update the definition of satisfactory immigration status and revise beneficiary questions).

## 3. Provide Clear Communications to Individuals and Other State Agencies and Partners

Some noncitizens enrolled in or applying for coverage may be confused about, or unaware of, the changes made by section 71109 of the WFTC legislation. Robust outreach and clear, easy to understand communications will ensure applicants and beneficiaries understand and can prepare for the upcoming changes. Application and renewal assistance are also critical tools to help ensure individuals can appropriately complete necessary processes to access or retain coverage if eligible. States should train their state staff, contractors, and partner agencies and organizations to ensure they are up-to-date on all policy and operational changes that will occur. States should ensure compliance with all notice content and language requirements.[3]

### A. Notices to applicants and beneficiaries

- ❑ Notices should include a statement of what action the agency intends to take and the effective date of such action; a clear statement of the specific reasons supporting the intended action; the specific regulations that support, or the change in Federal or State law that requires, the action; and an explanation of the individual's right to request a state agency hearing or, in cases of an action based on a change in law, the circumstances under which a hearing will be granted.
- ❑ Update notice templates to reflect the eligibility requirements for full Medicaid or CHIP benefits for noncitizens, including language related to appeals and fair hearings (e.g., determination approvals, disapprovals, termination, requests for additional information, and initial and periodic outreach notices and efforts).
- ❑ States may want to re-label envelopes to clearly indicate that the information enclosed is important and time-sensitive (e.g., add “time-sensitive urgent action needed” in bold).

### B. Outreach communication to applicants, beneficiaries, and state agency and partner organizations

- ❑ Design outreach templates to inform beneficiaries who are losing full Medicaid and CHIP benefits, and, in Medicaid, may be able to receive emergency Medicaid coverage.
- ❑ Coordinate with sister state agencies (e.g., TANF, IV-E, and the Office of Refugee Resettlement agencies) on outreach and communications to reach affected individuals with consistent messages.
- ❑ Engage community-based organizations, application assisters (including Navigators and certified application counselors), managed care plans, and providers to conduct outreach to educate noncitizens enrolled in Medicaid and CHIP about the changes to available coverage.

### C. Call centers

- ❑ Revise call center scripts, worker guidance, and automated call tree options to support accurate and consistent communication regarding changes to Medicaid and CHIP coverage for noncitizens, including in translated languages or when using oral interpreters (e.g., update definitions and terminology in automated messages, routing logic, and worker-facing FAQs).

---

[3] 42 C.F.R. §§ 435.917, 435.918 and 42 C.F.R. Part 431 Subpart E (for Medicaid) and 42 C.F.R § 457.340(e) (for CHIP).

- ❑ Update the portal used by call center workers to intake applications and renewals to reflect the changes to Medicaid and CHIP coverage for noncitizens.
- ❑ Provide comprehensive training resources and systems updates to ensure all eligibility workers, call center representatives, and other partners understand the new policy (e.g., role-specific job aids, scripts, and scenario-based walkthroughs).

### D. Appeals and fair hearings

- ❑ Update the eligibility and case management systems to support fair hearing and CHIP review processes related to adverse actions (denials/terminations/reduction in benefits or eligibility), including updated reason codes and training materials for appeals staff and hearing officers.
- ❑ Educate fair hearing officers on the new policy to ensure accurate fair hearing and CHIP reviews.

## 4. Appropriately Report Financial Claiming and Enrollment Data

Beginning October 1, 2026, states will need to ensure FFP claiming and expenditure reporting in MACFin for full Medicaid or CHIP benefits is limited to U.S. citizens, U.S. nationals, FFP-eligible noncitizens, and, if applicable, lawfully residing children and pregnant women covered under a state‘s election of the CHIPRA 214 option; in Medicaid, states will need to ensure proper claiming and reporting for emergency Medicaid services to certain noncitizens who are not eligible for full Medicaid benefits. States will need to update their T-MSIS enrollment data submissions to accurately report who is an FFP-eligible noncitizen in Medicaid and CHIP and, in Medicaid, who is eligible for emergency Medicaid only. CMS is updating the T-MSIS Data Guide to ensure accurate reporting of FFP-eligible noncitizens.

- ❑ Ensure proper claiming and expenditure reporting on Forms CMS-64 and CMS-21 by:
  - ❑ Reporting all emergency Medicaid expenditures for noncitizens not eligible for full Medicaid benefits on Line 27 of Form CMS-64; and,
  - ❑ Continuing to report expenditures for FFP-eligible noncitizens and lawfully residing children and pregnant women (in a state that has elected the CHIPRA 214 option) on appropriate service lines.
- ❑ Update MMIS and/or other accounting systems to ensure accurate FFP claiming for full Medicaid or CHIP benefits and emergency Medicaid services.
- ❑ Ensure systems can identify and isolate administrative costs directly related to the administration of the Medicaid/CHIP program from state-only funded health program costs and implement allocation methodologies, if applicable.
- ❑ Update T-MSIS data submissions to report on new T-MSIS values under the “Immigration Status” Valid Value Code Set.

# III. Strategy to Ensure Proper FFP Claiming

States must ensure that FFP claiming for Medicaid and CHIP benefits is in accordance with sections 1903(v)(5) and 2107(e)(1)(R) of the Act on and after October 1, 2026. States must ensure that they do not inappropriately claim FFP on or after October 1, 2026, for ineligible individuals, state-only funded coverage to noncitizens, or for current beneficiaries for whom the state is unable to determine or redetermine satisfactory immigration status appropriately.

**If a state cannot ensure their claiming practices comply with sections 1903(v)(5) and 2107(e)(1)(R) of the Act by October 1, 2026, the state must not submit FFP claims for potentially affected beneficiaries until the state completes all necessary actions** to accurately determine and redetermine eligibility and ensure that claiming of FFP complies with sections 1903(v)(5) and 2107(e)(1)(R) of the Act, or the state's FFP will be at risk. States are reminded that all claims are subject to the two-year timely filing requirements under section 1132 of the Act and 45 C.F.R. Part 95 Subpart A. Note that FFP remains available on and after October 1, 2026, for full Medicaid and CHIP benefits provided during an ROP.

CMS intends to continue to conduct routine oversight activities to ensure state FFP claims for full Medicaid and CHIP benefits comply with all applicable federal requirements.

Please contact CMS for additional technical assistance as needed at MedicaidReforms@cms.hhs.gov.

# IV. Glossary of Terms

- "**Full Medicaid and CHIP benefits**" refers to: full Medicaid benefits, partial or limited Medicaid benefits (e.g., only family planning services, Medicare Savings Programs (MSPs)), and CHIP coverage. "Full Medicaid and CHIP benefits" excludes emergency Medicaid.
- "**FFP-eligible noncitizens**" refers to LPRs, Cuban/Haitian entrants, and COFA migrants, as described in section 1903(v)(5)(B)(ii) - (iv) of the Act.
- "**Emergency Medicaid**" refers to Medicaid payment for the limited coverage of an emergency medical condition as authorized under section 1903(v)(2) of the Act. Emergency Medicaid does not include care and services related to an organ transplant procedure. Emergency Medicaid coverage does not apply to separate CHIPs.
- "**Potentially affected beneficiaries**" refers to noncitizens receiving full Medicaid or CHIP benefits who are not FFP-eligible noncitizens or lawfully residing pregnant women and/or children in a CHIPRA 214 state. "Potentially affected beneficiaries" does not include noncitizens receiving emergency Medicaid.
- "**Satisfactory immigration status**" refers to noncitizens for whom states can receive FFP for full Medicaid or CHIP benefits: LPRs, Cuban/Haitian entrants, and COFA migrants and, in states that have elected the CHIPRA 214 option, lawfully residing children (up to age 21 for Medicaid and up to age 19 for CHIP) and/or pregnant women. In determining whether a noncitizen is eligible for full Medicaid or CHIP benefits, states must continue to apply relevant eligibility rules in 8 U.S.C. §§ 1613 (for Medicaid and CHIP) and 1612 (for Medicaid, only) to those qualified noncitizens who are also FFP-eligible noncitizens.

# V. Additional Resources

1. State Health Official Letter on Implementation of Section 71109 "Alien Medicaid Eligibility" of the Working Families Tax Cut Legislation (Public Law 119-21) (SHO #26-001)
2. Section 71109 (Alien Medicaid Eligibility) Overview Slide Deck
3. Implementation of Section 71109 "Alien Medicaid Eligibility" of the Working Families Tax Cut Legislation Slide Deck
4. Preliminary Features and Requirements for Section 71109 Implementation
5. Medicaid Eligibility for Compact of Free Association (COFA) Migrants