Hon. Thomas S. Zilly

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| NEIGHBORHOOD HOUSE and MARIIA MATSAI,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES and ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services,<br><br>Defendants. | CASE NO. 2:26-cv-03006-TSK<br><br>PLAINTIFFS' MOTION FOR PRELIMINARY RELIEF<br><br>NOTE ON MOTION CALENDAR: September 25, 2026 |

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. STATUTORY BACKGROUND ..... 3

A. The Federal Statutory Scheme Provides Medicaid to All SSI Recipients. ..... 3
B. H.R. 1 Did Not Amend Mandatory Medicaid Coverage for SSI Recipients. ..... 5

III. STATEMENT OF FACTS ..... 6

A. HHS Unlawfully Instructed States to Terminate Medicaid Payments for SSI Recipients Based on Their Immigration Status. ..... 6
B. Neighborhood House's Clients, like Plaintiff Matsai and Other Noncitizen SSI Recipients in Washington, Rely on Medicaid-Funded Healthcare to Survive. ..... 8

IV. LEGAL STANDARD FOR PRELIMINARY RELIEF ..... 11

V. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ..... 12

A. Applicable Standards ..... 12
B. Plaintiffs Are Likely To Succeed In Showing HHS interpreted H.R. 1 Contrary to existing laws. ..... 13

1. The SHO Letter and Implementation Tool are a final agency action. ..... 13
2. PRWORA's specific provision governs Medicaid coverage for noncitizens. ..... 14
3. H.R. 1 did not implicitly void, repeal, or displace PRWORA requirements. ..... 15
4. HHS's interpretation fails to harmonize H.R. 1 with the overall statutory scheme.... 16
5. HHS's action is contrary to law and arbitrary and capricious. ..... 18
6. Service organizations and individual SSI recipients meet Article III Standing and Zone of Interest tests. ..... 20

VI. ABSENT RELIEF, PLAINTIFFS WILL SUFFER IRREPARABLE INJURY ..... 21

VII. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR PRELIMINARY INJUNCTIVE RELIEF ..... 23

VIII. NO BOND IS REQUIRED ..... 24

IX. CONCLUSION ..... 25



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

## I. INTRODUCTION

On April 8, 2026, and July 31, 2026, the United States Health and Human Services Administration (HHS) instructed states to terminate Medicaid healthcare funding for all noncitizens who do not satisfy HHS's new immigration status requirements, effective October 1, 2026. *See* Declaration of Susan Kas (Kas Decl.) ¶¶ 3, 4, Exhs. A, B. HHS terminated Medicaid healthcare funding for lawfully present asylees, refugees, parolees, trafficking and abuse victims, and other qualified noncitizen Medicaid recipients based on recent federal legislation known as "H.R. 1." But it disregarded existing entitlements to Medicaid benefits for aged, blind, and disabled lawfully present qualified noncitizens receiving Supplemental Security Income (SSI) under Section 1902 of the Social Security Act Title XIX (Medicaid Act), 42 U.S.C. §1396a(10)(A)(i)(II)(aa), and the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), 8 U.S.C. §1612(b)(2), which H.R. 1 did not eliminate or amend. Correctly construed under well-established principles, H.R. 1 does not authorize HHS to terminate Medicaid coverage of SSI recipients based on additional immigration status criteria.

To prevent irreparable injury to them and other lawfully present Washingtonians, pursuant to the Administrative Procedures Act (APA), 5 U.S.C. § 705, Plaintiffs ask this Court to stay HHS's unlawful, arbitrary, and capricious instructions to Washington State pending this Court's judicial review. This preliminary relief is appropriate and necessary because 1) Plaintiffs are likely to succeed on the merits of their claims that HHS's action should be declared unlawful and set aside as arbitrary and capricious and contrary to law under 5 U.S.C. § 706(2), 2) Plaintiffs have established a strong likelihood of irreparable harm absent a stay from this Court, 3) a balance of equities favors in injunction, and 4) there is a strong public interest in protecting essential



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

healthcare for needy and vulnerable individuals. *See Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

HHS's instructions are based on an erroneous interpretation of H.R. 1 that conflicts with Medicaid Act and PRWORA mandates entitling noncitizen SSI recipients to Medicaid funded services. In particular, the Medicaid Act and its implementing regulations establish healthcare coverage for SSI recipients. 42 U.S.C. § 1396a(10)(A)(i)(II)(aa); 42 C.F.R. § 435.120. PRWORA further specifies that all SSI recipients "shall be eligible" for Medicaid under "the same terms and conditions that apply to other recipients." 8 U.S.C. § 1612(b)(2)(F) (emphasis added). As acknowledged by HHS, H.R. 1 did not amend or repeal either of these provisions. Nevertheless, HHS interprets the legislation to strip SSI recipients of essential health services and supports that have been statutorily guaranteed. Correctly construed under well-established principles, H.R. 1 does not authorize HHS to require states to terminate Medicaid for SSI recipients based on additional unenacted immigration status criteria.

HHS's misinterpretation of H.R. 1 is enormously harmful to the lawfully present asylees, refugees, parolees, trafficking and abuse victims, and other qualified noncitizen SSI recipients who will be left with no healthcare in Washington State. Plaintiff Matsai, a medically frail Ukrainian parolee, and around 150 of Plaintiff Neighborhood House's clients are noncitizen SSI recipients who will lose their Medicaid coverage on October 1 due to HHS's action. *See* Declaration of Mariia Matsai (Matsai Decl.) ¶ 7; Declaration of Wahid Amiri (Amiri Decl.) ¶ 9; Declaration of Julie Romero (Romero Decl.) ¶ 14. To qualify for SSI, individuals must be older than sixty-five, blind, or have a qualifying disability as well as a low income and highly limited resources. 42 U.S.C. § 1382. With intense medical needs and limited resources, SSI recipients depend on their Medicaid insurance to access life-sustaining treatment and services. Romero Decl. ¶ 17.



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

There are no alternative resources that will replace these critical healthcare services. The loss of Medicaid coverage will not only reduce revenue for community healthcare providers like Plaintiff Neighborhood House who serve this population but will also put the lives of its clients at risk. Plaintiff Matsai and many of Neighborhood House's affected clients will have no choice but to rely on emergency and inpatient treatment to meet their acute needs for medication, therapies, nutrition, and basic daily living activities. HHS ignores this avoidable public health crisis and the law. This Court should preserve the status quo of Medicaid coverage and funding for noncitizen SSI recipients pending review.

## II. STATUTORY BACKGROUND

### A. The Federal Statutory Scheme Provides Medicaid to All SSI Recipients.

The Medicaid Act created "a cooperative federal-state program that provides medical care to needy individuals." *Douglas v. Indep. Living Ctr. of S. California, Inc.,* 565 U.S. 606, 610–11 (2012). Under the Medicaid Act, participating states submit for approval from HHS's Centers for Medicare & Medicaid Services (CMS) a Medicaid "State Plan" that describes what medical assistance will be provided with state and federal funding and to whom. *Id.; see also Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 650–51 (2003) ("In order to participate in the Medicaid program, a State must have a plan for medical assistance approved by the Secretary of Health and Human Services."); *see generally,* 42 U.S.C. § § 1396-1, 1396a; 42 C.F.R. Part 430.

The Medicaid Act gives states some discretion to design each state plan but includes some mandatory obligations that all states must accept to receive federal funding. *See Harris v. McRae*, 448 U.S. 297, 308–09 (1980) ("If a State agrees to establish a Medicaid plan that satisfies the requirements of Title XIX … the Federal Government agrees to pay a specified percentage of 'the total amount expended'"). One of these requirements is for the state plan to make "medical



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

assistance" available to "**all** individuals…with respect to whom [SSI] benefits are being paid." 42 U.S.C. § 1396a(10)(A)(i)(II)(aa) (emphasis added); 42 C.F.R. § 435.120; *Himes v. Shalala*, 999 F.2d 684, 686 (2d Cir. 1993) ("[T]he agency must provide Medicaid to aged, blind, and disabled individuals or couples who are receiving or are deemed to be receiving SSI.").

To be eligible for SSI, an individual must be over the age of sixty-five, blind, or "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § § 1382(a), 1382c(a)(3). In addition, the individual must meet low-income restrictions and cannot have total resources that exceed $2,000 for a single person or $3,000 for a married couple. 42 U.S.C. § 1382(a)(2) - (3).

Because SSI eligibility and mandatory Medicaid coverage overlap, the Social Security Act includes a provision allowing states to streamline Medicaid and SSI eligibility determinations. 42 U.S.C. § 1383c(a). Most states, including Washington, are taking advantage of this "1634 agreement" (named for Section 1634 of the Social Security Act), by which an individual's application for SSI benefits "is also an application for Medicaid." *See* Kas Decl. ¶ ¶ 5, 6, Exhs. C, D. SSA then determines "whether an individual is eligible for Medicaid beginning with the day he/she becomes eligible for SSI payments." *Id.* ¶ 7, Exh. E.

Finally, in response to skepticism and concerns about immigrants lacking self-sufficiency, Congress enacted PRWORA to definitively address provision of federal benefits to noncitizens, including Medicaid. *See* 8 U.S.C. § 1601. In general, PRWORA established a baseline rule that "notwithstanding any other provision of law," except as provided in subsequent subsections, nonqualified noncitizens would be barred from accessing public benefits. 8 U.S.C. § § 1611(a), 1612(a)(1).



18 WEST MERCER ST., STE. 400 BARNARD
SEATTLE, WASHINGTON 98119 IGLITZIN &
TEL 800.238.4231 | FAX 206.378.4132 LAVITT LLP

However, PRWORA also established limited exceptions for certain categories of qualified noncitizens to be eligible for SSI and food assistance, Temporary Assistance for Needy Families (TANF), block grants, and Medicaid. 8 U.S.C. § 1612. As relevant here, PRWORA permits SSI eligibility for up to seven years for refugees, asylees, individuals granted withholding of removal, Cuban and Haitian Entrants, Amerasian immigrants, certain abused spouses and children, Iraqi and Afghan special immigrants, human trafficking victims, and certain Afghan and Ukrainian parolees.8 U.S.C. § 1612(a).

With respect to Medicaid, Congress unequivocally affirmed that all qualified immigrants who are receiving SSI, including those groups listed above, must have equal Medicaid access. Under the following provision, PRWORA expressly prohibits applying different Medicaid standards for qualified noncitizens receiving SSI benefits:

> An alien who is receiving benefits under the program defined in subsection (a)(3)(A) (relating to the supplemental security income program) **shall** be eligible for medical assistance under a State plan under title XIX of the Social Security Act (42 U.S.C. 1396 *et seq*.) **under the same terms and conditions** that apply to other recipients of benefits under the program defined in such subsection.

8 U.S.C. § 1612(b)(2)(F) (emphasis added). The phrase "same terms and conditions" requires that the referenced category of beneficiaries "receive exactly the same treatment" as others. *See Noland v. Shalala*, 12 F.3d 258, 261 (D.C. Cir. 1994) (interpreting this term to describe requirements for individuals eligible for Medicaid if they would otherwise be eligible for SSI but for the cost-of-living adjustments on other Social Security income).

### B. H.R. 1 Did Not Amend Mandatory Medicaid Coverage for SSI Recipients.

When Congress passed H.R. 1, it did not amend the existing statutory scheme that mandates, facilitates, and affirms Medicaid coverage for SSI recipients. H.R. 1 amended 42 U.S.C. §1396b(v) to add a new paragraph (5) stating, "notwithstanding the preceding paragraphs in this



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

subsection beginning on October 1, 2026, except as provided in paragraphs (2) and (4), in no event shall payment be made to a State under this section for medical assistance" for individuals who are not a citizen, lawful permanent resident (LPR), Cuban & Haitian entrant, or COFA migrant. Pub. L. No. 119-21, § 71109, 139 Stat. 72, 297 (2025) (codified at 42 U.S.C. § 1396b(v)(5)). Nowhere does H.R. 1 modify the SSI recipient coverage mandates and SSA determination process in 42 U.S.C. § §1396(a)(10)(A)(i)(II)(aa) and 1383c(a), or the equal terms mandated in 8 U.S.C. § 1612(b)(2)(F). H. R. 1 did not amend these sections to incorporate or reference the new restrictions in §1396b(v).

## III. STATEMENT OF FACTS

### A. HHS Unlawfully Instructed States to Terminate Medicaid Payments for SSI Recipients Based on Their Immigration Status.

Despite the enduring statutory mandate to provide Medicaid to all SSI recipients, on April 8, 2026, and July 31, 2026, HHS instructed states to terminate Medicaid healthcare funding for all noncitizens who do not satisfy HHS's new immigration status requirements, effective October 1, 2026. *See* Kas Decl. ¶¶ 3, 4, Exhs. A (April 8, 2026, instruction, hereafter "SHO Letter"), B (July 31, 2026, instruction, hereafter "Implementation Tool"). In its guidance, HHS acknowledged that H.R. 1 "did not amend...the description in 8 U.S.C. § 1612(b)(2) of the populations to which states must provide full Medicaid benefits, nor did it amend the description or scope of the populations in [42 U.S.C. §1396a] to which states are required to provide medical assistance (e.g. individuals to whom supplemental security income (SSI) benefits are being paid)." Kas Decl. ¶ 3, Exh. A. at 6. Yet, HHS concluded that one hundred percent (100%) state-only funded health coverage for noncitizen SSI recipients lacking immigration status under its new requirements is optional but is no longer "Medicaid" that will be jointly funded with state and federal dollars.



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

Recognizing the contradiction between these other existing laws and its choice to terminate federal funding for a wide subset of noncitizen SSI recipients, HHS cursorily dismissed these unamended statutory requirements, assuming H.R. 1 stripped all noncitizens who do not satisfy its H.R. 1 immigration criteria of Medicaid coverage:

> *notwithstanding the fact that 8 U.S.C. § 1612(b)(2) still describes coverage* that will no longer be eligible for federal matching funds beginning October 1, 2026 as 'Medicaid,' and *notwithstanding the fact that [42 U.S.C. § 1396a] still describes mandatory Medicaid coverage* that (when provided to certain populations) will no longer be eligible for federal matching funds beginning October 1, 2026.

*Id.* at 6-7 (emphasis added). The SHO Letter included an Appendix with a chart showing full Medicaid coverage before and after the October 1, 2026. *Id.* at 23-28. Although the letter had just referenced a requirement to provide Medicaid to SSI recipients, the chart did not indicate any exceptions for SSI recipients who are refugees, asylees, individuals granted withholding of removal, Amerasian immigrants, certain abused spouses and children, Iraqi and Afghan special immigrants, human trafficking victims, and certain Afghan and Ukrainian parolees to continue receiving Medicaid. *Id.*

To the contrary, the SHO Letter notified states that as of October 1, 2026, Federal Financial Participation (FFP), which is the amount of money the federal government pays to match state spending on the Medicaid program, "will not be available" and that they "must implement controls to limit claims for FFP to expenditures for emergency Medicaid." *Id.* at 18. HHS is requiring all states to submit a State Plan Amendment (SPA) no later than December 1, 2026, to be retroactively effective October 1, 2026. *Id.* at p. 20.

On July 31, 2026, just two months before the October 1, 2026, implementation deadline, CMS also issued an "Implementation Tool" that obligates states to "ensure systems are programmed to consume SSA data that identifies SSI recipients who are FFP-eligible noncitizens



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

and, if applicable, accurately determine eligibility for SSI noncitizen recipients under the CHIPRA 214 option." Kas Decl. ¶ 4, Exh. B. at p. 4. The Implementation Tool did not specify what SSA data states could use but indicates more information about SSA changes are "forthcoming." Kas Decl. ¶ 4, Exh. B. at p. 4.

**B. Neighborhood House's Clients, like Plaintiff Matsai and Other Noncitizen SSI Recipients in Washington, Rely on Medicaid-Funded Healthcare to Survive.**

Neighborhood House is a non-profit organization that provides an array of community supports for low-income communities. Plaintiff Neighborhood House is the primary case management provider for Medicaid clients who speak Ukrainian, Farsi, Dari, Pashtu, Arabic, Amharic, Tigrinya, and Oromo. Romero Decl. ¶ 10. To serve this population in a culturally and linguistically appropriate way, Neighborhood House intentionally connects their clients with case managers who share the same language and cultural background. *Id.* at ¶ 11. These case managers go through rigorous training, that may last well into their second year of employment. *Id.* at ¶ 12.

Neighborhood House subcontracts with the City of Seattle Aging and Disability Services (ADS), which receives Medicaid funding administered by the Washington State Department of Social & Health Services (DSHS) to coordinate long-term care services as well as ancillary support services for Medicaid beneficiaries in King County, Washington. Romero Decl. ¶ 10. Under Washington's approved Medicaid State Plan, SSI recipients have been deemed by SSA to be Medicaid-eligible pursuant to Section 1634 of the Social Security Act, 42 U.S.C. § 1383c(a). Kas Decl. ¶ ¶ 8, 9, Exhs. F, G; *see also* Decl. of Trinity Wilson (Wilson Decl.) ¶ ¶10, 11. Though the exact number of individuals is yet to be confirmed, the Washington Health Care Authority (HCA) estimates that 1,258 noncitizen SSI and Medicaid recipients will be affected by HHS's action and has sent notices to these individuals that their Medicaid will terminate if they do not have satisfactory immigration status by October 1, 2026. *Id.* at ¶¶ 23-24. These impacted asylees,



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

refugees, parolees, victims, and other lawfully present qualified noncitizens "will lose access to medical (Apple Health) and long-term services and supports." *Id.* at ¶ 20; Kas Decl. ¶ 9, Exh. G.

On August 20, 2026, DSHS sent Neighborhood House a list of 220 Neighborhood House clients whom DSHS determined likely do not satisfy HHS's immigration status requirements, including Plaintiff Matsai. Romero Decl. ¶ 14, Matsai Decl. ¶ 7. Neighborhood House's records show that 150 of these are SSI recipients. Romero Decl. ¶ 14; Declaration of Janice Deguchi (Deguchi Decl.) ¶ 10. Washington has scarce resources to backfill the loss of federal funding with a small state-only funded long-term care program that will only serve a small minority of clients losing their coverage. Wilson Decl. ¶¶ 25-26. Only thirteen of the 220 Neighborhood House clients will be eligible to receive the limited state-only long-term care services. Romero Decl. ¶ 15. For the others, Neighborhood House has found no replacement for Medicaid-funded services. Deguchi Decl. ¶ 11. SSI income makes these individuals ineligible for other state-based medical services programs, and they do not have the financial resources to purchase medications, services, equipment, and other essential needs that Medicaid covers. Romero Decl. ¶ 15.

Plaintiff Neighborhood House will lose all public funding to serve its remaining client SSI recipients and has already been reducing its staff by attrition in anticipation of these funding cuts. Declaration of Nathan Buck (Buck Decl.) ¶ 8. After October 1, Neighborhood House anticipates having to lay off additional case managers and possible management and administrative staff and will be forced to divert its other unrestricted funds to continue support for its clients and responding to emergencies. Buck Decl. ¶¶ 8-9.

This loss is not only damaging to Neighborhood House's finances. It is a tremendous impairment to Neighborhood House's founding purpose of serving immigrants fleeing war and persecution. Deguchi Decl. ¶ 5. In 1906, Neighborhood House's predecessor, Settlement House,



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

was created to serve Russian Jewish refugees escaping violence and oppression. Since then, this organization has been striving to "open doors for people of all ages experiencing language, cultural, and systemic barriers to housing, health, education, and economic opportunity." *Id.* at ¶ 11. Neighborhood House is now facing the devasting reality that the refugees, asylees, and parolees it serves are going to face insurmountable barriers to healthcare due to their immigration status. Deguchi Decl. ¶ 11; *see also* Romero Decl. ¶ 17 (describing irreplaceable loss of oxygen services and emergency response equipment).

In August 2026, Plaintiff Matsai and other Neighborhood House clients received a notice from DSHS that, due to H.R. 1, she would no longer be eligible for her Medicaid services because of her immigration status. *Id.*at ¶ 7; Wilson Decl. ¶ 24. Like the overwhelming majority of immigrants slated to lose coverage, Plaintiff Matsai is not among the thirteen Neighborhood House clients that DSHS identified for the limited state-only program, and she does not qualify for any other free healthcare programs. Matsai Decl. ¶ 9. Without access to medicine, medical care, and paid long term care supports, Neighborhood House's clients will likely suffer grave illness and serious injuries that cannot be undone. Deguchi Decl. ¶ 12; Romero Decl. ¶ 18.

For example, Plaintiff Matsai fled the war in Ukraine and was paroled into the U.S. for her safety. Matsai Decl. ¶ 2. Without any way to pay for medical treatment, medications, or long-term care, Plaintiff Matsai now faces a looming risk of suffering a life-threatening diabetic coma, stroke or heart failure. *Id.* at ¶ 12. Nooria Amiri, an asylee who escaped the retaliation of the Taliban in Afghanistan, is another Neighborhood House client losing Medicaid benefits. Amiri Decl. ¶¶ 2, 9. She takes seventeen medications a day for numerous health conditions, needs frequent physician care, and relies on oxygen therapy for her COPD. *Id.* ¶¶ 4-6, Exh. A at pp. 5-10. If their Medicaid benefits are cut, these and many other qualified noncitizen SSI recipients in Washington will likely



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

go into crisis and need emergency or inpatient medical care, placing further demands on Washington's "already strained safety-net healthcare system." *Id.* at ¶¶ 13, 15; Matsai Decl. ¶ 13; Deguchi Decl. ¶ 12; Wilson Decl. ¶ 23.

## IV. LEGAL STANDARD FOR PRELIMINARY RELIEF

Under the APA, courts may "postpone the effective date of action ... pending judicial review…[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury[.]" 5 U.S.C. § 705. A court reviews a motion to stay agency action pursuant to § 705 under the same standards used to evaluate requests for a preliminary injunction. *See City & Cnty. of San Francisco v. U.S. Citizenship & Immigr. Servs*., 408 F. Supp. 3d 1057, 1078 (N.D. Cal. 2019), *aff'd sub nom. City & Cnty. of San Francisco v. United States Citizenship & Immigr. Servs.,* 981 F.3d 742 (9th Cir. 2020); *see also Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 986 (9th Cir. 2025), *overruled on other grounds by Arizona All. for Retired Americans v. Mayes,* No. 22-16490, 2026 WL 2277101 (9th Cir. Aug. 7, 2026).

A plaintiff seeking preliminary injunction must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. The Ninth Circuit applies a "sliding scale" approach to balancing these elements; "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Thus, when the likelihood of grave irreparable injury is palpable and the balance of equities tips sharply in plaintiffs' favor, the plaintiffs need only "demonstrate a fair chance of success on the merits or questions serious enough to require litigation." *Arc of Cal. v. Douglas*, 757 F.3d 975, 993-94 (9th Cir. 2014) (internal citation



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

omitted). Further, Plaintiffs must show the likelihood of success on the merits of only one of their claims. *Rodde v. Bonta,* 357 F.3d 988, 998 n.13 (9th Cir. 2004).

## V. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### A. Applicable Standards

The termination of SSI recipients' Medicaid funding should be temporarily postponed under 5 U.S.C. § 705 while HHS's action is reviewed. The APA entitles an individual, association, or private organization who is "adversely affected or aggrieved by agency action" to judicial review. 5 U.S.C. § 702. A "final agency action for which there is no other adequate remedy in a court" is subject to judicial review. 5 U.S.C. § 704. A court must "hold unlawful and set aside action, findings and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity;" or "(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C). Plaintiffs are likely to prevail on all these elements and seek time to obtain full judicial review pursuant to 5 U.S.C. § 705.

Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). Instead of deferring to the agency's interpretation, the Supreme Court instructs lower courts to use "traditional tools of statutory construction," regardless of whether a statute is ambiguous. *Id.* at 401. Here, applying numerous statutory construction tools, H.R. 1 cannot be read to alter or displace the prior enacted statutory scheme for SSI recipients to also receive Medicaid benefits. Plaintiffs are likely to prevail under 5 U.S.C. § 706(2)(B)-(C) to show that HHS's instruction for states to terminate Medicaid payments for SSI recipients is contrary to law and in excess of its authority.



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

**B. Plaintiffs Are Likely To Succeed In Showing HHS interpreted H.R. 1 Contrary to existing laws.**

1. *The SHO Letter and Implementation Tool are a final agency action.*

The SHO Letter and Implementation Tool constitute a "final agency action" subject to judicial review under 5. U.S.C. § 704. The Supreme Court has held that this term requires two elements:

> First, the action must mark the 'consummation' of the agency's decision making process —it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'

*Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal citations omitted); *see also U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016). Courts "look to whether the action amounts to a definitive statement of the agency's position or has a direct and immediate effect on the day-to-day operations of the subject party, or if immediate compliance with the terms is expected." *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1007 (9th Cir. 2021) (citing *Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006)).

For the first prong, the action must be the agency's "last word on the matter." *Oregon Nat. Desert Ass'n.*, 465 F.3d at 984. Parties are not required to "keep knocking at the agency's door when the agency has already made its position clear." *Prutehi Litekyan: Save Ritidian v. United States Dep't of Airforce*, 128 F.4th 1089, 1109 (9th Cir. 2025). Here, HHS has issued two official documents directing states to remove large swaths of noncitizens from their Medicaid programs, including SSI recipients on a date certain. Together, the SHO Letter nor Implementation Tool left no room for states to continue covering SSI recipients who are not citizens, LPRs, entering from Cuba or Haiti, or COFA migrants beyond October 1. The guidance leaves no question that starting



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

immediately on October 1, 2026, all states must not claim FFP for SSI recipients who do not fall under one of the four H.R. 1 categories.

With regard to the second prong, the Ninth Circuit found that a series of formal written notices to herring fishermen constituted a reviewable "final agency action" where the fishermen would otherwise be left to "risk serious punishment or engage in unnecessary further pleas before an agency that had already made up its mind." *San Francisco Herring Ass'n v. Dep't of the Interior,* 946 F.3d 564, 568 (9th Cir. 2019). CMS's SHO Letter and Implementation Tool did not contain mere recommendations or "a bare statement of the agency's opinion" that states are free to ignore. *See, e.g., S. California All. of Publicly Owned Treatment Works v. U.S. Env't Prot. Agency*, 8 F.4th 831, 838 (9th Cir. 2021). Based on HHS's directives, states must either deny Medicaid coverage to lawfully present SSI recipients based on their immigration status, or face liability under the Medicaid Act. *See Bowen v. Massachusetts*, 487 U.S. 879, 885 (1988) (noting risks of FFP termination for "categories of state assistance, or even (theoretically) the entire state program" under 42 U.S.C. § 1316(a), or disallowance of reimbursement under 42 U.S.C. § 1316(d)).

2. *PRWORA's specific provision governs Medicaid coverage for noncitizens.*

HHS's interpretation of H.R. 1 ignores multiple canons of statutory construction. First, to the extent there appears to be any contradiction between two provisions of law, the specific controls the general. As held by the Supreme Court, "a general . . . prohibition is contradicted by a specific . . . permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012); *see also N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 305 (2017) (finding statute's general prohibition. . . yields to the more specific authorization"). The Supreme Court also has held that a prior-enacted "statute dealing with a narrow, precise, and specific subject is not submerged by a



18 WEST MERCER ST., STE. 400 SEATTLE, WASHINGTON 98119 TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

later enacted statute covering a more generalized spectrum." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976).

Here, PRWORA handily prevails as the most specific statute on the issue of Medicaid coverage for noncitizens receiving SSI. Under 42 U.S.C. § 1396a(10)(A)(i)(II)(aa), all SSI recipients shall receive "medical assistance," without commenting on immigration status. H.R. 1's addition of § 1396b(v)(5) sets out the general restriction on federal funding for certain immigrants, without commenting on SSI recipients. PRWORA, by contrast, is the only statute that addresses the precise question of whether individuals who are *both* noncitizens and SSI recipients are entitled to Medicaid. 8 U.S.C. § 1612(b)(2)(F). And PRWORA sets forth a distinct mandate that the same terms and conditions for other SSI recipients must apply to noncitizen SSI recipients. *Id.*

Even when Congress acted with intent to restrict immigrants' access to some public resources, it created a heightened protection to ensure that, for purposes of determining Medicaid coverage, noncitizen SSI recipients would be treated equally with other SSI recipients. PRWORA's highly specific command to equally cover citizen and noncitizen SSI recipients should thus control.

3. *H.R. 1 did not implicitly void, repeal, or displace PRWORA requirements.*

Secondly, CMS's interpretation violates the basic interpretive canon that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant...'" *Corley v. United States*, 556 U.S. 303, 314 (2009), (citing *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). The same canon "applies to interpreting any two provisions in the U.S. Code, even when Congress enacted the provisions at different times." *Bilski v. Kappos*, 561 U.S. 593, 608 (2010). Similarly, "repeals by implication are not favored and will



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

not be presumed . . . unless the later statute expressly contradicts the original act." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662 (2007).

Here, the later statute does not expressly contradict the original act. Rather, though Congress in H.R. 1 expressly restricted other public programs, it left intact the mandate of Medicaid for all SSI recipients. *Supra*, § II.B. To uphold the SHO Letter and Implementation Tool, the Court must conclude both that H.R. 1 implicitly voided, repealed, or displaced PRWORA requirements and that PRWORA's provision for covering qualified noncitizen SSI recipients "under the same terms and conditions that apply to other [SSI recipients]" is inoperative. 8 U.S.C. § 1612(b)(2)(F). This, it should not do. Supra, § V.A.2.

HHS's guidance misinterprets H.R. 1 to cancel the heart of 8 U.S.C. § 1612(b)(2)(F), improperly presuming that H.R. 1 implicitly repealed this language. Plaintiffs are likely to succeed in showing that interpretation is contrary to law.

*4. HHS's interpretation fails to harmonize H.R. 1 with the overall statutory scheme.*

"A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing 'a clearly expressed congressional intention' that such a result should follow." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510, 138 S. Ct. 1612, 1624, 200 L. Ed. 2d 889 (2018) (citing *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995)). If the intention for one statute to displace another is not "'clear and manifest,'" courts "must instead strive 'to give effect to both.'" *See id.* (citing *Morton v. Mancari,* 417 U.S. 535, 551 (1974)). Under this principle, courts "are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton*, 417 U.S.C. at 551.



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

HHS cannot meet its hefty burden to justify its determination that H.R. 1 displaced prior legislation providing for equal Medicaid coverage of SSI recipients. To show clear intent to do so, Congress could have drafted language to expressly abrogate PRWORA requirements in 8 U.S.C. § 1612(b)(2)(F). It also could have used broader language to be "notwithstanding any other provision of law" rather than limiting this clause to say, "notwithstanding the preceding paragraphs in this *subsection*." 42 U.S.C. §1396b(v)(5) (emphasis added). The language in H.R. 1 did neither. Absent straightforward signals to override its prior enactments to cover SSI recipients, H.R. 1 must be read in harmony with PRWORA and all existing requirements of the Medicaid Act.

Notably, HHS does not attempt to resolve the tension between its interpretation of H.R. 1 and 8 U.S.C. § 1612(b)(2)(F) by reading the legislation to mean that all SSI-eligible immigrants will remain entitled to Medicaid, though paid for solely with state dollars without FFP. *See* Kas Decl. ¶ 3, Exh. A at pp. 6-7. As the SHO Letter acknowledged, the Supreme Court has rejected similar claims. *Id.* (citing *Harris v. McRae*, 448 U.S. 297, 308–09, 100 S. Ct. 2671, 2683–84, 65 L. Ed. 2d 784 (1980). HHS nevertheless offers no other explanation to reconcile its interpretation of H.R. 1 with its own recognition that Congress did not choose to amend Medicaid coverage mandates in 8 U.S.C. § 1612(b)(2)(F) or §1396(a)(10). *See* Kas Decl. ¶ 3, Exh. A at p. 6.

H.R. 1 can be harmonized with PRWORA and other parts of the Medicaid Act. Properly read in context of the "overall statutory scheme," all these provisions can and should be read together as treating SSI recipients as a pre-existing and surviving carve-out from any other citizenship and immigration criteria. *See City & Cnty. of San Francisco, California v. Env't Prot. Agency,* 604 U.S. 334, 350 (2025) ("It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'").



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

Interpreting H.R. 1 to leave PRWORA's carve-out of SSI recipients intact would best harmonize the statutes and align with Congress's apparent policy objectives. Although H.R. 1 made drastic cuts to federal benefits, it left language from prior legislation under the Children's Health Insurance Program Reauthorization Act of 2009 (CHIPRA) to make FFP available for lawfully present noncitizen children and pregnant women. *See* 42 U.S.C. §1396b(v)(5). Congress did not revoke these CHIPRA provisions for optional coverage of these two vulnerable groups, just as it did not revoke its prior PRWORA provisions requiring coverage of SSI recipients. Because Congress declined to amend existing statutory language providing coverage for children, pregnant women, as well as SSI recipients with high medical needs, H.R. 1 signaled no "clear and manifest" intent to strip these special populations of critical healthcare coverage.

Thus, considering the overall context, HHS's interpretation of H.R. 1 is incongruous with every other statutory provision addressing Medicaid coverage for the individuals in greatest need. Plaintiffs are therefore likely to succeed on the merits.

*5. <u>HHS's action is contrary to law and arbitrary and capricious.</u>*

Agency action must be held unlawful and set aside as arbitrary and capricious if it is not "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). As courts review an agency's explanation, they "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43(1983) (internal quotation and citations omitted). An action is normally arbitrary and capricious where "the agency has relied on factors which Congress has not intended it to consider" or "entirely failed to consider an important aspect of the problem." *Id.*



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

The SHO Letter and Implementation Tool offered no explanation for HHS's decision to stop paying for SSI recipients' healthcare coverage while it acknowledged their coverage was still required under PRWORA and the Medicaid Act. HHS does not explain in either communications what factors it relied upon to find Congressional intent to strip SSI recipients of their essential health services, "notwithstanding" other statutory mandates that HHS recognizes H.R.1 did not repeal or amend. Instead, HHS simply glosses over the glaring inconsistency between its interpretation and existing unrepealed and unamended Medicaid entitlements.

Most importantly, the SHO Letter and Implementation Tool ignore the massively destructive impact that its decision will have on lawfully present qualified noncitizen SSI recipients. These communications cavalierly note that states have the option to provide healthcare with one hundred percent (100%) state funding but disregard the gravely concerning fact that most states, including Washington, are not prepared to provide health services that elders and people with significant disabilities need without cooperative federal funding. Hence, HHS assures the states there is no obligation for them to shoulder this burden alone, should the state choose not to do so. Unsurprisingly, Washington will not be picking up the 67% federal share to cover the vast majority of SSI recipients who are losing Medicaid under HHS's instructions. *See* Wilson Decl. ¶¶ 9, 25. The impact on Plaintiff Matsai, Plaintiff Neighborhood House's clients, and other qualified noncitizen SSI recipients was not a part of HHS's calculus.

In sum, HHS should be aware that SSI recipients typically suffer from serious health conditions but do not have personal means to access other healthcare resources that states, including Washington, will not cover. HHS noticed that Congress did not amend Medicaid coverage requirements. Yet, instead of reading H.R. 1 in harmony with other unamended statutes to align with responsible public health policy, HHS recklessly chose to interpret it in the most



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

harmful way possible. Lacking any statutory basis or policy rationale, HHS's directive is likely to be held unlawful and set aside as arbitrary and capricious under 5 U.S.C. § 706(2)(A).

6. *Service organizations and individual SSI recipients meet Article III Standing and Zone of Interest tests.*

Article III of the Constitution requires the party claiming standing to establish an "injury in fact" that is fairly "traceable" to the defendant's action, and likely redressable by a favorable court decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Both Plaintiffs satisfy this test.

Plaintiff Matsai is an individual SSI recipient who will suffer immense health consequences due to the loss of irreplaceable Medicaid benefits. *Supra*, § III.B. Neighborhood House has standing because "the challenged practices have perceptibly impaired [their] ability to provide the services [they were] formed to provide" or by demonstrating that the challenged action "will cause them to lose a substantial amount of funding." *Id.*; *La Clinica de la Raza v. Trump*, 706 F. Supp. 3d 903, 915 (N.D. Cal. 2020) (internal quotations and citations omitted). Plaintiffs' injuries would be redressed if HHS's instructions to terminate the Medicaid coverage for SSI recipients is ultimately set aside and permanently enjoined.

Individuals and service organizations also satisfy the test for their interests to fall "arguably within the zone of interests to be protected or regulated" by PRWORA and the Medicaid Act. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012); *Ass'n of Data Processing Serv. Organizations, Inc. v. Camp*, 397 U.S. 150, 153 (1970). The Supreme Court has cautioned that "this test is not meant to be especially demanding." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987). In fact, "there does not have to be an indication of congressional purpose to benefit the would-be plaintiff" as the "proper inquiry is simply whether the interest sought to be protected by the complainant is *arguably* within the zone of interests to



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

be protected." *Nat'l Credit Union Admin. v. First Nat. Bank & Tr. Co.*, 522 U.S. 479, 492 (1998) (internal citations omitted) (emphasis in original). A plaintiff can "satisfy the test in either one of two ways: (1) if it is among those [who] Congress expressly or directly indicated were the intended beneficiaries of a statute, or (2) if it is a suitable challenger to enforce the statute—that is, if its interests are sufficiently congruent with those of the intended beneficiaries that the litigants are not more likely to frustrate than to further ... statutory objectives." *La Clinica de la Raza*, 706 F. Supp. 3d at 920 (internal quotations and citations omitted).

Here, the Plaintiffs' interests in noncitizen SSI recipients retaining the same Medicaid benefits as other SSI recipients are linked to, and consistent with, the PRWORA protections and Medicaid Act. Plaintiff Matsai's interests in being able to access medical care and benefits are squarely within the zone of interests of these two statutes as she is among the intended beneficiaries of both statutory mandates. As a service organization dedicated to supporting immigrants of war-torn and oppressed nations, Neighborhood House also has interests congruent with their clients' interests because HHS's guidance "imperils" the organization's mission, values, and plans to remove cultural and systemic barriers to healthcare and other key resources. *See New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 63 (2d Cir. 2020) (finding service organizations' interests "stem from their assorted missions to increase noncitizen well-being and status, which they express in their work to provide legal and social services to noncitizens" and that the challenged action of disqualifying noncitizens for immigration benefits based on an overbroad "public charge" rule "imperils both these interests").

## VI. ABSENT RELIEF, PLAINTIFFS WILL SUFFER IRREPARABLE INJURY

Plaintiffs also meet their burden to show that irreparable injury is likely absent injunctive relief. *See Winter*, 555 U.S. at 22; *see also Small v. Avanti Heath Sys.*, LLC, 661 F.3d 1180, 1191



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

(9th Cir. 2011) ("while 'likely' is a higher threshold than 'possible,' the [plaintiff] need not prove that irreparable harm is certain or even nearly certain"). Denial of necessary medical care is a "sufficient showing" of risk of irreparable harm. *Beltran v. Myers*, 677 F.2d 1317, 1322 (9th Cir. 1982); *see also A. H. R. v. Washington State Health Care Auth.*, 469 F. Supp. 3d 1018, 1046 (W.D. Wash. 2016) ("Numerous federal courts have recognized that the reduction or elimination of public medical benefits irreparably harms the participants in the programs being cut.").

The Ninth Circuit also has found irreparable injury to organizations based on "economic harm" in an APA case where there is "unavailability of monetary damages" as well as "layoffs of team members." *City & Cnty. of San Francisco*, 981 F.3d at 762; *Thakur v. Trump*, 176 F.4th 1187, 1205 (9th Cir. 2026); *see also Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Hum. Servs.,* 328 F. Supp. 3d 1133, 1151 (E.D. Wash. 2018) (finding irreparable harm to organization losing HHS funding upon which they had "based their programs, budgeting, staffing, and partnerships with communities").

Plaintiff Matsai and other lawfully present qualified noncitizen SSI recipients in Washington will lose all health care coverage necessary medical treatment and care services if HHS's instructions are not postponed. *Supra*, § III.B. Neighborhood House will immediately suffer a funding cut on October 1, 2026. *Id*. It is already anticipating layoffs of bilingual and multilingual staff specifically hired and intensely trained to serve the noncitizen population in accordance with its mission and values. *Id*. Its staff are diverting time, energy, and attention to scrape together plans for saving their clients' fragile lives as Neighborhood House looks to rebalance its budget for additional uncompensated resources to address its clients' inevitable crises. *Id*. After October 1, Neighborhood House will stay faithful to its long-standing values, but its mission will be severely damaged. *Id*.



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

## VII. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR PRELIMINARY INJUNCTIVE RELIEF

When ruling on a preliminary injunction, "a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Arc of Cal. v. Douglas*, 757 F.3d 975, 991 (9th Cir. 2014) (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)). The Ninth Circuit has had "little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor" when, as here, it is "[f]aced with . . . a conflict between financial concerns and preventable human suffering." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983); *McNearney v. Wash. Dep't of Corr.*, No. 11-cv-5930 RBL/KLS, 2012 WL 3545267, at *15 (W.D. Wash. June 15, 2012) ("the Ninth Circuit expects lower courts to protect physical harm to an individual over monetary costs to government entities"). "The public interest inquiry primarily addresses impact on non-parties rather than parties and takes into consideration the public consequences in employing the extraordinary remedy of injunction." *hiQ Labs, Inc. v. LinkedIn Corp.,* 31 F.4th 1180, 1202 (9th Cir. 2022) (internal citations omitted).

The balance of hardships favors plaintiffs. Plaintiff Matsai and over 150 other Neighborhood House clients, many of whom fled for their lives to seek safety in the U.S., will suffer serious illness, injury, and risk of death without medical care they cannot afford. The public interest is served in protecting the additional refugees, asylees, parolees, trafficking and abuse victims, and other qualified noncitizen SSI recipients in Washington from similar fates. It is also beneficial to the public at large to preserve the health coverage of this population so that they will not have to rely on more expensive and less effective emergency care that will burden hospitals, emergency rooms, and crisis responders. Ensuring basic health and safety of these Washingtonians is well within the public interest.



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

## VIII. NO BOND IS REQUIRED

No injunction bond should be ordered. There is no mandatory bond requirement when seeking a preliminary injunction under § 705. The D.C. Circuit has explicitly held a bond is not required when granting a stay under § 705:

> Because the Court grants a stay under 5 U.S.C. § 705, and not a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, it will deny DOL's request for an injunction bond. Rule 65(c) provides that a court may issue a preliminary injunction "only if the movant gives security in any amount that the court considers proper." Fed. R. Civ. P 65(c). But § 705 of the APA contains no such requirement, and DOL cites no authority that supports requiring a bond in these circumstances.

*Cabrera v. U.S. Dep't of Lab.*, 792 F. Supp. 3d 91, 107 n.3 (D.D.C. 2025), *appeal dismissed sub nom. Cabrera v. United States Dep't of Lab.*, No. 25-5340, 2025 WL 3635881 (D.C. Cir. Dec. 15, 2025); *see also Rhode Island Coal. Against Domestic Violence v. Blanche*, No. 25-CV-279-MRD-AEM, 2026 WL 1045285, at *6 (D.R.I. Apr. 17, 2026) (finding bond unnecessary in administrative stay under § 705, which directs the Court ordering relief to consider "such conditions as may be required and to the extent necessary to prevent irreparable injury.").[1]

Here, Defendants face little to no likelihood of harm or suffering costs because of the requested injunction; therefore, the Court should not require Plaintiffs to post a security bond. *See Washington State Ass'n of Head Start & Early Childhood Assistance & Educ. Program v. Kennedy* 820 F. Supp. 3d 1178, 1198 (W.D. Wash. 2026).

[1] Even if this Court considered the relief under FRCP 65, a bond would not be required. *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) ("Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any.").



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

## IX. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court issue the attached Order staying HHS's SHO Letter and Implementation Tool instructions directing Washington to terminate noncitizen SSI recipients' Medicaid benefits.

We certify that this memorandum contains 7,723 words, in compliance with Local Civil Rules.

RESPECTFULLY SUBMITTED this 28th day of August, 2026.

*s/Jennifer L. Robbins*
Jennifer L. Robbins, WSBA No. 40861
*s/Travis Lavenski*
Travis Lavenski, WSBA No. 61507
**BARNARD IGLITZIN & LAVITT LLP**
18 West Mercer Street, Suite 400
Seattle, WA 98119
Tel: (206) 257-6011
Tel: (206) 257-6032
Fax: (206) 378-4132
robbins@workerlaw.com
lavenski@workerlaw.com

*s/Susan Kas*
Susan Kas, WSBA No. 36592
**NORTHWEST HEALTH LAW ADVOCATES**
1301 5th Avenue, Suite 1200
Seattle, WA 98101-2677
Tel: (425) 940-5534
susan@nohla.org

*Attorneys for Plaintiffs*