The Honorable Thomas S. Zilly

**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| NEIGHBORHOOD HOUSE and MARIIA MATSAI,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>Defendants. | CASE NO. 2:25-cv-3006-TSZ<br><br>DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY RELIEF<br><br>NOTE ON MOTION CALENDAR: September 25, 2026 |



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 3

I. Statutory Framework ..... 3

A. Medicaid Program ..... 3

B. OBBBA's Amendment to Medicaid's Federal Funding Statute ..... 4

C. PRWORA's Federal Public Benefit Provisions ..... 5

II. HHS's Implementation of OBBBA § 71109 ..... 5

III. Procedural History ..... 7

STANDARD OF REVIEW ..... 7

ARGUMENT ..... 8

I. Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims Because HHS Properly and Reasonably Implemented OBBBA § 71109's Restriction on HHS's Use of Congressional Appropriations for FFP ..... 8

II. Plaintiffs' Asserted Harm Does Not Justify Emergency Relief ..... 14

III. The Remaining Factors Militate Against Preliminary Relief ..... 17

IV. Plaintiffs' Requested Relief Is Overbroad Because It Would Sweep Statewide ..... 17

V. Plaintiffs Should Be Required to Give Security as to Any Injunction or Stay ..... 19

CONCLUSION ..... 20




U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

**TABLE OF AUTHORITIES**

**Cases**

*A.H.R. v. Wash. State Health Care Auth.,* 469 F. Supp. 3d 1018 (W.D. Wash. 2016) ................ 17

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) .......................................... 14

*Am. Ass'n of Nurse Pracs. v. McMahon*, 836 F. Supp. 3d 175 (D.D.C. 2026) .......................... 19

*Ariz. All. for Retired Americans v. Mayes*, 186 F.4th 622 (9th Cir. 2026) ................................. 16

*Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712 (9th Cir. 2003) .................. 18

*Atkins v. Rivera*, 477 U.S. 154 (1986) .......................................................................................... 3

*Beltran v. Myers*, 677 F.2d 1317 (9th Cir. 1982) ......................................................................... 17

*Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011 (9th Cir. 2016) ................................................ 14

*City of Los Angeles v. Barr*, 929 F.3d 1163 (9th Cir. 2019) ....................................................... 13

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ....................................................................... 14

*Cuviello v. City of Vallejo*, 944 F.3d 816 (9th Cir. 2019) ........................................................... 14

*Dickinson v. Trump*, 174 F.4th 634 (9th Cir. 2026) ..................................................................... 18

*FDA v. All. for Hippocratic Medicine*, 602 U.S. 367 (2024) ....................................................... 16

*Garcia v. Google, Inc.,* 786 F.3d 733 (9th Cir. 2015) .............................................................. 8, 14

*Harris v. McRae*, 448 U.S. 297 (1980) ..................................................................................... 2, 12

*Immigr. Ctr. for Women & Child. v. Noem*, 351 F.R.D. 324 (C.D. Cal. 2026) .......................... 19

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ............................................................ 10

*Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211 (9th Cir. 1984) ..................................... 15

*Maine Cmty. Health Options v. United States*, 590 U.S. 296 (2020) ......................................... 11

*Mayor & City Council of Baltimore v. ATF*, 816 F. Supp. 3d 107 (D.D.C. 2026) ..................... 10

*Nat'l TPS All. v. Noem* ("*NTPSA I*"), 150 F.4th 1000 (9th Cir. 2025) .................................... 7, 19

*Nat'l TPS All. v. Noem* ("*NTPSA III*"), 166 F.4th 739 (9th Cir. 2026) ........................................ 19



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

*Neguse v. ICE*, 822 F. Supp. 3d 86 (D.D.C. 2026), *appeal filed*, No. 26-5072 (D.C. Cir.) ........ 10

*NFIB v. Sebelius*, 567 U.S. 519 (2012)........................................................................... 13

*Nken v. Holder*, 556 U.S. 418 (2009) ............................................................................. 17

*OPM v. Richmond*, 496 U.S. 414 (1990) ......................................................................... 10

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981) ..................................... 13

*Planned Parenthood v. HHS*, 328 F. Supp. 3d 1133 (E.D. Wash. 2018) ........................... 15

*Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93 (2012) ..................................................... 10

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025)...................................................................... 18

*United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016) ............................................... 10

*United States v. Wahchumwah*, 710 F.3d. 862, 868 n.2 (9th Cir. 2013) .............................. 9

*U.S. Dep't of Navy v. FLRA*, 665 F.3d 1339 (D.C. Cir. 2012) ......................................... 10

*Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7 (2008)........................................ 1, 14, 16

**Statutes**

Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), Pub. L. No. 104-193, 110 Stat. 2105 (1996).................................................... *passim*

One Big Beautiful Bill Act (OBBBA), Pub. L. No. 119-21, 139 Stat. 72 (2025) ................ *passim*

Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706.................................................. 7

5 U.S.C. § 705.......................................................................................................... 7, 19

8 U.S.C. § 1612...................................................................................................... *passim*

8 U.S.C. § 1641 ................................................................................................................. 5

31 U.S.C. § 1301 ............................................................................................................. 10

31 U.S.C. § 1341 ............................................................................................................. 17

Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* ........................................... 3

42 U.S.C. § 1381a .............................................................................................................. 3



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

42 U.S.C. § 1396-1 .......... 3, 10

42 U.S.C. § 1396a .......... 3, 8, 9, 10, 11, 14, 18

42 U.S.C. § 1396b .......... *passim*

42 U.S.C. § 1396c .......... 13

42 U.S.C. § 1396d .......... 3

**<u>Regulations</u>**

42 C.F.R. § 430.12 .......... 3, 9, 11

42 C.F.R. § 430.35 .......... 13

42 C.F.R. § 435.120 .......... 3



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

## INTRODUCTION

Plaintiffs—a non-profit organization that contracts with a municipal agency to coordinate long-term care and other support services for Medicaid beneficiaries, and one of the organization's clients—seek emergency relief to stop U.S. Department of Health and Human Services ("HHS") guidance to States from taking effect. That guidance implements an amendment to Medicaid's federal funding statute that Congress included in the One Big Beautiful Bill Act (OBBBA), Pub. L. No. 119-21, 139 Stat. 72 (2025). As relevant here, the amendment, set forth at OBBBA § 71109, generally requires that, beginning October 1, 2026, HHS ensure that its federal financial contributions to State Medicaid programs cover certain medical assistance only to the extent it is provided to U.S. citizens and U.S. nationals, lawful permanent residents, Cuban/Haitian entrants, and Compact of Free Association migrants. *Id.* § 71109. Plaintiffs argue that HHS's implementation of this OBBBA provision fails to properly harmonize that provision with a separate provision, part of the Personal Responsibility and Work Opportunity Reconciliation Act (PWORA), Pub. L. No. 104-193, 110 Stat. 2015, which provides that qualified aliens (including those who do not fall within the noncitizen categories specified in § 71109) who receive supplemental security income ("SSI") pursuant to title XVI of the Social Security Act "shall be eligible" for Medicaid "under the same terms and conditions that apply to other [SSI] recipients." 8 U.S.C. § 1612(b)(2)(F).

Plaintiffs' request for emergency relief should be denied because they are unlikely to succeed on the merits of their claims. Properly understood, the OBBBA amendment, codified at 42 U.S.C. § 1396b(v)(5), cannot be harmonized with PRWORA in the way that Plaintiffs propose because the OBBBA amendment expressly and unambiguously withdraws HHS's authority to provide appropriated federal matching funds for medical assistance to noncitizens other than as specified. Moreover, the statute that OBBBA amended, 42 U.S.C. § 1396b, is the Medicaid provision that governs federal funding participation in Medicaid. By its plain terms, the general federal obligation to pay in § 1396b(a) is subject to any limitations set forth in the rest of that



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

provision, including the limitation that the OBBA amendment added in § 1396b(v)(5). On the other hand, PRWORA does not address federal funding at all. Where there is no preexisting statutory federal payment obligation that potentially conflicts with the OBBBA amendment's federal funding limitation, HHS is obligated to implement the federal funding limitation in § 1396b(v)(5) according to its own terms.

The HHS actions that Plaintiffs challenge did just that. The April 8, 2026 letter to State Health Officials ("SHO letter") explained the steps that must be undertaken prior to October 1, 2026 to ensure that States do not claim federal funds for purposes inconsistent with § 1396b(v)(5). The July 31, 2026 State Implementation Tool further outlines necessary steps to that end. Plaintiffs identify nothing in either of these documents that goes beyond what § 1396b(v)(5) requires in terms of limiting federal funding for certain noncitizen medical assistance.

The SHO letter did address whether, in light of HHS's implementation of § 1396b(v)(5), States would now be required to fully fund medical assistance for certain groups of noncitizens, such as noncitizen SSI recipients covered by § 1612(b)(2)(F). But Plaintiffs concede that HHS's answer to that question—that the Federal Government will not require States to fully fund such coverage although States may opt to provide equivalent coverage if they wish—was compelled by the Supreme Court's decision in *Harris v. McRae*, 448 U.S. 297 (1980). Plaintiffs do not challenge that aspect of the SHO letter. Because they fail to show a likelihood of success with respect to the aspects of the SHO letter and other HHS guidance that they do challenge, the Court can and should deny their motion on that basis alone and need not consider other factors set forth in *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), governing preliminary relief.

If the Court does address the other factors, it should still deny Plaintiffs' motion. Plaintiffs' asserted harms do not outweigh the harm to the Government and public if HHS is required to make payments from its appropriated funds that are not Congressionally authorized. In addition, any emergency relief should be limited to Plaintiffs. Plaintiffs fail to justify their request for statewide relief.



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

## BACKGROUND

### I. Statutory Framework

#### A. Medicaid Program

Under Medicaid, enacted in 1965 as Title XIX of the Social Security Act, the Federal Government reimburses States for a portion of their expenses in providing health care to low-income "families with dependent children and of aged, blind, or disabled individuals." 42 U.S.C. § 1396-1. States voluntarily participate in Medicaid by submitting for HHS's approval a "State plan," in which States agree, in return for the federal funds that they receive, to "comply with requirements imposed by the [Social Security] Act and by the Secretary of Health and Human Services." *Atkins v. Rivera*, 477 U.S. 154, 156-57 (1986); *cf.* 42 U.S.C. § 1396a. States are generally required under their Medicaid State plans to make medical assistance available to all individuals who receive supplemental security income ("SSI") benefits.[1] *Id.* § 1396a(a)(10)(A)(i)(II); 42 C.F.R. § 435.120. However, States must agree to amend their State plans "whenever necessary to reflect . . . [c]hanges in Federal law, regulations, policy interpretations, or court decisions." 42 C.F.R. § 430.12(c)(1)(i).

Section 1903 of Title XIX, codified at 42 U.S.C. § 1396b, authorizes HHS to provide federal matching funds to each participating State, derived from sums appropriated for that purpose by Congress. Generally, these funds, commonly referred to as federal financial participation ("FFP"), include a certain percentage of the State's total expenditures each quarter for medical assistance provided to individuals. 42 U.S.C. §§ 1396b(a)(1), 1396d(a), (b). However, § 1396b expressly prohibits HHS from paying, and States from receiving, FFP for certain categories of expenditures. For example, HHS cannot pay FFP to States for medical assistance provided to individuals whose family income exceeds a certain amount, *id.* § 1396b(f); to individuals whose private insurer sought to exclude them from private coverage based on Medicaid eligibility, *id.*

[1] Individuals who are "aged, blind, or disabled" and are determined eligible based on their income and resources may receive SSI pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq. Cf.* 42 U.S.C. § 1381a.



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

§ 1396b(o); or, with certain exceptions, to "an alien who is not lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law," *id.* § 1396b(v)(1).

**B. OBBBA's Amendment to Medicaid's Federal Funding Statute**

On July 4, 2025, Congress enacted OBBBA through the federal budget reconciliation process. P.L. No. 119-21. As part of that law, Congress revised the criteria for FFP for medical assistance provided to noncitizens set forth in § 1396b(v). In particular, OBBBA § 71109 amended 42 U.S.C. § 1396b(v) by adding paragraph (v)(5), which provides:

> Notwithstanding the preceding paragraphs of this subsection, beginning on October 1, 2026, except as provided in paragraphs [(v)](2) and (4),[2] in no event shall payment be made to a State under this section for medical assistance furnished to an individual unless such individual is--
>
> (A) a resident of 1 of the 50 States, the District of Columbia, or a territory of the United States; and
>
> (B) either--
>
> (i) a citizen or national of the United States;
>
> (ii) an alien lawfully admitted for permanent residence as an immigrant as defined by sections 1101(a)(15) and 1101(a)(20) of Title 8, excluding, among others, alien visitors, tourists, diplomats, and students who enter the United States temporarily with no intention of abandoning their residence in a foreign country;
>
> (iii) an alien who has been granted the status of Cuban and Haitian entrant, as defined in section 501(e) of the Refugee Education Assistance Act of 1980 (Public Law 96-422); or
>
> (iv) an individual who lawfully resides in the United States in accordance with a Compact of Free Association [("COFA")] referred to in section 1612(b)(2)(G) of Title 8.

---

[2] The paragraph (v)(2) exception provides that FFP remains available for care and services necessary to treat an emergency medical condition. The paragraph (v)(4) exception provides that FFP remains available for full Medicaid coverage provided at States' option, pursuant to section 214 of the Children's Health Insurance Program Reauthorization Act of 2009 (CHIPRA), Pub. L. No. 111-3, 123 Stat. 56 (2009) (codified in relevant part at 42 U.S.C. § 1396b(v)(4)), to certain children and pregnant women who are lawfully residing in the United States. Plaintiffs' claims do not implicate either exception. However, in the interest of accuracy, Defendants refer herein to § 71109(a)'s FFP prohibition as a prohibition on FFP for "nonemergency, non-CHIPRA 214" medical assistance to non-FFP-eligible noncitizens.



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

OBBBA, Pub. L. No. 119-21, § 71109(a), 139 Stat. 72, 297 (July 4, 2025) (codified at 42 U.S.C. § 1396b(v)(5)).[3] Essentially, as of October 1, 2026, this provision prohibits HHS from using appropriated funds to provide FFP to States for noncitizens' nonemergency, non-CHIPRA 214 medical assistance if those individuals are not U.S. nationals, lawful permanent residents, Cuban/Haitian entrants, or COFA migrants.

### C. PRWORA's Federal Public Benefit Provisions

Under PRWORA, States generally have discretion to determine Medicaid eligibility for "qualified aliens," as defined in 8 U.S.C. § 1641(b)—including individuals who meet the definitions of lawful permanent resident, asylee, refugee, parolee, an alien whose deportation is being withheld, a conditional entrant, a Cuban/Haitian entrant, or a COFA migrant—provided that the individual complies with any applicable waiting period. 8 U.S.C. §§ 1612(b)(1), (3)(C), 1613. However, PRWORA limits that discretion in the circumstances specified in § 1612(b)(2). For example, PRWORA provides that refugees, asylees, and others listed in the relevant subsection "shall be eligible" for medical assistance under a Medicaid State plan for seven years. *Id.* § 1612(b)(2)(A)(i). In addition, PRWORA specifically provides that aliens who receive SSI "shall be eligible" for medical assistance under a Medicaid State plan "under the same terms and conditions that apply to other recipients" of such benefits. *Id.* § 1612(b)(2)(F).

## II. HHS's Implementation of OBBBA § 71109

On April 8, 2026, HHS issued a letter to State Health Officials (the SHO letter at issue here) to provide operational guidance on how HHS would implement OBBBA's changes to FFP for nonemergency, non-CHIPRA 214 Medicaid provided to certain noncitizens and the corresponding steps States should take to comply with those changes. SHO #26-001 ("SHO letter") [Compl. app.A, ECF 1 at 25]. The SHO letter explained that, as of October 1, 2026, OBBBA

---

[3] OBBBA § 71109 also amended Section 2107(e)(1)(R) of the Social Security Act to include the same funding prohibition on child or pregnancy-related health assistance under the Children's Health Insurance Program ("CHIP"). P.L. No. 119-21, § 71109(b). That amendment is not at issue in this case.



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

§ 71109 (as codified at 42 U.S.C. § 1396b(v)(5)) places limitations on FFP payments to States for medical assistance provided to noncitizens who do not fall within the categories of FFP-eligible noncitizens specified in subsections 1396b(v)(5)(B)(ii)-(iv). SHO letter at 4. In particular, FFP will no longer be available for nonemergency medical assistance provided to "asylees, refugees, parolees, or victims of trafficking" unless those individuals also fall within one of the FFP-eligible noncitizen categories or are lawfully residing children or pregnant women in States that have elected the CHIPRA 214 option. *Id.* at 4-5. Accordingly, HHS directed States to ensure that they do not claim FFP for medical assistance that is no longer eligible for such funding under § 1396b(v)(5) and "to implement any systems and operational changes necessary to ensure such proper FFP claiming by October 1, 2026." SHO letter at 5. HHS also directed States to submit State plan amendments no later than December 31, 2026 (to be retroactively effective as of October 1, 2026) "to be consistent with" 42 U.S.C. § 1396(v)(5). SHO letter at 20.

In addition to this implementation of OBBBA's express limitations on FFP, the SHO letter provided guidance on the interaction between those limitations and PRWORA's requirement that States provide full Medicaid benefits to certain qualified and otherwise-eligible noncitizens, subject to waiting periods for certain groups. *Id.* at 5-7. The letter explained that, for noncitizens who qualify as FFP-eligible under OBBBA, PRWORA's requirement that States provide full Medicaid benefits subject to applicable waiting periods would continue to apply. *Id.* at 6. However, the letter acknowledged that no clear Congressional intent could be found in OBBBA or its legislative history to require States, after October 1, 2026, to shoulder the full cost of health coverage for noncitizens who would no longer be FFP-eligible. *Id.* at 7. The SHO letter concluded that, under these circumstances, HHS would not require States "to provide state-only funded health coverage to qualified noncitizens for whom FFP is not available for full Medicaid benefits under [42 U.S.C. § 1396b(v)(5)] (e.g., asylees, refugees, parolees, or victims of trafficking who are not also FFP-eligible noncitizens)." *Id.* Rather, States could choose whether or not to provide such coverage without a federal financial contribution. *Id.* However, because Medicaid's cornerstone is the shared "financial contribution by both the Federal Government and the participating State,"



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

HHS would not deem any coverage that a State opts to provide solely with its own funding to be "Medicaid." *Id.*

On July 31, 2026, HHS issued a State Implementation Tool to provide further assistance to States in complying with OBBBA § 71109. Compl. ¶ 43 & app.B [ECF 1 at 60]. This tool repeated the guidance regarding the impact of § 71109 on FFP for noncitizens and otherwise focused on outlining the operational and system-related tasks that States would need to carry out before October 1, 2026 to implement the statutory changes. *Id.* app.B.

## III. Procedural History

Plaintiffs filed suit against HHS on August 25, 2026, raising two claims under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706. Compl. [ECF 1]. Count I asserts that the SHO letter and State Implementation Tool are contrary to law because they instruct States to terminate FFP eligibility for SSI recipients who are not FFP-eligible under 42 U.S.C. § 1396b(v)(5). Compl. ¶ 74. Count II asserts that the SHO letter and State Implementation Tool are arbitrary and capricious on largely the same grounds. Compl. ¶ 83.

On August 28, 2026, Plaintiffs filed a Motion for Preliminary Relief ("P.Mot,"). [ECF 4]. Pursuant to 5 U.S.C. § 705, Plaintiffs seek to stay or enjoin on a statewide basis what they refer to as "HHS's instruction for states to terminate Medicaid payments for SSI recipients," based on their theory that "H.R. 1 cannot be read to alter or displace the prior enacted statutory scheme for SSI recipients to also receive Medicaid benefits." P.Mot. 12; *cf.* P.Proposed Order [ECF 4-1] at 4.

## STANDARD OF REVIEW

Courts review a request for a § 705 stay under the same framework applicable to preliminary injunctions. *Nat'l TPS All. v. Noem* ("*NTPSA I*"), 150 F.4th 1000, 1015 (9th Cir. 2025). Plaintiffs must show that they are "likely to succeed on the merits," "likely to suffer irreparable harm in the absence of preliminary relief," that the "balance of equities" tips in their favor, and that "an injunction is in the public interest." *Id.* "Where, as here, the Government is a party, the last two factors merge." *Id.* The first factor—likely success on the merits—"is the most important," and where a plaintiff fails to establish this "threshold" factor, the Court "need not consider the



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

remaining three." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

## ARGUMENT

### I. Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims Because HHS Properly and Reasonably Implemented OBBBA § 71109's Restriction on HHS's Use of Congressional Appropriations for FFP

Plaintiffs' claims fail on the merits, and their motion should be denied on that basis alone. As described above, the SHO letter that Plaintiffs seek to enjoin did two things. First, it implemented Congress's express federal funding prohibition in OBBBA § 71109, as codified at 42 U.S.C. § 1396b(v)(5). The statutory provision prohibits HHS from paying a State for nonemergency, non-CHIPRA 214 medical assistance ("in no event shall payment be made") to individuals who do not fall within the specific categories set forth in § 1396b(v)(5)(B)(i)-(iv), which include U.S. citizens, U.S. nationals, and particular categories of noncitizens (described in the SHO letter as "FFP-eligible noncitizens"). To implement that prohibition, the SHO letter and the State Implementation Tool directed States to update their systems to ensure their claims for FFP are consistent with § 1396b(v)(5). SHO letter at 5; State Implementation Tool at 1-7.

Second, the SHO letter provided guidance to States on whether, despite the FFP restriction in § 1396b(v)(5), States will be required to continue Medicaid coverage for those noncitizens for whom no federal matching funds would be provided. In other words, HHS addressed whether States themselves must fully fund Medicaid coverage where federal funding is no longer available. The SHO letter explains HHS's conclusion that there is no clear indication in OBBBA that Congress intended to impose this requirement on States. SHO letter at 6-7. The letter explains HHS's harmonization of § 1396b(v)(5) with the obligations on State plans set forth in 42 U.S.C. § 1396a(10)(A) and with PRWORA provisions such as 8 U.S.C. § 1612(b)(2)(F), which govern Medicaid eligibility, by stating that HHS "would not consider health coverage that a State opts to continue to provide with 100 percent state-only funds"—or that it opts not to provide—"to be Medicaid." SHO letter at 7. The letter's analysis on this point provides assurance to States that HHS will not require them to provide (and completely fund) health coverage to non-FFP-eligible groups, notwithstanding 42 U.S.C. § 1396a(a)(10)(A) and 8 U.S.C. § 1612(b)(2)(F), although



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

States may opt to provide a form of health coverage to such individuals with State-only funds if they wish.

Plaintiffs' challenge here is narrowly focused on noncitizens who receive SSI benefits and who, until now, have been deemed eligible for Medicaid on that basis under 8 U.S.C. § 1612(b)(2)(F). They argue that, as a matter of statutory construction, § 1396b(v)(5) did not implicitly repeal § 1612(b)(2)(F), and that, as a result, SSI-recipient noncitizens remain Medicaid-eligible. P.Mot. 16.[4] The conclusion Plaintiffs seek to draw from their interpretation is that, even though OBBBA § 71109 expressly prohibits the expenditure of federal funds under § 1396b for nonemergency, non-CHIPRA 214 medical assistance to any noncitizen who is not FFP-eligible, HHS should nevertheless provide FFP for medical assistance to non-FFP-eligible individuals if they are SSI recipients. P.Mot. 17 (arguing that "SSI recipients" are a "pre-existing and surviving carve-out from any other citizenship and immigration criteria").

Plaintiffs' primary error lies in their failure to recognize OBBBA § 71109, enacted through the budget reconciliation process and thus necessarily addressing Congressional appropriations, as an exercise of Congress's Spending Power. "Congress's control over federal expenditures is

---

[4] Although Plaintiffs focus primarily on PRWORA, they at times (at least in their Introduction) also appear to argue that the SHO letter's implementation of § 71109(a)'s FFP restrictions should have been "harmonized" with 42 U.S.C. § 1396a(a)(10)(A)(i)(II)(aa), which generally requires State plans to ensure medical assistance is available for SSI recipients. *See* P.Mot. 1, 2. *But see id.* at 15 (arguing that the § 1396a provision is *not* the "most specific statute"). Washington State's recently-filed amicus brief also cites a different provision of that statute, § 1396a(a)(10)(B). *See* Wash. Amicus Br. [ECF 18-1], at 6. To the extent Washington asserts arguments not set forth in Plaintiffs' opening brief, they are waived. *United States v. Wahchumwah*, 710 F.3d. 862, 868 n.2 (9th Cir. 2013) ("Generally, arguments not raised in a party's opening brief are deemed waived, and the court will not consider arguments raised only in amicus briefs."). In addition, as Plaintiffs acknowledge, P.Mot. 3-4, § 1396a imposes requirements on State plans, not on HHS. SHO letter at 6 n.33. As described herein, for that very reason, HHS sought to assure States in the SHO letter that HHS will not require them to fully fund medical assistance for which no federal matching funds are available. Moreover, HHS requires States to agree to amend their State plans "whenever necessary to reflect . . . [c]hanges in Federal law, regulations, policy interpretations, or court decisions." 42 C.F.R. § 430.12(c)(1)(i). By their nature, State plan terms are subordinate to any statutory limitation on HHS's own authority—which is what Congress imposed in § 71109.



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

absolute," and Congress has provided that "'[a]ppropriations shall be applied only to the objects for which the appropriations were made except as otherwise provided by law.'" *U.S. Dep't of Navy v. FLRA*, 665 F.3d 1339, 1348 (D.C. Cir. 2012) (Kavanaugh, J.) (quoting 31 U.S.C. § 1301(a)); *cf. United States v. McIntosh*, 833 F.3d 1163, 1175 (9th Cir. 2016) ("The [Appropriations] Clause has a 'fundamental and comprehensive purpose . . . to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good . . . .'" (quoting *OPM v. Richmond*, 496 U.S. 414, 427-28 (1990))). Section 71109 is unambiguous in that regard. *Cf. Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 379 (2024) ("If ... congressional intent is 'clear,' that is the end of the inquiry."); *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) ("[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). The fact that § 71109's amendment to 42 U.S.C. § 1396b addresses Congressional appropriations is apparent on the face of the added provision, § 1396a(v)(5), and its placement within the statutory scheme. *Cf.* 42 U.S.C. § 1396-1 (generally authorizing appropriations "to carry out the purposes of this subchapter"); *id.* § 1396b(a) (addressing payments to States "[f]rom the sums appropriated therefor"); *id.* § 1396b(v)(5) (identifying circumstances where "in no event shall payment be made to a State under this section").

When Congress expressly prohibits the use of federal funds for certain purposes, courts have enforced those prohibitions according to their plain terms. *See, e.g., McIntosh*, 833 F.3d at 1174–75 (interpreting appropriations rider prohibiting expenditure of federal funds on enforcement of federal marijuana laws against conduct permitted under state medical marijuana laws by construing the ordinary meaning of terms in the rider's statutory text); *Neguse v. ICE*, 822 F. Supp. 3d 86, 115 (D.D.C. 2026) (holding plaintiffs likely to succeed in claim based on appropriations rider's prohibition on use of federal funds to prevent Members of Congress from accessing immigration detention facilities because when the rider "says that '[n]one' of DHS's annually appropriated funds may be used for a prohibited purpose, it means none"), *appeal filed*, No. 26-5072 (D.C. Cir.); *Mayor & City Council of Baltimore v. ATF*, 816 F. Supp. 3d 107, 118 (D.D.C. 2026) (holding appropriation rider's "restriction on the use of any appropriated funds—



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

from any source, now or in the future—constitutes an explicit expression of Congress's intent to bar public disclosure of firearms trace data").

In *Maine Cmty. Health Options v. United States*, 590 U.S. 296 (2020), the Supreme Court rejected the notion that the appropriations riders at issue there overcame a pre-existing statutory obligation to pay certain insurers who had lost money during the first years of the Affordable Care Act. *Id.* at 314-21. There, however, the existing statute by its "express terms and context," including its use of the phrase "shall pay," created a legal obligation to pay money to insurers. *Id.* at 310. The Court concluded that the appropriations riders there did not repeal or discharge the Government's obligation because, by their terms, they applied only to specific fiscal years. *Id.* at 316-17.

Here, by contrast, the PRWORA provision that Plaintiffs suggest must be "harmonized" with OBBBA § 71109, P.Mot. 16, cannot be construed to create an obligation by HHS to pay money at all. The provision states that noncitizen SSI recipients "shall be eligible" for Medicaid, 8 U.S.C. § 1612(b)(2)(F), but it does not by its terms obligate HHS to pay for those SSI recipients' care. Indeed, the entire structure of Medicaid is premised on the notion that HHS does not pay individuals or providers directly; rather, as described above, HHS reimburses States pursuant to existing law and the provisions of State plans, which themselves must adapt to any subsequent statutory or regulatory changes, as well as policy interpretations or court decisions, *see* 42 U.S.C. § 1396a; 42 C.F.R. § 430.12(c)(1)(i).[5]

---

[5] Washington's assertion, in its amicus brief, that "Medicaid eligibility is synonymous with a shared financial responsibility between the State and Federal governments for provision of that care," Proposed Amicus Br. at 5, misreads the statutory scheme. Neither 42 U.S.C. § 1396a nor 8 U.S.C. § 1612 imposes an obligation on HHS to pay FFP. Rather, 42 U.S.C. § 1396b(v)(5) plainly prohibits HHS from paying FFP with respect to certain coverage for noncitizens. Moreover, as noted above, State plans are required to accommodate any changes in HHS's authority in that respect. Essentially, any obligations on State plans set forth in § 1396a are subordinate to any limitations on HHS's authority in § 1396b. And § 1396b(v)(5) unambiguously restricts that authority.



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

The statutory provision that governs HHS payments to States is not found in PRWORA at all, much less in § 1612(b)(2)(F). Rather, it is found in 42 U.S.C. § 1396b—which, unlike § 1612(b)(2)(F), is part of the Medicaid provisions of the Social Security Act. Section 1396b(a) states that HHS "shall pay" States FFP "[f]rom the sums appropriated therefor," "except as otherwise provided in" § 1396b. 42 U.S.C. § 1396b(a). The express terms of § 1396b(a) thus recognize that Congress can change HHS's payment obligation and authority by amending § 1396b, and OBBBA did just that by adding § 1396b(v)(5). Section 1396b(v)(5), in turn, states that its restrictions on payment apply "[n]otwithstanding the preceding provisions of this section" (except as expressly provided in specific paragraphs of § 1396b(v) not at issue here). 42 U.S.C. § 1396b(v)(1). Unlike the appropriations riders at issue in *Maine Cmty. Health Options*, the amendment here by its terms does not merely affect a single fiscal year's appropriations but is a permanent change, unless and until Congress further amends or repeals that statutory provision. The express terms and context of § 1396b(v)(5) clearly demonstrate Congress's intent to revise HHS's payment obligation and authority by directing that "in no event" shall HHS pay FFP to a State for noncitizens' medical assistance except as expressly allowed in § 1396b(v)(5). The SHO letter correctly understood and implemented this prohibition.

Having properly recognized that OBBBA § 71109 prohibits HHS from paying FFP for non-FFP-eligible noncitizens' nonemergency, non-CHIPRA 214 medical assistance, the SHO letter also correctly concluded that States are not obligated under federal law to fully fund such medical assistance for non-FFP-eligible noncitizens. Plaintiffs do not appear to argue that this aspect of the SHO letter is contrary to law. Even if they did, they would be unlikely to succeed. As Plaintiffs concede, P.Mot. 17, the SHO letter's conclusion on this point is compelled by the Supreme Court's decision in *Harris v. McRae*, 448 U.S. 297 (1980). In *Harris*, the Court recognized that "[t]he cornerstone of Medicaid is financial contribution by both the Federal Government and the participating State," and that "[n]othing in Title XIX as originally enacted, or in its legislative history, suggests that Congress intended to require a participating State to assume the full costs of providing any health services in its Medicaid plan." *Id.* at 308. When Congress,



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

through an appropriations provision known as the Hyde Amendment, prohibited the use of federal funds to reimburse States for the cost of abortions except in certain circumstances, the Court concluded that Title XIX did not "require a participating State to pay for those medically necessary abortions for which federal reimbursement is unavailable under the Hyde Amendment." *Id.* at 311.

At the very least, if Congress intended to require States to pay the full cost of nonemergency, non-CHIPRA 214 medical assistance for noncitizen non-FFP-eligible SSI recipients, it would have to do so "unambiguously." *City of Los Angeles v. Barr*, 929 F.3d 1163, 1174 (9th Cir. 2019) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). Neither OBBBA § 71109 nor 8 U.S.C. § 1612(b)(2)(F) contains such an unambiguous requirement. Nor would inferring such a requirement be a trivial matter since, if that requirement were deemed part of a State's obligations under its State plan, failing to satisfy that requirement would put the State's Medicaid participation, and corresponding FFP for other medical assistance, at risk. *Cf.* 42 U.S.C. § 1396c; 42 C.F.R. § 430.35(c). A majority of the Supreme Court has recognized that the Spending Clause does not allow Congress to impose spending conditions on States that amount to coercion rather than persuasion. *NFIB v. Sebelius*, 567 U.S. 519, 585 (2012) (Roberts, J., joined by Breyer & Kagan, JJ.); *id.* at 681 (Scalia, J., dissenting, joined by Kennedy, Thomas, & Alito, JJ.). The Court in that case held that Congress could not impose a new condition on States (the Affordable Care Act's Medicaid expansion) that would force them to choose between complying and risking their Medicaid participation as a whole. *See id.* HHS's decision to eschew an interpretation of 8 U.S.C. § 1612(b)(2)(F) that would impose a new obligation on States to fully fund nonemergency, non-CHIPRA 214 medical assistance for noncitizen SSI recipients, in light of the FFP restriction in § 1396b(v)(5), avoided any suggestion of the kind of coercion that *NFIB* might prohibit.

Plaintiffs' claim that HHS's actions implementing OBBBA § 71109 are contrary to law thus fails. Their additional claim that HHS's actions are arbitrary and capricious is equally meritless. Plaintiffs suggest that HHS provided "no explanation" in the SHO letter or State Implementation Tool for its "decision to stop paying for SSI recipients' healthcare coverage."



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

P.Mot. 19. But HHS clearly explained that its decision was required by the plain language in OBBBA § 71109 prohibiting payment of FFP for nonemergency, non-CHIPRA 214 medical assistance to non-FFP-eligible noncitizens. *See* SHO letter at 3-4. As explained above, HHS had no discretion to decide otherwise. Rather, it has sought to implement the unambiguous payment prohibition in § 71109.

HHS also thoroughly explained its reasoning in concluding that States cannot be required under their Medicaid State plans to fully fund medical assistance for these individuals. Thus, although Plaintiffs again appear not to challenge this aspect of the SHO letter, HHS's conclusion on this point cannot be deemed arbitrary or capricious. Among other things, HHS acknowledged the potential consequences if 42 U.S.C. § 1396a and 8 U.S.C. § 1612(b)(2) were interpreted to require States to fully fund Medicaid coverage for non-FFP-eligible noncitizens but explained that such an interpretation would be untenable under Supreme Court authority. SHO letter 5-7. Plaintiffs therefore fail to show a likelihood of success for either of their claims. That failure warrants denial of their motion without consideration of other factors. *Garcia,* 786 F.3d at 740.

## II. Plaintiffs' Asserted Harm Does Not Justify Emergency Relief

To establish entitlement to the "extraordinary remedy" of emergency relief, a plaintiff must show more than the "possibility" of irreparable injury; he must demonstrate that irreparable injury is "likely" in the absence of preliminary relief. *Winter*, 555 U.S. at 22; *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Plaintiffs must make a "clear showing" that they are "likely to suffer irreparable harm before a decision on the merits can be rendered." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) (quoting *Winter*, 555 U.S. at 22); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (injunctive relief unavailable unless plaintiff shows a "likelihood of substantial and immediate irreparable injury").

As an initial matter, Plaintiffs' delay in seeking relief—waiting nearly five months after HHS issued the April 8, 2026 SHO letter—militates against a finding of irreparable harm. *See Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) ("a long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm" (internal quotation



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

omitted)); *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."). Unlike *Planned Parenthood v. HHS*, 328 F. Supp. 3d 1133 (E.D. Wash. 2018), cited by Plaintiffs, Plaintiffs here waited until the very "eve of the termination" of benefits on October 1, 2026 to file suit and seek emergency relief. *Id.* at 1150. To the extent Plaintiffs might cite HHS's July 31, 2026 State Implementation Tool, or the fact that the Washington State Department of Social and Health Services did not provide Neighborhood House with a list of those individuals who might lose coverage until August 20, 2026, *see* Declaration of Julie Romero [ECF 10] ¶ 14, the fact remains that Neighborhood House was on notice that non-FFP-eligible noncitizens would not be supported by FFP as long ago as July 4, 2025, when OBBBA was enacted, and any doubt that HHS would interpret OBBBA § 71109 based on its plain unambiguous language was dispelled as soon as the SHO letter was issued. Plaintiffs fail to explain their delay.

Aside from their inexplicable delay, Plaintiffs' allegations are too vague to meet their burden to show that HHS's actions implementing OBBBA § 71109 with respect to noncitizen SSI recipients who are not FFP-eligible are likely to cause irreparable harm. Plaintiff Neighborhood House relies on alleged reductions in revenue, presumably from its contract with a municipal Medicaid agency, as well as potential staff layoffs. Declaration of Nathan Buck [ECF 7] ¶¶ 8-9. However, their declarant, Nathan Buck, also indicates that 70 Neighborhood House clients who are not SSI recipients will also lose Medicaid benefits under OBBBA § 71109. Buck Decl. ¶ 5. Although he claims that Neighborhood House "could lose over $450,000 per year in revenue," and that such a loss would "likely" lead it to "lay off at least two to three case managers, reduce program supervision and oversight, and reduce program expenses," he fails to show that his "estimate" is anything more than speculation. *See id.* ¶ 8. For one thing, although he asserts that these potential losses relate only to the 150 Neighborhood House clients who are SSI recipients, he fails to explain how he reached that conclusion or whether or how he excluded the impact of the unrelated loss of the 70 additional Neighborhood House clients from his estimates. *Id.* ¶¶ 5, 8. Nor does he provide a timeline for the harms he alleges, instead merely identifying an estimated



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

annual amount of lost revenue. *Id.* ¶ 8. In contrast, in *City & Cnty. of San Francisco v. USCIS*, 981 F.3d 742, 762 (9th Cir. 2020), cited by Plaintiffs, the court held the asserted harm was not speculative because the plaintiffs had shown that they were already experiencing it. *Id.* at 762.

Buck's further assertions regarding the diversion of funds for "'light touch' support" to the 150 SSI recipients who will not be FFP-eligible as of October 1, 2026, Buck Decl. ¶ 9, also do not clearly show irreparable harm. The support that Buck describes appears to consist of providing information pursuant to Neighborhood House's mission. It is unclear how this qualifies as a diversion that would support standing, much less irreparable harm. *See Ariz. All. for Retired Americans v. Mayes*, 186 F.4th 622, 634 (9th Cir. 2026) (recognizing only a diversion of resources in response to conduct that "directly affected and interfered with' the plaintiff organizations' core activities" would support organizational standing (quoting *FDA v. All. for Hippocratic Medicine*, 602 U.S. 367, 395 (2024))). Moreover, although Buck mentions the possibility of hiring "Resource Navigators" for this purpose, he does not assert that those hires are likely to occur, or on what timeline, even as other staff will apparently be laid off. *See id.* ¶¶ 8-9.

The individual Plaintiff Mariia Matsai's asserted harm primarily relates to her daughter's loss of pay for providing in-home personal care for 158 hours per month. Declaration of Mariia Matsai [ECF 5] ¶¶ 5-6, 11-12.[6] But her assertions regarding why that loss is likely to irreparably harm Matsai herself are, like those of Neighborhood House, too vague to meet Plaintiffs' burden. For example, Matsai makes the conclusory assertion that her daughter will have to stop providing care altogether should she need to seek another source of income. *Id.* ¶ 11. But she fails to establish when her daughter might obtain another job, nor does she explain why the daughter could not provide unpaid care when she is not working or looking for work. This case is distinguishable from

[6] Although Matsai lists a number of medical diagnoses and asserts that she takes "about fifteen prescription medications," including "daily shots," her declaration nowhere asserts that she receives Medicaid coverage for these medications. *Id.* ¶¶ 3-4. Rather, the only benefit she attributes to Medicaid is "paid caregiving" by her daughter. *Id.* ¶ 5. While the declaration later asserts, in conclusory fashion, that she will be "unable to afford" her medications, the lack of clarity regarding how she currently affords them precludes the "clear showing" necessary to establish irreparable harm on this basis. *Cf. Winter*, 555 U.S. at 22.



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

the case Plaintiffs cite, *A.H.R. v. Wash. State Health Care Auth.,* 469 F. Supp. 3d 1018 (W.D. Wash. 2016), where the alleged harm related to the asserted loss of round-the-clock skilled nursing care for infants. *See id.* at 1026. The other case cited by Plaintiffs, *Beltran v. Myers*, 677 F.2d 1317 (9th Cir. 1982), also did not address the potential loss of payment for relatives serving as home health aides, simply concluding without explanation that "enforcement of the California rule may deny [the plaintiffs] needed medical care." *Id.* at 1322.

## III. The Remaining Factors Militate Against Preliminary Relief

The final requirements for obtaining preliminary injunctive relief—the balance of harms and whether the requested injunction will serve the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors also do not favor the request for preliminary relief. As described above, Plaintiffs' challenges to HHS's guidance implementing OBBBA § 71109 are based on a flawed understanding of the relevant tenets of statutory interpretation and are thus doomed to fail. Plaintiffs' requested emergency relief would not abrogate § 71109 itself but instead would simply prohibit HHS and the State of Washington from implementing statutory requirements that will, in any event, go into effect on October 1, 2026. The public interest would not be served by throwing HHS's attempt to implement OBBBA § 71109 into confusion and potentially leading HHS to spend appropriated funds in violation of Congress's mandate. *Cf.* 31 U.S.C. § 1341(a)(1)(A) (prohibiting an "officer or employee of the United States Government" from "mak[ing] or authoriz[ing] an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation"). Rather, the Government's interests would be significantly harmed by such a result. That harm outweighs any harm that Plaintiffs have established.

## IV. Plaintiffs' Requested Relief Is Overbroad Because It Would Sweep Statewide

Plaintiffs also fail in any event to show that they face irreparable harm that would warrant emergency relief extending beyond Plaintiffs themselves. Plaintiffs' Proposed Order does not appear to seek nationwide relief, but it does seek relief "as to all qualified noncitizen SSI recipients in Washington State," regardless of whether those individuals are clients of Plaintiff Neighborhood



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

House. P.Proposed Order at 4. Plaintiffs make no attempt to justify such broad relief. As the Supreme Court reiterated in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), injunctions must be no "broader than necessary to provide complete relief to each plaintiff with standing to sue." *Id.* at 861. The Ninth Circuit has also recognized that "[t]he scope of a preliminary injunction must be 'no broader than necessary to provide complete relief to the named plaintiffs' and members of organizational plaintiffs." *L.A. Press Club v. Noem*, 171 F.4th 1179, 1190 (9th Cir. 2026); *see also Dickinson v. Trump*, 174 F.4th 634, 645–46 (9th Cir. 2026) (concluding district court's injunction was impermissibly overbroad under *CASA* and that "'complete relief' is not a free pass" to provide relief to nonparties).

Here, Plaintiff Neighborhood House does not have "members," and it does not assert representational standing on behalf of such members. At most, any emergency relief should be limited to Plaintiff Matsai and other Neighborhood House clients who receive SSI benefits and are not FFP-eligible under 42 U.S.C. § 1396b(v)(5). The arguments introduced for the first time in Washington State's amicus brief, regarding the alleged need for statewide relief, *see* Wash. Amicus Br. [ECF 18-1] at 10-11, relate only to the impact of the provision on the State itself—a consideration that is irrelevant under *CASA* because the State is not a party.[7] *Cf. CASA*, 606 U.S. at 861. Moreover, Plaintiffs' failure to assert this argument in their opening brief, or even to mention the statutory provision on which the State relies, 42 U.S.C. § 1396a(a)(10)(B), in their Complaint, waives the issue. *Cf. Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712, 719 n.10 (9th Cir. 2003) ("In the absence of exceptional circumstances, which are not present here, we do not address issues raised only in an amicus brief.").[8]

---

[7] Defendants briefly address Washington State's amicus brief in this filing but, pursuant to the Court's Minute Order of September 17, 2026, reserve the right to respond more fully in a separate filing on or before 9:00 a.m. PDT on September 24, 2026.

[8] The bare reference to the State opting into a "'1634' agreement" in a State employee's declaration that Plaintiffs filed with their motion, Declaration of Trinity Wilson [ECF 8] ¶ 11, with no elaboration on what that means or its supposed significance, does not preserve the State's argument. To the contrary, it shows that the State was aware of and participated in Plaintiffs'



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

Any attempt by Plaintiffs to justify statewide relief by arguing that they seek a stay under 5 U.S.C. § 705 rather than a preliminary injunction must also fail. Following post-*CASA* decisions in *NTPSA I*, 150 F.4th at 1027, and *National TPS Alliance v. Noem* ("*NTPSA III*"), 166 F.4th 739 (9th Cir. 2026), courts in this Circuit recognize that a § 705 stay "must be narrowly tailored to remedy the specific harm shown." *Immigr. Ctr. for Women & Child. v. Noem*, 351 F.R.D. 324, 395–96 (C.D. Cal. 2026) (quoting *NTPSA I*, 150 F.4th at 1027). Thus, just as in the case of a preliminary injunction, courts may grant "complete relief *to the plaintiffs before the court*," but any relief beyond that should only be incidental. *Id.* (quoting *NTPSA I*, 150 F.4th at 1028). Plaintiffs' failure to justify statewide relief therefore cannot be excused by the fact that they seek a § 705 stay.

**V. Plaintiffs Should Be Required to Give Security as to Any Injunction or Stay**

Finally, if the Court orders any injunctive relief, it should also order Plaintiffs to post security. Under Federal Rule of Civil Procedure 65(c), the Court may issue preliminary injunctive relief "only if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c). Although other courts have held that Rule 65(c) does not apply to stays under § 705, *e.g., Am. Ass'n of Nurse Pracs. v. McMahon*, 836 F. Supp. 3d 175, 213-14 (D.D.C. 2026), Plaintiffs cite no Ninth Circuit authority to that effect. Here, any distinction between a § 705 stay and a preliminary injunction is particularly unclear, given that the federal funding prohibition that Plaintiffs seek to halt pending a final ruling in this case derives from a statute, not from an agency action. Moreover, if the Court issues a stay that not only prohibits HHS's guidance from taking effect but also prohibits HHS from complying with § 1396b(v)(5), and Defendants ultimately prevail, the Government will have sustained significant financial losses by having to make payments from appropriated funds that were not Congressionally authorized. Plaintiffs should be required to post a bond commensurate with the

---

motion before it was filed, yet chose to omit any discussion of the alleged significance of a "1634 agreement" in that filing and instead delayed asserting its new arguments until shortly before Defendants' response deadline.



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

federal share of anticipated Medicaid coverage that would be provided pursuant to the stay or injunction.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Preliminary Relief should be denied.

Defendants certify that this memorandum contains 7,404 words, in compliance with Local Civil Rules.

Dated: September 18, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

MICHELLE BENNETT
Assistant Director, Federal Programs Branch

/s/ Kathryn L. Wyer
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
1100 L Street, N.W., Room 12014
Tel. (202) 616-8475
kathryn.wyer@usdoj.gov
*Counsel for Defendants*