The Honorable Thomas S. Zilly

**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| NEIGHBORHOOD HOUSE and MARIIA MATSAI,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>Defendants. | CASE NO. 2:26-cv-3006-TSZ<br><br>DEFENDANTS' MEMORANDUM IN OPPOSITION TO INTERVENOR-PLAINTIFF STATE OF WASHINGTON'S MOTION TO INTERVENE<br><br>NOTE ON MOTION CALENDAR: November 6, 2026 |



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

RELEVANT BACKGROUND ..... 2

I. Statutory and Administrative Background ..... 2

II. Procedural History ..... 4

III. The State's Motion to Intervene and Proposed Complaint ..... 5

ARGUMENT ..... 5

I. The State Does Not Meet the Requirements for Intervention as of Right ..... 5

A. The State Fails to Identify a Significant Protectable Interest ..... 5

B. The State Fails to Show Impairment ..... 9

C. Plaintiffs Adequately Represent the State's Asserted Interests, and the State May Continue to Address Legal Issues Through Amicus Filings ..... 9

II. The State Does Not Meet the Requirements for Permissive Intervention ..... 10

CONCLUSION ..... 11




U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

# TABLE OF AUTHORITIES

**Cases**

*A-ONE Com. Ins. Risk Retention Grp., Inc. v. Merino*, No. 2:22-cv-01289, 2022 WL 18142534 (C.D. Cal. Oct. 13, 2022) ................................ 6

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003)................................................................. 7

*Arnesen v. Raimondo*, No. 1:23-cv-145, 2023 WL 6964762 (S.D. Miss. Oct. 20, 2023) ........... 10

*Bush v. Viterna*, 740 F.2d 350 (5th Cir. 1984)................................................................... 10, 11

*California v. Health & Hum. Servs.,* 330 F.R.D. 248 (N.D. Cal. 2019)................................. 9, 11

*Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013 (9th Cir. 2022) .............. 10, 11

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893 (9th Cir. 2011).............. 5, 9

*City of Emeryville v. Robinson*, 621 F.3d 1251 (9th Cir. 2010) .................................................. 8

*Cooper v. Newsom*, 13 F.4th 857 (9th Cir. 2021) ......................................................................... 7

*Frank's Landing Indian Cmty. v. Enlow*, No. 3:25-cv-05929, 2026 WL 1678299 (W.D. Wash. June 10, 2026), .......................... 11

*Haaland v. Brackeen*, 599 U.S. 255 (2023). .................................................................... 6

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216 (3d Cir. 2005) ......................................... 6

*Markel Ins. Co. v. Secret Harbor*, No. 23-cv-158, 2026 WL 3083903 (W.D. Wash. Oct. 15, 2026)................................. 7, 9

*Mrs. W. v. Tirozzi*, 124 F.R.D. 42 (D. Conn. 1989)................................................................... 10

*Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308 (11th Cir. 2005) ....................... 6

*NFIB v. Sebelius*, 567 U.S. 519 (2012).......................................................................................8-9

*Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006).......................................................................... 5

*Sweet v. Cardona*, 121 F.4th 32 (9th Cir. 2024), *cert. denied sub nom. Everglades Coll., Inc. v. McMahon*, 146 S. Ct. 1658 (2026) ..... 5, 6

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002)........................................... 10



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

*Washington v. Trump*, 145 F.4th 1013 (9th Cir. 2025), *cert. denied*, 146 S. Ct. 2809 (2026) .......... 6

*Washington v. U.S. Dep't of Transportation*, No. 2:25-cv-848, 2025 WL 3023041 (W.D. Wash. Oct. 29, 2025).......... 11

*Watersheds Project v. Haaland*, 22 F.4th 828 (9th Cir. 2022) .......... 9

**<u>Statutes</u>**

Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), Pub. L. No. 104-193, 110 Stat. 2105 (1996).......... 3

One Big Beautiful Bill Act (OBBBA), Pub. L. No. 119-21, 139 Stat. 72 (2025) .......... *passim*

Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706.......... 4, 5

8 U.S.C. §§ 1611-1615 .......... 3

8 U.S.C. § 1612.......... 3, 4, 8

Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*.......... 2

42 U.S.C. § 1396-1 .......... 2

42 U.S.C. § 1396a.......... 3, 4, 8

42 U.S.C. § 1396b.......... *passim*

**<u>Regulations</u>**

42 C.F.R. § 430.12 .......... 3



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

## INTRODUCTION

The State of Washington (the "State") seeks to intervene as a plaintiff in this case, but its motion is meritless. Intervention serves no purpose here and should be denied. The State has already participated as amicus curiae in this case, which raises purely legal issues of statutory interpretation in a challenge to the U.S. Department of Health and Human Services (HHS)'s implementation of the One Big Beautiful Bill Act (OBBBA), Pub. L. No. 119-21, § 71109, 139 Stat. 72 (2025) (codified at 42 U.S.C. § 1396b(v)(5)). The State's proposed complaint presents the same claims and seeks the same relief as Plaintiffs and fails to identify any material dispute of fact that the State could usefully address as a party.

The State fails to meet the requirements for intervention as of right under Rule 24(a)(2). The State has no protectable interest in challenging HHS's interpretation of OBBBA § 71109 as relieving the State of its prior obligations to pay for Medicaid coverage for certain noncitizen recipients of supplemental security income ("SSI"). The State relies on attenuated and speculative downstream effects, including an evidently far-fetched possibility that the state legislature will fully fund health coverage for these individuals. But it ignores that the direct impact of HHS's implementation of OBBBA § 71109 is to save the State from further expenditures for certain noncitizen SSI recipients. The State's further suggestion that HHS might penalize it for acting consistent with HHS's interpretation of § 71109 is absurd. HHS has already made clear its view that states need not fully fund health coverage for these individuals, nor will any Medicaid-related obligations be enforced against states who, consistent with HHS's interpretation, ensure that they no longer claim matching funds from HHS for coverage states themselves also need not provide. States are thus free to cease providing coverage for these individuals without risk of any federal enforcement action. Rather than advancing its own interests, the State here appears to assert the interests of the noncitizen SSI recipients who stand to lose coverage, but it is black letter law that the State cannot assert its residents' interests as parens patriae against the Federal Government.

The State also fails to meet its burden to show Plaintiffs' representation is inadequate.



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

Because the claims in this case involve purely legal issues of statutory interpretation, there is no dispute of fact that the State could usefully address. To the extent the State wishes to assert its own legal arguments, it may continue to do so as amicus curiae. Intervention is unnecessary to protect any unique interests of the State.

For similar reasons, the State also fails to justify permissive intervention under Rule 24(b)(1)(B), and the Court should apply its broad discretion to deny such relief. Courts may consider judicial economy, and specifically whether allowing intervention would save the would-be intervenor from filing a separate suit to obtain a different scope of relief. Here, such considerations again weigh against granting intervention. The State need not file suit separately because its claims are identical to Plaintiffs' and seek the same relief. And the State's ability to participate as an amicus further obviates the need for any separate action. Indeed, the Court already granted the State's motion for leave to participate as amicus and its preliminary injunction granted statewide relief. The State's motion to intervene should be denied.

## RELEVANT BACKGROUND

### I. Statutory and Administrative Background

Defendants incorporate herein the more comprehensive background set forth in their opposition to Plaintiffs' Motion for Preliminary Relief, Def. Opp. at 3-7 [ECF 21 at 8-12]. In brief, this case concerns the cooperative federal-state Medicaid program established in Title XIX of the Social Security Act. Under Medicaid, states provide coverage for certain medical assistance to low-income "families with dependent children" and "aged, blind, or disabled individuals," 42 U.S.C. § 1396-1, and the Federal Government provides federal matching funds to states for a portion of their expenses.

OBBBA § 71109 revised 42 U.S.C. § 1396b, the statute that governs HHS's use of appropriated funds for federal financial participation ("FFP") (Medicaid federal matching funds), by adding paragraph (v)(5). The new provision states that, "[n]otwithstanding the preceding paragraphs of" § 1396b(v), "in no event shall payment be made to a State under this section for medical assistance furnished to an individual unless such individual is" (1) a U.S. citizen or



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

national; (2) a lawful permanent resident, excluding "alien visitors, tourists, diplomats, and students who enter the United States temporarily with no intention of abandoning their residence in a foreign country"; (3) a Cuban or Haitian entrant; or (4) a Compact of Free Association migrant. 42 U.S.C. § 1396b(v)(5). The provision does not restrict FFP for care and services necessary to treat an emergency medical condition (covered in § 1396b(v)(2)) or for health coverage that states have elected to provide to certain children and pregnant women under section 214 of the Children's Health Insurance Program Reauthorization Act of 2009 (CHIPRA) (covered in § 1396b(v)(4)). *Id.* The plain terms of this provision make clear that HHS can provide FFP only for the groups affirmatively identified in § 1396b(v)(5).

Meanwhile, other statutory provisions are directed to states rather than to HHS. Those include 42 U.S.C. § 1396a, which sets forth states' obligations under the state Medicaid plans that they voluntarily adopt when participating in Medicaid. States must agree to amend their state plans "whenever necessary to reflect . . . [c]hanges in Federal law, regulations, policy interpretations, or court decisions." 42 C.F.R. § 430.12(c)(1)(i).

Congress also separately addressed the provision of federal benefits to noncitizens in the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA), Pub. L. No. 104-193, 110 Stat. 2015 (codified as amended in relevant part at 8 U.S.C. §§ 1611-1615). Section 1612(b) specifically authorizes states "to determine the eligibility" of qualified aliens "for any designated Federal program," including Medicaid, *see* 8 U.S.C. § 1612(b)(1), (3)(C), but limits that authority in the exceptions specified in § 1612(b)(2), including where an alien is receiving SSI benefits. *See id.* § 1612(b)(2)(F). In that circumstance, states are to deem such aliens "eligible for medical assistance under a [Medicaid] State plan . . . under the same terms and conditions that apply to other [Medicaid] recipients." *Id.*[1]

---

[1] Title XIX defines "medical assistance" to mean any of the following: either "payment of part or all of the cost of [certain] care and services," or "the care and services themselves," or "both." 42 U.S.C. § 1396b(a). Its meaning in any specific provision thus necessarily depends on context.



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

On April 8, 2026, HHS issued a letter to State Health Officials ("SHO Letter") explaining how HHS would implement the changes to FFP set forth in OBBBA § 71109 and the corresponding steps states should take to comply with those changes. SHO #26-001 [Compl. app.A, ECF 1 at 25]. On July 31, 2026, HHS issued a State Implementation Tool providing further guidance. Compl. ¶ 43 & app.B [ECF 1 at 60]. These documents told states that FFP will no longer be available for nonemergency medical assistance provided to noncitizen "asylees, refugees, parolees, or victims of trafficking" unless those individuals also fall within one of the FFP-eligible noncitizen categories identified in 42 U.S.C. § 1396b(v)(5)(B)(i)-(iv) or are lawfully residing children or pregnant women in States that have elected the CHIPRA 214 option. SHO Letter at 4-5. HHS also explained that the decision whether to fully fund such coverage is entirely up to states. *Id.* at 7. HHS made clear that states would not be obligated to provide such coverage, notwithstanding the restriction in 8 U.S.C. § 1612(b)(2)(F) on states' authority to deem noncitizen SSI recipients ineligible for medical assistance, or the language in 42 U.S.C. § 1396a(a)(10)(A) describing the scope of populations for whom a state plan should ensure medical assistance is provided. SHO Letter at 6-7. In support of that conclusion, the SHO Letter cites Supreme Court authority recognizing HHS's limited authority to require states to provide "state-only funded health coverage," particularly absent a clear and unambiguous congressional directive that they do so. *Id.* at 7 & nn.34-35. Both § 1612(b)(2)(F) and § 1396a(a)(10)(A) were enacted in contemplation that the medical assistance at issue would be provided pursuant to the Medicaid program, whose "cornerstone" is joint federal-state financial contributions, and nothing in those provisions or in § 1396b(v)(5) clearly or unambiguously demonstrates Congress's intent that states fully fund coverage if Congress withdrew HHS's authority to provide FFP for such coverage. *Id.*

## II. Procedural History

On August 25, 2026, Neighborhood House—a non-profit organization that helps coordinate long-term care and other support services for Medicaid beneficiaries—and one of its clients ("Plaintiffs") brought suit under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, challenging the SHO Letter and State Implementation Tool as contrary to law and arbitrary



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

and capricious and seeking their vacatur. *See* Compl. ¶¶ 66-88 & Prayer for Relief. On August 28, 2026, Plaintiffs moved for preliminary relief, seeking to stay the SHO Letter and State Implementation Tool on a statewide basis. ECF Nos. 4, 4-1. On the State's motion, and with both parties' consent, ECF 18, the Court granted the State leave to file an amicus curiae brief in support of Plaintiffs' motion and allowed the State to participate in oral argument. *See* Order of Sept. 17, 2026. On September 30, 2026, the Court granted a statewide preliminary injunction. Order of Sept. 30, 2026 [ECF 28].

### III. The State's Motion to Intervene and Proposed Complaint

The State moved to intervene on October 16, 2026, attaching its Proposed Complaint as Exhibit A. ECF Nos. 30 & 30-1. Like Plaintiffs' complaint, the Proposed Complaint challenges the SHO Letter and State Implementation Tool as contrary to law and arbitrary and capricious under the APA and seeks their vacatur. Proposed Compl. ¶¶ 69-89 & Prayer for Relief.

## ARGUMENT

### I. The State Does Not Meet the Requirements for Intervention as of Right

An applicant seeking to intervene as of right under Rule 24(a)(2) must establish that (1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011); *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006). While Defendants do not contest timeliness, the State fails to establish the other three requirements.

#### A. The State Fails to Identify a Significant Protectable Interest

"[A] proposed intervenor has a significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims." *Sweet v. Cardona*, 121 F.4th 32, 48 (9th Cir. 2024) (internal quotation omitted), *cert. denied sub nom. Everglades Coll., Inc. v. McMahon*, 146 S. Ct.



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

1658 (2026). "[I]n general, a mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene." *A-ONE Com. Ins. Risk Retention Grp., Inc. v. Merino*, No. 2:22-cv-01289, 2022 WL 18142534, at *1 (C.D. Cal. Oct. 13, 2022) (quoting *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 221 (3d Cir. 2005)). Rather, a "significant protectable interest" for purposes of Rule 24(a)(2) is "one which the substantive law recognizes as belonging to or being owned by the applicant"—in other words, "an interest that derives from a legal right." *Id.* (quoting *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005)).

The State identifies no significant protectable interest. It illogically suggests that HHS's interpretation of OBBBA § 71109 to *relieve* states of any obligation to fund health coverage for FFP-ineligible noncitizen SSI recipients—either in part or in full—somehow qualifies. Essentially, the State seeks to compel HHS to compel the State to provide coverage that, in HHS's view, the State need not provide. The State cites no authority for the suggestion that a state has a legally protected interest in imposing obligations on itself that the Federal Government does not seek to impose. Rather, the State's true interest here appears to be as parens patriae on behalf of a subset of its residents. But states are prohibited from asserting such an interest against the Federal Government. *Cf. Haaland v. Brackeen*, 599 U.S. 255, 295 (2023).

The State emphasizes its loss of FFP, but this is not a situation where the State can bypass the prohibition on acting as parens patriae against the Federal Government by showing "injuries to [its] own pocketbook[]." *Washington v. Trump*, 145 F.4th 1013, 1024–25 (9th Cir. 2025), *cert. denied*, 146 S. Ct. 2809 (2026). For one thing, to intervene as of right, any such injuries would have to implicate an interest "protected under some law." *Sweet*, 121 F.4th at 48. But the State has no protectable interest in FFP if the State is not investing its own share of funds to pay for Medicaid coverage. The State does not suggest that it intends to profit from the FFP it receives. To the contrary, any FFP that states receive serves to reimburse them for some (but not all) of their expenses in providing coverage to individuals under their state plans. If, as happened here, HHS determines that Congress no longer authorizes FFP for certain coverage but simultaneously determines that states need not provide that coverage either, states need not incur the expenses of



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

coverage in the first place, so they have no protectable interest in reimbursement.

The State attempts to deflect from this clear conclusion by focusing instead on tangential or speculative downstream impacts, but its efforts are misguided.

The State first suggests that the SHO Letter and State Implementation Tool "directly regulate and place obligations on" the State. State Mem. at 7. But the only "obligation" the State identifies is to ensure it is not claiming FFP for certain individuals' non-emergency medical assistance, which the State is also not required to cover at all. *See id.* The State concedes that it has already notified these individuals that they will no longer be covered by Medicaid. *See id.* Again, the State fails to establish that reducing the number of people for whom it provides full Medicaid coverage will have a direct negative economic impact on the State itself. The State suggests that individuals who lose Medicaid coverage may "need emergency medical care, burdening the state's already strained safety-net health care system." *Id.* Such downstream impacts are too "remote and speculative" to support intervention. *Cooper v. Newsom*, 13 F.4th 857, 867 (9th Cir. 2021). Moreover, of particular significance for an intervention as of right analysis, any interest that the State might have in limiting its residents' use of emergency medical care is not "legally protected." *See Markel Ins. Co. v. Secret Harbor*, No. 23-cv-158, 2026 WL 3083903, at *2 (W.D. Wash. Oct. 15, 2026) (recognizing that "pure economic expectancy is not a legally protected interest for purposes of intervention" (citing *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003)).

The State next suggests that it would incur additional expenses if the state legislature were to "allocate additional funds" that allowed the State to fully fund health coverage for such individuals. State Mem. at 7. However, the State concedes that, "[a]s of the filing of" its motion to intervene, the state legislature has not appropriated such funds. *Id.* (citing Decl. of Trinity Wilson ¶ 24 [ECF 8]). The prospect that it might ever appropriate such funds is wholly speculative. *Cf. Cooper*, 13 F.4th at 867. Moreover, any interest that the State might have in the possibility that the legislature might, at some unspecified time in the future, appropriate funds for health coverage that HHS does not require the State to provide cannot plausibly be deemed an interest that is "legally protected" or connected to the subject matter of this case. This is not a situation where the state



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

legislature's potential appropriation is in any way "contingent upon the outcome of the litigation." *Cf. City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010). Rather, it appears that, *regardless* of this case or of the SHO Letter, the legislature has not appropriated funds, and any prospect of it doing so is wholly speculative.

The only other putative interest that the State identifies is in its "ability to administer its Medicaid program in compliance with federal law." State Mem. at 8. The State suggests that if it fails to provide Medicaid coverage for noncitizen SSI recipients who, under HHS's interpretation of OBBBA § 71109, are not FFP-eligible, HHS might initiate enforcement action against it. *Id.* (citing *NFIB v. Sebelius*, 567 U.S. 519, 581 (2012)). The State's purported fear that HHS would penalize it for acting *in accord with* the SHO Letter or State Implementation Tool, which set forth HHS's understanding of § 71109, defies credulity. The statutory provisions that the State cites, including 8 U.S.C. § 1612(b)(2)(F) and 42 U.S.C. § 1396a(a)(10)(B), relate to the State's obligations under its State plan, but HHS is the entity that enforces the terms of state plans, and the SHO Letter makes clear that HHS does not consider those statutes or any related regulations to impose obligations on states with respect to individuals for whom states cannot receive FFP. Indeed, HHS has directed states to amend their state plans to remove any doubt that they have any such obligations. SHO Letter at 20- 21 [ECF 1 at 44-45] ("CMS expects all states . . . to update their state plan to be consistent with [42 U.S.C. § 1396b(v)(5)]"). Those amendments are retroactively effective as of October 1, 2026, negating any possibility that any state might run afoul of any state plan obligation by acting in accord with the SHO Letter's understanding of OBBBA § 71109. *See* SHO Letter at 20. The State's suggestion that HHS will withhold FFP for other medical assistance if the State complies with HHS's directions to no longer seek FFP for noncitizen SSI recipients who are not FFP-eligible is entirely implausible.

Moreover, HHS's conclusion that states are not obligated to fully fund coverage for which FFP is not available is consistent with *NFIB*, where the Court invalidated the Affordable Care Act (ACA) provision that conditioned states' Medicaid participation on their implementation of the ACA's Medicaid expansion, with a plurality concluding it was impermissibly coercive. *NFIB*, 567



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

U.S. at 581 (opinion of C.J. Roberts). If anything, HHS here sought to avoid any such coercion by recognizing states are *not* required to fully fund the coverage at issue. Nor is the State prohibited from voluntarily choosing to fully fund health coverage for such individuals (however unlikely that prospect is, given the legislature's failure to appropriate funding). The State fails to establish any legally protected interest on this basis. It therefore may not intervene as of right, and the Court need not consider the other factors. *Markel Ins. Co.,* 2026 WL 3083903, at *2

**B. The State Fails to Show Impairment**

Should the Court proceed with the analysis, the State also fails to show that the disposition of this case might impair or impede the State's ability to protect its asserted interests. For the same reasons explained above, if Defendants prevail, HHS will continue to maintain that the State need not provide coverage to FFP-ineligible noncitizen SSI recipients. If Plaintiffs prevail, the State will be required to provide Medicaid coverage to those individuals, in accord with its stated wishes. Either way, no legally protected interest asserted by the State would be adversely affected.

**C. Plaintiffs Adequately Represent the State's Asserted Interests, and the State May Continue to Address Legal Issues Through Amicus Filings**

The State fails to establish the final requirement for intervention as of right—that Plaintiffs' representation be deemed inadequate. The State concedes that its interests "align with" Plaintiffs'. State Mem. at 9. Indeed, unlike *California v. Health & Hum. Servs.,* 330 F.R.D. 248, 254 (N.D. Cal. 2019), both plaintiffs and the State seek statewide relief, which the Court's preliminary injunction already granted. *See* Order of Sept. 30, 2026, at 23. In that circumstance, where plaintiffs and a would-be intervenor "share the same ultimate objective, a presumption of adequacy of representation arises," which the proposed intervenor can only rebut with a "'compelling showing' of inadequacy of representation." *Citizens for Balanced Use,* 647 F.3d at 898; *accord Watersheds Project v. Haaland*, 22 F.4th 828, 841 (9th Cir. 2022).

The State fails to meet that burden. It points to arguments made in its amicus brief that Plaintiffs did not make—namely, that the SHO Letter purportedly puts the State in legal jeopardy from an HHS enforcement action, and that the State faces economic harm. State Mem. at 9.



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

However, as explained above, those arguments are meritless and irrelevant. Moreover, the alleged impact on the State is not a factor relevant to this case, which presents a purely legal issue concerning the statutory interpretation of 42 U.S.C. § 1396b(v)(5), in conjunction with other allegedly conflicting statutory provisions. There are no factual disputes that the State would need to address as a party. The State thus cannot show inadequate representation on that basis.

The State's amicus participation itself weighs against intervention because it further shows the State's interests are already adequately represented. Courts recognize that "[w]hen a potential intervenor is adequately represented by an existing party and will not present any new legal issue, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention." *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) (internal quotation omitted); *accord Mrs. W. v. Tirozzi*, 124 F.R.D. 42, 45 (D. Conn. 1989) (denying intervention where applicant "can effectively advocate" his position "by way of amicus curiae brief, where appropriate"); *Arnesen v. Raimondo*, No. 1:23-cv-145, 2023 WL 6964762, at *3 (S.D. Miss. Oct. 20, 2023) (denying intervention "given the relatively narrow scope of the legal question before the Court," and the fact that the proposed intervenors had already been granted amicus participation). For all these reasons, intervention as of right is inappropriate here and should be denied.

## II. The State Does Not Meet the Requirements for Permissive Intervention

Permissive intervention under Rule 24(b)(1)(B) should also be denied. A court "may" grant permissive intervention where there are "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim . . . and the main action, have a question of law . . . in common." *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002). Even where those three requirements are satisfied, the court may deny intervention. *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022). In exercising its discretion, a court may consider the following nonexclusive factors:

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

> merits of the case. The court may also consider whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Id.*

These discretionary factors, some of which overlap with Rule 24(a) factors discussed above, weigh against intervention. The State lacks standing for the same reasons it lacks a legally protected interest. Although it may piggyback off Plaintiffs' standing to raise identical claims, *see Frank's Landing Indian Cmty. v. Enlow*, No. 3:25-cv-05929, 2026 WL 1678299, at *6 (W.D. Wash. June 10, 2026), there is simply no good reason for the State to be a party where the issues are purely legal. The State's participation as a party would contribute nothing "to full development of the underlying factual issues"—of which there are none. *Callahan*, 42 F.4th at 1022. Nor would it contribute "to the just and equitable adjudication of the legal questions presented," *id.*, when the State can fully present its legal arguments as amicus. *See Bush*, 740 F.2d at 359.

The State cites *California* and *Washington v. U.S. Dep't of Transportation*, No. 2:25-cv-848, 2025 WL 3023041 (W.D. Wash. Oct. 29, 2025), but both cases are distinguishable because they largely relied on notions of judicial economy where the proposed intervenor sought a different scope of relief. *See California*, 330 F.R.D at 255 (allowing Oregon to intervene "will promote judicial economy and spare the parties from needing to litigate a similar case in another district"); *Washington*, 2025 WL 3023041, at *12 (emphasizing judicial economy where intervenors sought nationwide relief). Here, neither scope of relief nor judicial economy weighs in favor of permissive intervention because Plaintiffs seek the same statewide relief, and the State may participate here as amicus. For all these reasons, permissive intervention should be denied.

## **CONCLUSION**

For the foregoing reasons, the State's Motion to Intervene should be denied.



U.S. Department of Justice
1100 L Street, NW, Room 12014
Washington, D.C. 20530
(202) 616-8475

Dated: October 30, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

MICHELLE BENNETT
Assistant Director, Federal Programs Branch

/s/ Kathryn L. Wyer
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
1100 L Street, N.W., Room 12014
Tel. (202) 616-8475
kathryn.wyer@usdoj.gov
*Counsel for Defendants*

Defendants certify that this memorandum contains 4195 words, in compliance with Local Civil Rules.