UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NEIGHBORHOOD HOUSE; and MARIIA MATSAI,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; and ROBERT F. KENNEDY, JR.,<br><br>Defendants. | C26-3006 TSZ<br><br>MINUTE ORDER |

The following Minute Order is made by direction of the Court, the Honorable Thomas S. Zilly, United States District Judge:

(1) Before the Court is the State of Washington's motion, docket no. 30, to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a)(2) or alternatively to permissively intervene pursuant to Federal Rule of Civil Procedure 24(b)(1)(B). To intervene in this action, the State of Washington must establish Article III standing because it seeks broader relief than the original plaintiffs.[1] See *Washington v. U.S. Food & Drug Admin.*, 108 F.4th 1163, 1171 (9th Cir. 2024); *Cal. Dep't of Toxic Substances*

[1] Plaintiffs are (i) Neighborhood House, a tax-exempt non-profit service organization that provides case management for individuals who qualify for Medicaid daily-living assistance and receive such services in their home or a community-base setting, and (ii) Mariia Matsai, a noncitizen who receives supplemental security income ("SSI") benefits and 158 hours per month of paid caregiving services through the Medicaid program. See Order at 4 & 20 (docket no. 28); see also Compl. at ¶¶ 12–13 (docket no. 1). Both plaintiffs are located in King County and, as a result, the potential remedies they may request in this action might be geographically limited. See Compl. at ¶¶ 12–13 (docket no. 1). In contrast, the State of Washington seeks statewide relief. See Prop. Compl. (docket no. 30-1).

Control v. Jim Dobbas, Inc., 54 F.4th 1078, 1085 (9th Cir. 2022). At issue in this litigation is federal Medicaid funding, also known as Federal Financial Participation ("FFP"), relating to an estimated 1,258 noncitizens in Washington who receive SSI benefits; roughly 150 of them are clients of plaintiff Neighborhood House. See Order at 6 & 20 (docket no. 28). Like the original plaintiffs, the State of Washington contends that defendants United States Department of Health and Human Services ("HHS") and HHS Secretary Robert F. Kennedy, Jr. have misinterpreted Public Law No. 119-21, also known as "HR 1" or the One Big Beautiful Bill Act, as prohibiting FFP with respect to medical assistance furnished to certain noncitizens[2] who are SSI recipients. See Prop. Compl. at ¶¶ 3 & 6–8 (docket no. 30-1). In addition to the loss of Medicaid benefits and the direct effects thereof, which were pleaded by the original plaintiffs, see Compl. at ¶¶ 62–65 (docket no. 1), the State of Washington has identified the following harms resulting or likely to result from the allegedly erroneous termination of federal Medicaid funding: (i) operational costs incurred in sending notices about HHS's HR 1 guidance, processing requests for hearings about changes in Medicaid benefits, and redetermining Medicaid eligibility, see Prop. Compl. at ¶ 62 (docket no. 30-1); (ii) increased strain on the "safety-net" and public (university) hospitals providing uncompensated care, which would result from the disruption of "preventative care, ongoing treatment, prescription access, and crucial support services" and consequential resort to expensive emergency medical care, id. at ¶¶ 5 & 61; and (iii) interference with the State of Washington's ability to comply with federal and state law, id. at ¶¶ 64–65. The State of Washington seeks declaratory and injunctive relief under the Administrative Procedure Act. Id. at 20–21, ¶¶ a–d. The Court concludes that the State of Washington has demonstrated Article III standing by showing that it has "suffered a concrete 'injury in fact' that is traceable to the defendant[s] and is likely redressable by judicial relief." See Washington, 108 F.4th at 1172; see also Jim Dobbas, Inc., 54 F.4th at 1085 (indicating that entities attempting to intervene as defendants were required to establish inter alia that the plaintiff "threatens them with 'injury in fact . . . that is concrete and actual or imminent, not conjectural or hypothetical'" (alteration in original, quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998))). The traceable and redressable concrete injuries outlined above also establish the "significant protectable interest" and other elements necessary for the State of Washington to intervene as of right. See Prete v. Bradbury, 438 F.3d 949, 954 (9th Cir. 2006).[3] Given the nature of the State of Washington's "significant protectable

---

[2] The "qualified aliens" from whom HHS and its Secretary purport to strip away Medicaid benefits are noncitizens who (i) were granted asylum, (ii) were admitted as refugees, or (iii) were paroled for urgent humanitarian reasons for at least one year. See Order at 2–3 (citing Ex. A to Kas Decl. (docket no. 6 at 10–11) and 8 U.S.C. §§ 1612(b)(2)(F) & 1641(b)).

[3] An applicant for intervention as of right must establish that (i) the application is timely, (ii) the applicant has a "significant protectable interest" relating to the property or transaction that is the subject of the action, (iii) the disposition of the action might, as a practical matter, impair or

interest," disposition of this action without its participation might impair or impede its ability to protect its interest, and the existing plaintiffs are unlikely to adequately represent the State of Washington's interest because they do not share a similar enough stake in the outcome. *See* Fed. R. Civ. P. 24(a)(2). The State of Washington's motion to intervene as of right is therefore GRANTED. The requirements for permissive intervention are likewise satisfied. *See United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002);[4] *see also Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).[5] The State of Washington poses questions of law and fact in common with the claims brought by the original plaintiffs, *see* Fed. R. Civ. P. 24(b)(1)(B), and the *Spangler* factors favor permissive intervention. Thus, the State of Washington's request to permissively intervene is also GRANTED.

(2) Within seven (7) days of the date of this Minute Order, the State of Washington shall electronically file its complaint-in-intervention. Any responsive pleading or motion shall be filed within twenty-one (21) days after the complaint-in-intervention is filed. The caption and docket for this matter shall forthwith reflect the State of Washington's status as intervenor or plaintiff-in-intervention.

---

impede the applicant's ability to protect its interest, and (iv) the existing parties might not adequately represent the applicant's interest. *Prete*, 438 F.3d at 954. The party seeking to intervene bears the burden of showing that these requirements are met, but this four-part standard is "broadly interpreted in favor of intervention." *Id.* In opposing the State of Washington's motion to intervene, HHS and Secretary Kennedy do not dispute that the application for intervention is timely, having been filed early in the litigation, before defendants answered the original complaint. *See* Resp. at 5 (docket no. 36 at 9).

[4] "[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *City of Los Angeles*, 288 F.3d at 403.

[5] In deciding whether to exercise its discretion to allow permissive intervention, a court may consider the following nonexclusive factors:

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case. . . . whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Spangler*, 552 F.2d at 1329.

(3) Within twenty-eight (28) days of the date of this Minute Order, counsel shall meet and confer and file a Joint Status Report addressing the following topics: (i) whether additional parties will need to be joined and, if so, a proposed deadline for filing any related motion; (ii) whether the parties anticipate engaging in discovery and, if so, on what subjects and timing; (iii) whether the parties have any recommendation for simplifying the case, and whether a deadline for alternative dispute resolution should be set; (iv) when the parties expect to be prepared for (a) dispositive motion practice, and (b) trial, which will presumably be non-jury; (v) how long a trial is likely to last, and whether trial counsel have any scheduling conflicts; and (vi) whether any party wishes to have a scheduling conference before the Court enters a scheduling order in this case.

(4) The Clerk is directed to send a copy of this Minute Order to all counsel of record.

Dated this 13th day of November, 2026.

Joshua C. Lewis
Clerk

s/Grant Cogswell
Deputy Clerk