Hon. Thomas S. Zilly

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| NEIGHBORHOOD HOUSE and MARIIA MATSAI,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HEALTH and HUMAN SERVICES and ROBERT F. KENNEDY, JR.,<br><br>Defendants. | CASE NO. 2:26-cv-03006-TSZ<br><br>PLAINTIFF MATSAI AND PLAINTIFF NEIGHBORHOOD HOUSE'S MOTION FOR SUMMARY JUDGMENT<br><br>NOTE ON MOTION CALENDAR: December 21, 2026 |

## INTRODUCTION

The nation's financially neediest and most medically fragile lawfully present noncitizens have lost their Medicaid health coverage because the U.S. Department of Health and Human Services (HHS) misread a recent budget reconciliation bill, H.R. 1, to impliedly repeal existing law mandating that people who receive Supplemental Security Income (SSI) are eligible for Medicaid healthcare benefits. Aged, blind, and/or disabled asylees, refugees, parolees, and victims of abuse or trafficking who receive SSI are a discrete group of noncitizens entitled under the Medicaid Act and the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA) who receive both SSI and Medicaid. The Medicaid Act provides for Medicaid eligibility and enrollment for SSI recipients. *See* 42 U.S.C. §1396a(a)(10)(A)(i); 42 U.S.C. §



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

1383c(a). PRWORA requires that noncitizen SSI recipients "**shall be eligible**" for Medicaid "**under the same terms and conditions**" as others receiving SSI. 8 U.S.C. § 1612(b)(2)(F).

HHS baselessly concluded that, effective October 1, 2026, Section 71109 of H.R. 1[1] requires noncitizen SSI recipients to satisfy additional immigration criteria to continue receiving Medicaid coverage of nonemergency healthcare services and issued directives to states in April and July to act according to this erroneous interpretation. Dkt. 40 (HHS's Administrative Record, including its April 8, 2026, State Health Official Letter (hereafter "SHO Letter"), "State Implementation Tool," and "Technical Guide"). H.R. 1 neither repealed nor amended the obligations established by the Medicaid Act and PRWORA that HHS provide Medicaid to noncitizen SSI recipients. Despite H.R. 1 containing no statutory changes to eliminate Medicaid benefits from this uniquely-situated group of noncitizens, HHS's guidance directed that all noncitizens, including SSI recipients, are no longer qualified for Medicaid unless they are legal permanent residents (LPRs), Cuban or Haitian entrants, or residents of nations in the Compact of Free Association (COFA). HHS's final agency action disregards unrepealed legal protections for eligible noncitizen SSI recipients and eliminates their entitlement to public benefits without authorization from Congress.

Plaintiffs seek summary judgment under 5 U.S.C. § 706 and 28 U.S.C. § 2201 granting the following relief: 1) a declaratory judgment that HHS' SHO Letter, Implementation Tool, and Technical Guide are arbitrary, capricious, and contrary to law under the Administrative Procedures Act, 5 U.S.C. § 706 (APA), because they eliminate Medicaid benefits for vulnerable noncitizen SSI recipients guaranteed those benefits by law; and 2) an order vacating HHS's SHO Letter, Implementation Tool, and Technical Guide instructing states to terminate Federal Financial

[1] Pub. L. No. 119-21, § 71109, 139 Stat. 72, 297 (2025) (codified at 42 U.S.C. § 1396b(v)(5)). The Administration refers to H.R. 1 as the "One Big Beautiful Bill Act."



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

Participation (FFP)[2] for SSI recipients who are not citizens, LPRs, Cuban or Haitian entrants, or COFA residents, 5 U.S.C. § 706.

Vacatur and declaratory judgment will redress the injury that HHS's action would inflict on Neighborhood House, a nonprofit organization whose Medicaid funding to serve humanitarian immigrants would be cut, and Neighborhood House's client, Mariia Matsai, a Ukrainian parolee receiving SSI whose Medicaid would be terminated under HHS's guidance. With no genuine dispute of any material facts to preclude legal review of HHS's guidance, this Court should grant Plaintiffs' motion.

## BACKGROUND

### I. Statutory Scheme

#### A. The Medicaid Act establishes Medicaid eligibility for SSI recipients.

"Enacted in 1965, Medicaid offers federal funding to States to assist pregnant women, children, needy families, the blind, the elderly, and the disabled in obtaining medical care." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 541 (2012); *see also Smith v. Concannon*, 951 F.2d 178, 180 (9th Cir. 1991), *as amended on denial of reh'g* (Dec. 9, 1991) (Under "42 U.S.C. §1396 *et seq*., federal financial assistance is available to states electing to furnish medical services to certain needy individuals"). The Medicaid Act, 42 U.S.C. §1396a, requires states participating in the Medicaid program to administer an approved "state plan" for providing "medical assistance" to "categories of individuals eligible for benefits." *Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 650–51 (2003). The Act defines "medical assistance" as "payment of part or all of the cost" of various health "care and services or the care and services themselves, or both" to eligible individuals. 42 U.S.C. §1396d(a).

[2] FFP is the federal government's share of a state's expenditures under the Medicaid program. 42 C.F.R. § 400.203.



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

States and the federal government share responsibility for funding Medicaid. HHS must pay each participating state the "Federal medical assistance percentage" of "the total amount expended . . . as medical assistance under the State plan." 42 U.S.C. § § 1396b(a)(1), 1396d(b). Under 42 U.S.C. §1396a(a)(10)(A), medical assistance must be provided for categorically needy groups, which includes aged, blind, or disabled individuals. Unless a state has exercised what is called a "209(b)" option (named after that section of the Social Security Act) to use more restrictive criteria than are used by the SSI program to define age, income, and disability eligibility, this categorically needy group includes individuals "who qualify for supplemental security income (SSI) benefits." *Newton-Nations v. Betlach*, 660 F.3d 370, 374 (9th Cir. 2011) (internal citations omitted); 42 U.S.C. §1396a(f) (creating "209(b)" option); 42 C.F.R. § 435.121.[3] To qualify for SSI, individuals must be over the age of sixty-five, be blind, or have a long-term disability that prevents them from engaging in "substantial gainful activity;" they must also meet very low-income and resource limitations. 42 U.S.C. §§ 1382(a), 1382c(a)(3).

States may elect to enter a "1634 agreement" (named for Section 1634 of the Social Security Act) with the Social Security Administration (SSA) to simultaneously determine Medicaid and SSI eligibility pursuant to a single application. 42 U.S.C. § 1383c(a); Dkt. 6 ¶¶ 5-6, Exhs. C, D. In states with 1634 agreements, individuals are entitled to Medicaid "beginning with the day he/she becomes eligible for SSI payments." *Id.* ¶ 7, Exh. E; *see also* 42 C.F.R. § 435.909(a)(1) (providing for "automatic enrollment" without requiring a separate application).

**B. PRWORA requires equal eligibility for citizen and noncitizen SSI recipients.**

In 1996, Congress passed PRWORA, which drastically narrowed which lawfully present noncitizens could be eligible for federal benefits, including SSI and non-emergency Medicaid. *See*

[3] The substitute criteria under a "209(b) option" cannot be more restrictive than the criteria the state had in place on January 1, 1972. There are eight states that operate as Section 209(b) states for Medicaid eligibility. Dkt. 6, Ex. C.



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

8 U.S.C. §1611(a). With the passage of PRWORA, only select categories of lawfully present noncitizens may access SSI, and for certain categories, such as refugees and asylees, SSI eligibility is time-limited. *See* 8 U.S.C. §1612(a)(2). Subsequent legislation entitled Ukrainian parolees to the same public benefits as refugees, including time-limited SSI. H.R. 7691, Pub. L. No. 117-128 at § 401, 136 Stat. 1218, and H.R. 815, Pub. L. No. 188-50 at § 301, 138 Stat. 913. So too for Afghan and Iraqi special immigrants, Pub. L. 110-181, § 1244(g) (2008) (codified at 8 U.S.C. 1101 note); Pub. L. 111-9, § 602(b)(8) (2009), Pub. L. 111-118, § 8120(b) (2010), and Pub. L. 113-291, § 1227 (2014) (codified at 8 U.S.C. § 1101 note), Amerasian immigrants, Pub. L. 100-202, § 101(e) (codified at 8 U.S.C. § 1101 note), and Afghan parolees, Pub. L. 117-43, § 2502(b)(1) (codified at 8 U.S.C. § 1101 note).

Realizing that its Medicaid restrictions for noncitizens had gone too far, in 1997, just a year after PRWORA first passed, Congress amended PRWORA. Among several amendments, the 1997 legislation restored Medicaid for noncitizen SSI recipients in recognition of the "potentially disastrous impact [PRWORA] would have on children, the disabled, and elderly legal immigrants who would lose vital support services such as Medicaid and [SSI]." 143 Cong. Rec. S8493-01, S8496 (1997) (statement of Sen. McCain); *see also* 143 Cong. Rec. E1610-01 (1997) (statement of Rep. Skaggs expressing support because it "restores disability and Medicaid for legal immigrants and...provides minimum benefits for refugees and asylees"). To correct its exclusion of noncitizen SSI recipients from Medicaid medical benefits, Congress took bipartisan action to establish a specific Medicaid protection for noncitizens receiving SSI. *See* Pub. L. 105-33, § 5305, 111 Stat 251, 601 (1997) (codified at 8 U.S.C. § 1612(b)(2)(F)). With the 1997 PRWORA Amendment, Congress expressly addressed the intersection of SSI and Medicaid eligibility for non-citizens, mandating:



18 WEST MERCER ST., STE. 400 BARNARD
SEATTLE, WASHINGTON 98119 IGLITZIN &
TEL 800.238.4231 | FAX 206.378.4132 LAVITT LLP

> An alien who is receiving benefits under the program defined in subsection (a)(3)(A) (relating to the supplemental security income program) **shall** be eligible for medical assistance under a State plan under title XIX of the Social Security Act (42 U.S.C. 1396 *et seq*.) **under the same terms and conditions** that apply to other recipients of benefits under the program defined in such subsection.

8 U.S.C. § 1612(b)(2)(F) (emphasis added).

This amendment mandated that for purposes of receiving medical assistance, noncitizen SSI recipients, including those in "209(b)" states, should be afforded "exactly the same treatment" as other SSI recipients who are citizens. *See Noland v. Shalala*, 12 F.3d 258, 261 (D.C. Cir. 1994) (interpreting the phrase "same terms and conditions"). Pursuant to 8 U.S.C. § 1612(b)(2)(F), noncitizen SSI recipients must be provided the same access to Medicaid coverage as citizens, regardless of immigration status.

### C. H.R. 1 did not repeal or amend Medicaid eligibility for SSI recipients.

On July 4, 2025, Congress passed H.R. 1. This legislation expressly amended or repealed several prior enacted statutory provisions governing food assistance, Medicare, and premium tax credits for health insurance premiums. *See* Pub. L. No. 119-21 §§ 10108, 71201, 71301, 139 Stat. 72 (2025). H.R. 1 also amended several provisions of the Medicaid Act, including eligibility criteria and redetermination requirements. Pub. L. No. 119-21, §§ 71107, 71108, 71119, 139 Stat. at 295-96, 306-07 (increasing eligibility redetermination frequency, amending home equity limits, and adding "community engagement" standards). It further amended the federal funding provision of the Medicaid Act, adding a new subparagraph to 42 U.S.C. §1396b(v) that states, "notwithstanding the preceding paragraphs in this subsection beginning on October 1, 2026, except as provided in paragraphs (2) and (4)[4], in no event shall payment be made to a State under this section for medical assistance" for individuals who are not a citizen, LPR, Cuban or Haitian

[4] These subparagraphs allow Medicaid funding for emergency care and lawfully present pregnant women and children.



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

entrant, or COFA migrant. Pub. L. No. 119-21, § 71109, 139 Stat. 72, 297 (2025) (codified at 42 U.S.C. § 1396b(v)(5)).

However, H.R. 1 left the statutory scheme for providing Medicaid to noncitizen SSI recipients fully intact. It did not change the Medicaid eligibility codified in 42 U.S.C. §§ 1396a(a)(10)(A) or (f), which provide for medical assistance to "categorically needy" individuals, including aged, blind, or disabled individuals. H.R. 1 also did not amend PRWORA. Specifically, the bill did not narrow the categories of noncitizens eligible for SSI under 8 U.S.C. §1612(a)(2). Critical to the issues in this action, the bill did not repeal or limit the PRWORA mandate in 8 U.S.C. §1612(b)(2)(F) to provide medical assistance to noncitizen SSI recipients "under the same terms and conditions" as citizen SSI recipients. Thus, while H.R. 1 enacted funding limitations for many noncitizens who were previously receiving Medicaid, it left intact both statutory mandates—in the Medicaid Act and PRWORA—which when read in tandem, require that noncitizens who receive SSI be automatically eligible for Medicaid.

## II. HHS Guidance

### A. The SHO Letter withholds federal funding notwithstanding prior existing statutory requirements.

Despite the enduring statutory mandate to provide Medicaid to all SSI recipients under the same terms and conditions, on April 8, 2026, HHS instructed each State Health Official (SHO) to terminate Medicaid healthcare funding for all noncitizens who do not satisfy HHS's new immigration status requirements, effective October 1, 2026. *See* Dkt. 40 at 3. The SHO Letter conceded that PRWORA requires states to provide full Medicaid benefits to certain qualified noncitizens and that H.R. 1 "did not amend…the description in 8 U.S.C. §1612(b)(2) of the populations to which states must provide full Medicaid benefits, nor did it amend the description or scope of the populations in [42 U.S.C. §1396a] to which states are required to provide medical



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

assistance (e.g., individuals to whom supplemental security income (SSI) benefits are being paid)." *Id.* at 8. Nevertheless, this guidance instructed states that, after October 1, 2026, FFP for "full Medicaid benefits" for noncitizens would be limited to "FFP-eligible noncitizens" and strictly defined that group to include only "LPRs, Cuban/Haitian entrants, and COFA migrants." *Id.* at 6.

The SHO Letter stated:

> FFP will no longer be available for full Medicaid or CHIP benefits furnished to qualified noncitizens who are not also FFP-eligible noncitizens (e.g. asylees, refugees, parolees, or victims of trafficking) unless they have another immigration status or category that meets the definition of an FFP-eligible noncitizen.

*Id.* at 6. The SHO Letter instructed states that they "must implement controls to limit claims for FFP to expenditures for emergency Medicaid." *Id.* at 20. Throughout the letter, HHS refers to "FFP-eligible noncitizens" as it instructs states on required procedure and system changes. *Id.* To implement these changes that were to go into effect on October 1, 2026, HHS articulated plans to update its regulations to reflect its guidance and required all states to submit a State Plan Amendment (SPA) no later than December 31, 2026, to be retroactively effective October 1, 2026. *Id.* at 6, fn 16; *Id.* at 22.

Nowhere does the SHO Letter acknowledge an exception for noncitizen SSI recipients' Medicaid eligibility. Instead, the letter acknowledges "only three exceptions to the FFP limitations: (1) care and services necessary for the treatment of an emergency medical condition…; (2) coverage under the CHIPRA 214 option…; and (3) Health Services Initiatives (HSIs), which are programs designed to improve the health of low-income children." *Id.* at 7. The SHO Letter included an Appendix with a chart showing full Medicaid coverage before and after October 1, 2026. *Id.* at 26-30. Although the letter had just referenced a requirement to provide Medicaid to SSI recipients, the chart did not indicate any exceptions for SSI recipients who are refugees, asylees, individuals granted withholding of removal, Amerasian immigrants, certain



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

abused spouses and children, Iraqi and Afghan special immigrants, human trafficking victims, and certain Afghan and Ukrainian parolees to continue receiving Medicaid. *Id.* at 9, 26-30.

Finally, the SHO Letter reassures states they have no obligation to provide full Medicaid benefits to qualified noncitizens without FFP, "notwithstanding" prior PRWORA and Medicaid provisions. *Id*. at 9. The letter explains that because H.R. 1 "did not clearly and unambiguously alter the fundamental structure of the Medicaid program, whose 'cornerstone' is 'financial contribution by both the Federal Government and the participating State,'" HHS does not consider optional health coverage funded without FFP to be "Medicaid." *Id.*

**B. The State Implementation Tool and SSI Technical Guide cut Medicaid for most noncitizen SSI recipients.**

On July 31, 2026, HHS issued a "State Implementation Tool: Section 71109 of the Working Families Tax Cut (WFTC) Legislation," and shortly thereafter issued a "Technical Guide: Implementation of Section 71109 of Working Families Tax Cut Legislation and Supplemental Security Income (SSI) Recipients." Dkt. 40 at 37 (Implementation Tool); *Id.* at 40 (Technical Guide). Like the SHO Letter, both define "FFP-eligible noncitizens" as "LPRs, Cuban/Haitian entrants, and COFA migrants" and both pervasively use the term "FFP-eligible" to describe states' obligations to alter their eligibility processes and systems. *Id.* at 44, 45. The Implementation Tool also uses and similarly redefines the term "satisfactory immigration status" to refer to "noncitizens for whom states can receive FFP for full Medicaid or CHIP benefits: LPRs, Cuban/Haitian entrants, and COFA migrants and, in states that have elected the CHIPRA 214 option, lawfully residing children (up to age 21 for Medicaid and up to age 19 for CHIP) and/or pregnant women." *Id*. at 44; *contra* 42 U.S.C. § 1320b-7(d)(1)(B)(iii) (defining "satisfactory immigration status" without referencing a requirement to be an LPR, Cuban or Haitian entrant, or COFA resident).



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

The Implementation Tool and Technical Guide do not recognize any exception for SSI recipients and provide explicit instructions for removing them from the Medicaid program if they are not FFP-eligible. The Implementation Tool instructs states to identify "potentially affected" Medicaid beneficiaries, which "includes potentially affected beneficiaries who are [SSI] recipients." *Id.* at 38. The Implementation Tool further requires that states implement system updates to "consume SSA data that identifies SSI recipients who are FFP-eligible," noting more information about the State Data Exchange (SDX) "is forthcoming." *Id.* at 40. The Technical Guide details upcoming changes to the SDX to implement HHS's conclusion that noncitizen SSI recipients must also meet the definition of "FFP-eligible" in order to continue receiving Medicaid. *Id.* at 45. The Technical Guide reiterates the Implementation Tool instructions to "ensure proper FFP claiming" which "includes potentially affected beneficiaries who are SSI recipients." *Id.* at 47.

**III. HHS's Unlawful Guidance Would Terminate Critical Health Care Services For Financially Needy And Medical Fragile Lawfully Present Immigrants.**

Plaintiff Mariia Matsai received humanitarian parole after fleeing the Ukraine War with her daughter and two young grandchildren. Dkt. 5 ¶ 2; Third Matsai Decl. ¶ 2, Exh. A (U.S. Citizenship and Immigration Services Notice of Action). As a parolee over the age of 65, she receives $601 per month in SSI payments. Third Matsai Decl. ¶ 3, Exh. B (SSA Benefit Verification Letter). Matsai received a letter in August indicating that she may lose her Medicaid-funded services and was formally notified on September 23, 2026, that the benefits she receives through the Washington Medicaid program known as "Apple Health" would be ending on October 1, 2026. Dkt. 5 ¶ 7; Third Matsai Decl. ¶ 4, Exh. C (Planned Action Notice); Dkt. 35 ¶ 2 (confirming Medicaid is "Apple Health").



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

As most immigrants who would lose coverage under HHS's guidance, without this medical assistance, Matsai would not have access to ongoing treatment or caregiving supports. She would have to rely solely on emergency care and hospitalization should she experience a life-threatening health event due to her untreated congestive heart failure, Type 2 diabetes, hypertension, or other health conditions. Dkt. 5 ¶ 13; Dkt. 26 ¶¶ 2-4. Without any way to pay for medical treatment, medications, or long-term care, Matsai risks suffering a life-threatening diabetic coma, stroke, or heart failure. Dkt. 5 at ¶ 12. On October 1, 2026, after the Court entered its preliminary order, Dkt. 28, Matsai received notice that as of October 1, 2026, she was approved for Washington Apple Health benefits. Third Matsai Decl. ¶ 5, Exh. D (Apple Health Approval).

Neighborhood House contracts with the City of Seattle to deliver Medicaid-funded case management services to Matsai and other Medicaid beneficiaries with limited English proficiency. Dkt. 10 ¶ 10; *see also* Dkt. 11; Second Buck Decl. ¶ 3, Exh. A at 9-10 (Contract). As a nonprofit founded to serve the immigrant refugee community fleeing violence and wars, Neighborhood House has dedicated bi-lingual and bi-cultural case managers to implement its mission to open doors for people "experiencing language, cultural, and systemic barriers" to basic needs and opportunities. Dkt. 9 ¶ 11; Dkt. 10 ¶ ¶ 11-12; Second Buck Decl. ¶ 4, Exh. B (Strategic Plan). On August 20, 2026, Neighborhood House received a list of its noncitizen clients who were informed they could lose their Medicaid funding based on their immigration status, including at least 150 clients that Neighborhood House had identified as receiving SSI beneficiaries. *See* Second Buck Decl. ¶ 5, Exh. C (August 20, 2026, Email). Neighborhood House learned that only thirteen of these clients would be able to continue services through a small state-funded program. *Id.*

The loss of Medicaid funding to support its noncitizen clients would drastically hinder Neighborhood House's mission to open doors to healthcare services for people facing language



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

and cultural barriers. *See* Dkt. 9 ¶ 11. Moreover, Neighborhood House has been awarded to receive $241.33 in Medicaid reimbursement for each client per month and is now estimating it will lose over $400,000 in annual Medicaid revenue if its current noncitizen SSI Medicaid clients are terminated due to HHS's definition of "FFP-eligible" noncitizens. *See* Second Buck Decl. ¶ 6, Exh. D (Notice of Award).

## IV. The Harms To Plaintiffs From Defendants' Unlawful Actions Were Preliminarily Enjoined.

On August 26, 2026, Plaintiffs commenced this action. Dkt. 1. On August 28, Plaintiffs filed a motion for a preliminary order under 5 U.S.C. § 705 to postpone HHS's action in Washington State in order to "prevent irreparable injury" pending conclusion of the review proceedings. Dkt. 4.

On September 30, 2026, upon review of all briefing with supporting evidence and after holding oral argument, this Court granted Plaintiffs' motion and preliminarily enjoined HHS from "(a) enforcing, implementing, or otherwise giving effect to the SHO Letter and the State Implementation Tool as to all qualified noncitizen SSI recipients in the State of Washington, and/or (b) terminating Medicaid healthcare funding for any qualified noncitizen SSI recipients in the State of Washington." Dkt. 28 at 24. Pursuant to the Court's order, HHS has not implemented its guidance to terminate noncitizen SSI recipients' Medicaid in Washington State, but HHS's instructions to do so in other states went into effect on October 1, 2026, eliminating healthcare services for vulnerable, medically fragile noncitizen SSI recipients in 49 other states.[5] Dkt. 40 at 10 (SHO Letter directing states to implement changes by October 1, 2026, to comply with FFP limitations and to "promptly act on this statutory change," and explaining steps states must take "before terminating coverage or reducing benefits."); *see generally* Dkt. 40.

[5] Plaintiffs are unaware of any other injunction staying or vacating HHS's challenged guidance. Third Kas Dec., ¶ 3.



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

## ARGUMENT

### I. Legal Standard For Summary Judgment

"A grant of summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Frlekin v. Apple*, Inc., 979 F.3d 639, 643 (9th Cir. 2020); Fed. R. Civ. P. 56(c). Because this is an APA case seeking review of a final agency action on the basis that the challenged action is contrary to law, "resolution of this matter does not require fact finding," and there are no genuine issues of material fact. *See Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.,* 18 F.3d 1468, 1472 (9th Cir. 1994).[6] Under the APA, a court must "hold unlawful and set aside action, findings and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity;" or "(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C).

In reviewing agency action, "courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). Instead of deferring to the agency's interpretation, the Supreme Court instructs lower courts to use "traditional tools of statutory construction," regardless of whether a statute is ambiguous, and they are not obliged to give deference to the agency's interpretation. *Id.* at 401. Here, applying numerous statutory construction tools, H.R. 1 cannot be read to alter or displace the prior enacted statutory scheme for noncitizen SSI recipients to also receive Medicaid benefits.

---

[6] There can be no serious dispute that the SHO Letter and Implementation Tool constitute a "final agency action" subject to judicial review under the APA. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997); *U.S. Army Corps of Eng'rs v. Hawkes Co*., 578 U.S. 590, 597 (2016); *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1007 (9th Cir. 2021); *Oregon Nat. Desert Ass'n v. U.S. Forest Serv*., 465 F.3d 977, 982 (9th Cir. 2006); *Prutehi Litekyan: Save Ritidian v. United States Dep't of Airforce*, 128 F.4th 1089, 1109 (9th Cir. 2025).



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

## II. HHS'S Guidance Is Arbitrary, Capricious, and Contrary To Law.

### A. H.R. 1 did not expressly repeal or amend HHS's federal Medicaid funding obligation for noncitizen SSI recipients.

When Congress passed H.R. 1, it indisputably did not expressly amend PRWORA's statutory mandate that noncitizen SSI recipients "shall be eligible for medical assistance…under the same terms and conditions" as other SSI recipients to whom medical assistance must be available under 42 U.S.C. §§ 1396a(a)(10)(A), (f). *See* 8 U.S.C. § 1612(b)(2)(F). The term "medical assistance" is a statutory term of art, a "key element" of which is "federal funds." *Univ. of Washington Med. Ctr. v. Sebelius*, 634 F.3d 1029, 1034 (9th Cir. 2011). Indeed, Medicaid is a "cooperative federal-state program that provides medical care to needy individuals." *Douglas v. Indep. Living Ctr. of S. California, Inc.*, 565 U.S. 606, 610–11 (2012). As the Supreme Court has held and HHS echoed in its SHO letter, the "cornerstone of Medicaid is financial contribution by *both* the Federal Government and the participating State." *Harris v. McRae,* 448 U.S. 297, 308 (1980) (emphasis added); *see also* Dkt. 40 at 9. Thus, in PRWORA, Congress decreed that noncitizen SSI recipients must receive *jointly-funded* medical assistance under the same terms and conditions as citizen SSI recipients. 8 U.S.C. §1612(b)(2)(F).

H.R. 1 does not explicitly void or amend these unambiguous joint funding obligations through its general provision that "in no event shall payment be made to a State under this section for medical assistance" for noncitizens except for LPRs, Cuban or Haitian entrants, and COFA migrants. Pub. L. No. 119-21, § 71109, 139 Stat. 72, 297 (2025) (codified at 42 U.S.C. § 1396b(v)(5)). That is because nowhere does H.R. 1 modify the underlying SSI recipient coverage mandates and SSA determination process in 42 U.S.C. § §1396(a)(10)(A)(i)(II)(aa), (f), and 1383c(a), or the equal terms mandated in 8 U.S.C. § 1612(b)(2)(F). While H.R. 1 included numerous explicit statutory repeals, it excluded express repeal of *any* of the statutory provisions



18 WEST MERCER ST., STE. 400 SEATTLE, WASHINGTON 98119 TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

under the Medicaid Act or PRWORA, which intersect to direct states and the federal government to jointly furnish SSI recipients with medical assistance. *See e.g.* Pub. L. No. 119-21 §§ 50101, 50102, 50103, 50401, 50402, 60002, 70116, 70323, 70352, 70421, 70531, 82001 (explicitly stating various prior statutes are repealed); *see also* Dkt. 28 at 14 (noting that H.R. 1 uses a form of the word "repeal" thirty-nine times, including in the Table of Contents, but not to repeal the two provisions relied on herein by Plaintiffs).

As the Supreme Court held in *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 313 (2020), "budget authority is not necessary for Congress itself to create an obligation by statute." In that case, the Supreme Court determined that the plain terms of a prior-enacted statutory provision using mandatory "shall pay" language "created an obligation neither contingent on nor limited by the availability of appropriations or other funds." *Id.* at 314 (holding prior enacted statute directly created a payment obligation that later appropriations riders did not impliedly repeal). Similarly, PRWORA uses mandatory "shall" language to require that noncitizens receive "medical assistance" (which includes federal funds). No language in 8 U.S.C. § 1612(b)(2)(F) makes this obligation to provide medical assistance to noncitizen SSI recipients subject to appropriations. 8 U.S.C. §1612(b)(2)(F).

Nevertheless, without explaining a legal basis to ignore its obligations under PRWORA, HHS has declared that noncitizen SSI recipients who do not meet HHS's new definition of "FFP-eligible" may not receive medical assistance. *See generally* Dkt. 40. Under HHS's reading of H.R. 1, noncitizen SSI recipients must be subject to additional immigration criteria to be eligible for medical assistance, notwithstanding 8 U.S.C. § 1612(b)(2)(F). *Id.* at 9. HHS's sweeping change completely nullifies PRWORA's requirement to treat noncitizen SSI recipients the same as other SSI recipients with respect to Medicaid eligibility.



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

HHS may not arbitrarily eliminate rights established by Congress in federal law. *See, e.g., Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 737 (2022) (holding HHS did not have authority to set lower Medicare reimbursement methodology for certain hospitals, where doing so would override a separate statutory payment obligation, "eviscerate…significant aspects of the statutory text," and "render irrelevant" the part of the statute that "precisely details the requirements" for determining hospital reimbursements); *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) (Agency action is arbitrary and capricious if it is not "reasonable and reasonably explained."); Dkt. 28 ("What Congress hath giveth, an executive agency may not taketh away.").

HHS's action inexplicably eviscerates 8 U.S.C. §1612(b)(2)(F), which addresses the precise issue of noncitizen SSI recipients' Medicaid eligibility. In excluding noncitizen SSI recipients from the groups of "FFP-eligible" individuals, HHS failed to account for Congress's intentional 1997 PRWORA amendment to ensure that select immigrant groups of aged, blind, and disabled noncitizens receive both SSI and jointly-funded medical assistance. The Administrative Record, Dkt. 40, consists only of the guidance HHS issued, offering no explanation for HHS's decision to cast PRWORA's mandate aside. While HHS explains that states are not obligated to shoulder the financial burden of providing payments for healthcare to noncitizen SSI recipients, nothing in its guidance, which is not supplemented by any further records, Dkt. 40, justifies the termination of its *own* funding responsibilities under 8 U.S.C §1612(b)(2)(F), which H.R. 1 did not expressly repeal.

**B. H.R. 1 did not implicitly repeal noncitizen SSI recipient eligibility for Medicaid.**

Nor did H.R.1 implicitly repeal the specific PRWORA mandate established under 8 U.S.C. § 1612(b)(2)(F) to provide equal Medicaid eligibility for SSI beneficiaries who receive Medicaid under 42 U.S.C. § 1396(a)(10)(A)(i)(II)(aa). Courts have long disfavored repeals by implication.



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

*See Morton v. Mancari,* 417 U.S. 535, 549 (1974); *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976). Courts' "aversion to implied repeals is 'especially' strong 'in the appropriations context.'" *Maine Cmty. Health Options*, 590 U.S. at 315 (quoting *Robertson v. Seattle Audobon Soc.*, 503 U.S. 429, 440 (1992)). Courts do not infer intent to repeal "unless the later statute expressly contradicts the original act or unless such a construction is absolutely necessary in order that the words of the later statute shall have any meaning at all." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662 (2007) (internal citation omitted). Neither of these conditions are satisfied here.

H.R. 1 does not contain language expressly contradicting PRWORA. Admittedly, there are several drafting tools that Congress can utilize to controvert its prior enactments, even without using the word "repeal." *See Maine Cmty. Health Options*, 590 U.S. at 318 (where Congress intended to use budget appropriations to override existing laws, it stated that prior statutory obligations "shall not take effect" or were "hereby suspended."); *United States v. Novak*, 476 F.3d 1041, 1052 (9th Cir. 2007) (use of phrase "notwithstanding any other provision of law" may establish a contradiction and imply repeal if combined "with other convincing indices of statutory intent").[7] Congress did not use such indicia in H.R. 1. To the contrary, Congress provided that the operative funding limitations exist "notwithstanding the preceding paragraphs in this *subsection*." (emphasis added). 42 U.S.C. §1396b(v)(5). Although it "knew how to do so," in H.R. 1, Congress did not invoke terms it has consistently used to indicate intent to dissolve prior statutory commands. *See Johnson v. High Desert State Prison*, 127 F.4th 123, 129 (9th Cir. 2025).

H.R. 1 and PRWORA are not irreconcilable. Though there is ostensible tension between the funding restrictions in H.R. 1 and PRWORA's Medicaid eligibility mandate, multiple canons

[7] PRWORA itself uses the "notwithstanding any other provision of law" language. 8 U.S.C. §1612(a)(1) and (b)(1).



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

of statutory construction allow the statutes to be harmonized. First, to the extent there appears to be any contradiction between two provisions of law, it is a fundamental canon of statutory construction that "the specific provision is construed as an exception to the general one." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). According to the Supreme Court and Ninth Circuit, "a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum." *Shoshone-Bannock Tribes of Fort Hall Rsrv. v. U.S. Dep't of the Interior,* 153 F.4th 748, 761 (9th Cir. 2025) (citing *Radzanower,* 426 U.S. at 153). Where a statute "deals explicitly with the case" at issue, the "specific statutory language prevails over general provisions." *Union Cent. Life Ins. Co. v. Wernick*, 777 F.2d 499, 501 (9th Cir. 1985); *see also N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 305 (2017) (finding statute's general prohibition. . . yields to the more specific authorization").

Here, PRWORA's mandate to provide equal Medicaid coverage to noncitizens receiving SSI, 8 U.S.C. §1612(b)(2)(F), is more specific than H.R. 1's general restriction on federal funding for certain immigrants. PRWORA addresses the precise question of whether individuals who are *both* noncitizens and SSI recipients are entitled to Medicaid. 8 U.S.C. § 1612(b)(2)(F). This provision sets forth a distinct mandate that the same terms and conditions for other SSI recipients must apply to noncitizen SSI recipients. *Id.* By adding 42 U.S.C. § 1612(b)(2)(F) to PRWORA, Congress created a special classification of noncitizens entitled to the same eligibility for Medicaid as their citizen counterparts. Unlike subparagraphs (b)(2)(A)-(E) and (G), which describe groups only based on immigration status and without additional qualifiers that establish them as "categorically needy" and thereby separately entitled to medical assistance under the Medicaid Act, subparagraph (b)(2)(F) reaffirms SSI recipients' entitlement to Medicaid and specifies that noncitizen and citizen SSI recipients shall be eligible for medical assistance "under the same terms



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

and conditions." PRWORA's highly specific command to equally cover citizen and noncitizen SSI recipients should thus control.

Second, courts "are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari,* 417 U.S. 535, 552 (1974); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018); *Shoshone-Bannock Tribes of Fort Hall Rsrv.,* 153 F.4th at 763. Here, there is not a clear intent for H.R. 1 to displace 8 U.S.C. § 1612(b)(2)(F). *Infra*, Argument § II.C. Construing H.R. 1 to eliminate Medicaid for noncitizen SSI recipients who are not LPRs, Cuban or Haitian entrants, or COFA migrants would nullify that PRWORA provision entirely. By contrast, construing 8 U.S.C. § 1612(b)(2)(F) as a narrow exception to 42 U.S.C. §1396b(v)(5) would still give the later, more general law (Section 71109 of H.R. 1) considerable consequential effect. This is because, even if 8 U.S.C. §1612(b)(2)(F) survives as a limited exception, only a small percentage of noncitizens who lose Medicaid coverage under 42 U.S.C. § 1396b(v)(5) will have their healthcare preserved. For instance, in Washington, thousands of lawfully present noncitizen Medicaid beneficiaries who are not SSI recipients (and therefore were not subject to this Court's preliminary injunction) were still projected to lose Medicaid on October 1, 2026, due to H.R. 1. *See* Dkt. 8 ¶ 20.

Courts reviewing an agency's action "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation and citations omitted). HHS's Administrative Record, Dkt. 40, contains no evidence that HHS considered and applied the proper canons of statutory construction to correctly interpret H.R. 1 in harmony with other statutes. HHS's erroneous implementation of



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

H.R. 1 disregards and is contrary to every other statutory provision addressing statutorily mandated Medicaid coverage for the individuals in greatest need.

**C. There is no "clear and manifest" legislative intent to repeal PRWORA.**

Lastly, for a statute to implicitly repeal a prior statute, "the intention of the legislature to repeal must be clear and manifest." *Ctr. for Investigative Reporting v. United States Dep't of Just.*, 14 F.4th 916, 927–28 (9th Cir. 2021) (internal citation omitted). If the intention for one statute to displace another is not "'clear and manifest,'" courts "must instead strive 'to give effect to both.'" *Epic Sys. Corps.*, 584 U.S. at 510 (citing *Morton,* 417 U.S. at 551). "A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing 'a clearly expressed congressional intention' that such a result should follow." *Id.* (citing *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995))*; accord Maine Cmty. Health Options,* 590 U.S. at 315 ("Presented with two statutes, the Court will 'regard each as effective'—unless Congress' intention to repeal is 'clear and manifest' or the two laws are 'irreconcilable'") (quoting *Morton* 417 U.S. at 550-51).

Here, there is no "clear and manifest" legislative intent to reverse a thirty-year policy for states and the federal government to cooperatively provide healthcare benefits to lawfully present aged, blind, and disabled individuals receiving SSI. The text of H.R. 1 lacks any explicit or implicit indices of such intent, *supra*, Argument § II.A, B, and the legislative history of H.R. 1 weighs forcefully against HHS's interpretation. Notably, on July 2, 2025 – two days before H.R. 1 was enacted – Representative Scott declared in support of the bill: "When the Democrats are telling you that…we are kicking disabled people off of Medicaid, it is an absolute lie." 171 Cong. Rec. H3039-08, H3043 (2025). At that same hearing, Representative Haridopolos reassured fellow congressmembers, "Seniors in nursing homes are unaffected. Persons who are disabled are unaffected." *Id.* at H3044 (statement of Rep. Haridopolos). As another explained, "[t]he One Big



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

Beautiful Bill Act removes *illegal* aliens, enforces work requirements, and protects Medicaid for the truly vulnerable." *Id.* at H3055 (statement of Rep. Foxx) (emphasis added).

Nevertheless, HHS issued three pieces of guidance saying the exact opposite. SSI recipients are, by definition, seniors over the age of 65 and/or individuals who have a long-term disability that prevents them from earning income. 42 U.S.C. § § 1382(a), 1382c(a)(3). Through the Medicaid program, SSI recipients may receive long-term care in nursing homes or other settings, as well as a host of other life-sustaining and preventative health care benefits that help them avoid needing hospitalization and emergency care. *See* 42 C.F.R. § 440.2 (b) ("FFP is available in expenditures under the State plan for medical or remedial care and services as defined in this part); 42 C.F.R. § 440.40 (defining nursing facility services); *see also* Dkt. 25 at 4 (2nd SHO Letter at p. 1).

Despite the legislative record documenting Congressional intent to maintain Medicaid for seniors and people with disabilities, HHS's Administrative Record, Dkt. 40, documents neither regard for the devastating impact that will result from its guidance nor legislative history documenting Congress's intent to continue providing medical assistance to impoverished and medically fragile noncitizen SSI recipients. HHS recognized that Congress did not repeal this prior legislation, but still determined that noncitizens, including statutorily protected SSI recipients, must now meet HHS's narrow definition of "FFP-eligible," or lose their essential life-sustaining Medicaid benefits. HHS falls far short of meeting its heavy burden to show that this is the outcome Congress intended.

This Court should hold that HHS's reading of H.R. 1 improperly ignores and erases Congress's prior mandate under 8 U.S.C. § 1612(b)(2)(F) that noncitizen SSI recipients "shall be eligible for medical assistance…under the same terms and conditions" as others who are eligible



18 WEST MERCER ST., STE. 400 SEATTLE, WASHINGTON 98119 TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

for medical assistance under 42 U.S.C. § 1396a(a)(10). Absent an express or implied repeal of 8 U.S.C. § 1612(b)(2)(F), HHS is not authorized to create "additional criterion" for Medicaid eligibility or to alter PRWORA's prior "statutory command." *See National Ass'n of Home Builders,* 551 U.S. at 663 (disallowing interpretation of later enacted statute to "engraft" criterion that "raises the floor" for when a federal agency was required to issue a permit because the former "statutory command" had not been repealed).

This Court should grant Plaintiffs' summary judgment motion and hold that the SHO Letter, Implementation Tool, and Technical Guide are arbitrary, capricious, and contrary to law. 5 U.S.C. § 706.

## III. Plaintiffs Are Entitled To Vacatur and Declaratory Relief As A Matter Of Law.

### A. HHS's unlawful instruction to terminate noncitizen SSI recipients' Medicaid must be vacated.

Section 706 of the APA provides that a reviewing court "shall . . . set aside agency actions" found to be unlawful for one or more enumerated reasons. 5 U.S.C. § 706(2). This "set aside" order has traditionally been equated with the remedy of vacatur. *See Nat'l TPS All. v. Noem* (*NTPSA III*), 166 F.4th 739, 760 (9th Cir. 2026), *petition for cert. docketed*, *Mullins v. Nat'l TPS All.*, No. 26-48 (July 13, 2026); *Ctr. for Food Safety v. Regan*, 56 F.4th 648, 660 (9th Cir. 2022). If the Court determines HHS's guidance violates the APA, it "may vacate the guidance, preventing the agency from using it going forward." *Dorcas Int'l Inst. of R.I. v. USCIS*, 834 F. Supp.3d. 242, 325 (R.I. 2026).

"Where a court holds an agency action unlawful, vacatur and remand is the default remedy . . . ." *Mont. Wildlife Fed'n v. Haaland*, 127 F.4th 1, 50 (9th Cir. 2025); *All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1121 (9th Cir. 2018) (recognizing a "presumption of vacatur"). HHS is arbitrarily and unlawfully acting to terminate Medicaid eligibility of noncitizen SSI


18 WEST MERCER ST., STE. 400 SEATTLE, WASHINGTON 98119 TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

recipients due to their immigration status. HHS relies on a faulty underlying premise that noncitizen SSI recipients who are not LPRs, Cuban or Haitian entrants, or COFA residents are not "FFP-eligible" and incorrectly defines "satisfactory immigration status" to exclude non-citizen SSI recipients. This substantive action is uncurable as there is no lawful way for HHS to deny or terminate noncitizen SSI recipients' Medicaid eligibility without misapplying H.R. 1 and violating PRWORA. Thus, HHS unlawful definitions of "FFP-eligible" and "satisfactory immigration status" must be vacated, along with all instructions requiring states to change their systems to deny or terminate Medicaid for noncitizen SSI recipients based on immigration status.

Lastly, vacatur as a final remedy under 5 U.S.C. § 706 need not be limited to the Plaintiffs, unlike an injunction granted pursuant to the court's equitable powers, which the Supreme Court recently narrowed to providing "complete relief *to the plaintiffs before the court.*" *Trump v. CASA,* 606 U.S. 831, 852 (2025) (emphasis in original). The Supreme Court noted: "Nothing we say today resolves the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action." *Id.* at 847 n.10 (citing section 706(2)); *see also id.* at 873 (Kavanaugh, J., concurring) (decision did not alter court's ability to "grant or deny the functional equivalent of a universal injunction . . . by preliminarily setting aside or declining to set aside an agency rule under the APA").

The Ninth Circuit has not applied *CASA* to restrict the scope of relief under § 706. *See NTPSA III*, 166 F.4th at 767 (finding that complete relief to plaintiffs required vacatur)*; Nat. Grocers*, 157 F.4th at 1170 n.7 (recognizing vacatur remedy under § 706 "can be reconciled" with *CASA* and need not be overturned). Post-*CASA,* district courts in the Ninth Circuit have continued to vacate agency actions under § 706 without confining their orders to the named plaintiffs. *See e.g., E. Bay Sanctuary Covenant v. Trump*, No. 18-cv-06810-JST, 2026 WL 1256873, at * 9 n.3



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

(N.D. Cal. May 7, 2026) (declining to reconsider vacatur of agency rule in light of *CASA*), *appeal filed*, No. 26-4982, 2026 WL 1256873 (9th Cir. Aug. 4, 2026); *New York v. U.S. Dep't of Energy*, No. 6:25-cv-01458-MTK, 2025 WL 3140578, at *1 (D. Or. Nov. 10, 2025) (issuing vacatur without limiting remedy to plaintiff states).

In *Pablo Sequen v. Albarran*, 835 F. Supp. 3d 1061, 1128 (N.D. Cal. 2026), the district court recognized, "[m]ultiple district courts in this circuit have concluded that full vacatur remains an available remedy in the wake of *CASA*." (collecting cases). There, the court declined to limit its order to an injunction enjoining the enforcement of unlawful policies to class members, applying the D.C. Circuit Court's rationale that the "APA ordinarily does not authorize a reviewing court 'to judicially re-write what the agency did so that it somehow does not apply to a narrow group of people or so that it persists piecemeal.'" *Id.* (citing *Rose v. Kennedy*, 168 F.4th 294 (D.C. Cir. 2026)). As held in *Pablo Sequen, "*[p]rohibiting the enforcement of the challenged policies only against particular individuals would not comply with that Congress's instruction to 'set aside' the policies themselves." *Pablo Sequen*, 835 F. Supp. 3d at 1128 (citing 5 U.S.C. § 706(2)); *see also Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys*., 603 U.S. 799, 829, (2024) (Kavanaugh, J., concurring) ("The text [of the APA] directs courts to 'set aside' unlawful agency actions" which "plainly contemplated the vacatur of agency actions.").

In granting vacatur under 5 U.S.C. §706, this Court must refrain from re-writing HHS guidance so that the challenged portions apply only to non-Plaintiffs or only outside of Washington. As the federal agency that administers the Medicaid program, HHS is responsible for issuing guidance that conforms to the law and cannot be permitted to persist in a "piecemeal" fashion to unlawfully deprive others of the Medicaid benefit Congress guaranteed. *See* Dkt. 25 at



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

¶ 14. HHS's action is unlawful with respect to all noncitizen SSI recipients who are not deemed to be "FFP-eligible," and so the APA requires that this action be fully "set aside." 5 U.S.C. § 706(2).

**B. Declaratory relief is necessary to clarify important legal rights and obligations.**

"[D]eclaratory relief is appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of Reading, Pa.*, 873 F.2d 229, 231 (9th Cir. 1989) (internal quotation and citation omitted). The Ninth Circuit has further observed, "a court declaration delineates important rights and responsibilities and can be 'a message not only to the parties but also to the public and has significant educational and lasting importance.'" *Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*, 966 F.2d 1292, 1299 (9th Cir. 1992) (citing *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1471 (9th Cir.1984)).

Here, a declaratory judgment would clarify and settle the rights of noncitizen SSI recipients under the Medicaid Act, PRWORA and H.R. 1. It would also relieve any uncertainty as to HHS's duty to provide FFP for noncitizen SSI recipients under the same terms and conditions as other SSI recipients. This clarification would terminate the controversy over whether H.R. 1 precludes HHS from providing FFP to noncitizen SSI recipients who are not LPRs, Cuban or Haitian entrants, or COFA residents. Finally, declaratory judgment would inform other states and the public that H.R. 1 did not expressly or implicitly repeal the mandate to provide medical assistance to noncitizen SSI recipients under 8 U.S.C. §1612(b)(2)(F). Declaratory judgment is thus appropriate and necessary for putting this matter to rest.

**C. Plaintiffs have standing.**

Plaintiffs have standing under Article III and the APA. The record plainly shows that Plaintiffs' loss of funding and public benefits satisfies Article III requirements to demonstrate



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

"injury in fact" that is fairly "traceable" to the defendant's action. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). As illustrated by the preservation of benefits and funding under a preliminary order, these injuries are "redressable" by a favorable court decision. *See id.* Furthermore, Plaintiffs are entitled to judicial review under 5 U.S.C. § 702. Plaintiffs, who stand to lose essential public benefits and public funding as a direct result of HHS's action, are each "adversely affected or aggrieved" by HHS's action. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012); *Ass'n of Data Processing Serv. Organizations, Inc. v. Camp*, 397 U.S. 150, 153 (1970). Both Plaintiffs also meet the "zone of interests test" which looks to "whether the interest sought to be protected by the complainant is *arguably* within the zone of interests to be protected." *Nat'l Credit Union Admin. v. First Nat. Bank & Tr. Co.*, 522 U.S. 479, 488 (1998) (emphasis in original).

In particular, Matsai submits documentation confirming that she is a Ukrainian parolee who receives SSI but does not meet HHS's definition of "FFP-eligible." *Supra,* at p. 9. She further submits notices showing her Medicaid benefits are in jeopardy under HHS guidance. *Id.* If HHS proceeds with terminating her Medicaid as planned, she will suffer the deprivation of public benefits and will very likely experience health crises that she is now avoiding with proper access to nonemergency healthcare services. *Id.* As a noncitizen SSI recipient, she is plainly an intended beneficiary of 8 U.S.C. §1612(b)(2)(F), which mandates equal Medicaid eligibility for noncitizen and citizen SSI recipients.

Neighborhood House submits its Strategic Plan, service contract, and current Notice of Award as evidence of its mission and financial interest in its noncitizen clients retaining their Medicaid benefits. *Id.* It likewise has standing because its mission as well as finances will be harmed if it loses Medicaid funding for 150 of its noncitizen clients due to HHS's misinterpretation



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

of H.R. 1. *See La Clinica de la Raza v. Trump*, 706 F. Supp. 3d 903, 915 (N.D. Cal. 2020) (finding organization had standing because "they will suffer direct financial consequences" due to the "reduction in funding streams."). Thus, Neighborhood House's financial and mission-based interests are completely aligned and fully congruent with noncitizen SSI recipients' interests in retaining Medicaid funding.

In sum, HHS's action is final and will result in injury to both Plaintiffs, who irrefutably have interests in preventing the termination of noncitizen SSI recipients' Medicaid eligibility. Therefore, no genuine factual disputes stand in the way of this Court reviewing HHS's action, declaring it unlawful, and setting it aside.

**CONCLUSION**

HHS's guidance misinterprets H.R. 1 and is contrary to law. The Court should grant Plaintiffs' summary judgment motion under 5 U.S.C. § 706 and 28 U.S.C. § 2201 and grant the following relief: 1) a declaratory judgment that HHS' SHO Letter, Implementation Tool, and Technical Guide are arbitrary, capricious, and contrary to law under the APA because they eliminate Medicaid benefits for noncitizen SSI recipients guaranteed those benefits by law; and 2) an order vacating HHS's SHO Letter, Implementation Tool, and Technical Guide instructing states to terminate FFP for SSI recipients who are not citizens, LPRs, Cuban or Haitian entrants, or COFA residents, 5 U.S.C. § 706.

I certify that this memorandum contains 8,374 words, in compliance with Local Civil Rules.

RESPECTFULLY SUBMITTED this 23rd day of November, 2026.

*s/Jennifer L. Robbins*
Jennifer L. Robbins, WSBA No. 40861



18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

*s/Travis Lavenski*
Travis Lavenski, WSBA No. 61507
**Barnard Iglitzin & Lavitt LLP**
18 West Mercer Street, Suite 400
Seattle, WA 98119
Tel: (206) 257-6011
Tel: (206) 257-6032
Fax: (206) 378-4132
robbins@workerlaw.com
lavenski@workerlaw.com

*s/Susan Kas*
Susan Kas, WSBA No. 36592
**Northwest Health Law Advocates**
1301 5th Avenue, Suite 1200
Seattle, WA 98101-2677
Tel: (425) 940-5534
susan@nohla.org

*Attorneys for Plaintiffs*